UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Jane Doe, Jr. PPA Jane Doe Sr., et al.  :
Jane Doe, Sr. Plaintiff

:
:     CIVIL NO:3:01CV0571 (SRU)
:     CIVIL NO:3:01CV2298 (SRU)
:

City of Waterbury et al.
        Defendants

:     October 27, 2003

## MEMORANDUM IN SUPPORT OF OBJECTION TO MOTION FOR RECONSIDERATION DATED OCTOBER 14, 2003

Plaintiff in the above referenced matter hereby respectfully objects to the proposed intervenor, Commission of Children and Families, motion for reconsideration in that the proposed petitioner lacks standing to assert an objection in this matter and only if and when standing is granted will the proposed intervenor gain such standing. In addition, the court is not required to rule on the proposed intervenor's motion prior to appointing a guardian ad litem as the intervenor incorrectly suggests. In fact the court may as it has done in this case appoint a guardian ad litem if it deems this is in the best interests of the children. Given the current status of the case we feel this would be in the best interests of the child and would not significantly diminish any recovery the child may receive. In addition given the proposed intervenor's current administrative problems and impending takeover by the federal government we feel the current appointed guardian ad litem represents a decision in the best interest of the child. (See attached exhibit A.)

**ARGUMENT**

A.) As the court has previously ruled in <u>New York News, Inc. v. Kheel</u>, 972 F.2d 482 (1992), a party must have standing to request reconsideration. In our case the proposed intervention by DCF is still pending and no decision has been made by this Court. The Court within its jurisdiction may determine that during the pendency of the motion to intervene that it is appropriate to appoint the guardian ad litem as it has done in this case because it is in the best interests of the child. To delay this appointment could in fact prove detrimental to the minor children in that their interests should be protected throughout this litigation.

B.) In addition as noted in Exhibit 8, Department of Children and Families is currently involved in a class-action lawsuit asking that DCF operations be removed from the Commissioner's control and turned over to the Federal government for assistance. Given the present state of litigation involving DCF we feel the Court has made the appropriate decision in appointing a guardian ad litem.

For the foregoing reasons we respectfully request that the motion for reconsideration by the proposed intervenor be denied in its entirety.

> Respectfully submitted,
>
> Attorney Gerald L. Harmon
>
> By: _/s/_
> Gerald L. Harmon (ct 13523)
> 290 Pratt Street
> Meriden, CT 06450
> (203) 639-1956

## CERTIFICATION

I hereby certify that copies of the foregoing memorandum to objection to reconsideration were mailed to the following parties of record on October 27, 2003 as follows:

Elliot B. Spector, Esq.
Sack, Spector and Karsten
836 Farmington Avenue
West Hartford, CT 06119

Susan T. Pearlman Esq.
110 Sherman Street
Hartford, CT 06105

District Court Clerk's Office
915 Lafayette Blvd
Bridgeport, CT 06604

Judge Stefan R. Underhill
Chambers
915 Lafayette Blvd
Bridgeport, CT 06604

Attorney Michael S. Hillis
Dobrowski, Knapsack and Hillis, LLC
205 Whitney Avenue
New Haven, Ct 06511

Attorney Andrew Bowman
1804 Post Road East
Westport, CT 06880

Attorney Erskine McIntosh
3129 Whitney Avenue 2nd Floor
Hamden, Ct 06518

Gerald L. Harmon, Esq.

EXHIBIT A

# Federal Control Of DCF Sought

## Advocates Ask U.S. To Help Foster Children

**By COLIN POITRAS**
**COURANT STAFF WRITER**

Frustrated by what they claim is the state's repeated failure to provide adequate services to thousands of abused and neglected children, legal advocates are asking the federal government to take control of the state's child welfare system.

In a move never before seen in recent state history, lawyers representing abused and neglected children in a class-action lawsuit asked Thursday that the state Department of Children and Families be held in contempt and that DCF operations be removed from Commissioner Darlene Dunbar's control.

The lawyers said the agency has repeatedly failed to meet federal orders for caseload limits, timely investigations, child visits, and speedy adoptions despite more than a decade of complaints and numerous court rulings.

"It was after exhausting all other alternatives and waiting 12 years, that we unfortunately have no other recourse," said Martha Stone, executive director of the Center for Children's Advocacy at the University of Con-

PLEASE SEE **FEDERAL**, PAGE A10

P.1

A10  FRIDAY, SEPTEMBER 12, 2003  •  THE HARTFORD COURANT

## DCF Milestones

For more than a decade, lawyers for thousands of abused and neglected Connecticut children have been pressing the state Department of Children and Families to provide better services. They say the agency's chronic failures can be traced through the periodic findings of an independent federal monitor and repeated orders by a federal court judge. This is a partial history of the ongoing conflict.

**Dec. 1989:** Legal advocates for the children file a federal class action lawsuit against DCF, accusing it of failing to provide adequate child welfare services in more than 100 areas including abuse and neglect investigations, adoption, foster care, mental health care, caseloads and staffing.

**Jan. 1991:** Lawyers for the children and the state sign a formal federal consent decree to avoid costly and protracted litigation. Known as the "Juan F." consent decree after one of the child plaintiffs, the decree details in a series of inch-thick manuals what DCF must do to improve services, and establishes an independent monitor to periodically assess the state's progress.

**March 1993:** Budget cuts of more than $8.7 million at DCF results in noncompliance with the decree in terms of staffing, payments to foster parents and program improvements.

**June 1993:** U.S. District Judge Alan Nevas orders DCF to hire more staff, to reduce caseloads and to increase payments to foster parents.

**July 1994:** Federal monitor reports that caseloads continue to be a problem.

**Feb. 1995:** Monitor reports caseloads continue to be a problem.

**Feb. 1996:** Monitor reports DCF not meeting caseload standards.

**June 1996:** Judge Nevas decides DCF out of compliance with significant portions of one part of the decree. Nevas says the evidence is "replete with instances of children waiting for services that the defendants ... have to date failed to provide."

**June 2000:** Nevas accepts agreement between parties of new caseload and staffing standards.

**Nov. 2000:** Monitor finds that workers fail to make required face-to-face visits to children in foster homes 98 percent of the time and fail to make required telephone contacts 96 percent of the time. Also, more than 25 percent of foster homes exceed capacity and nearly 13 percent have expired licenses.

**Dec. 2000:** Nevas orders there be at least one social worker for every 40 foster families.

**Feb. 2001:** Monitor finds DCF must hire many additional social workers to reduce overtime and meet caseload and visitation standards.

**June 2001:** Monitor finds that for children in out-of-home placements waiting adoption, workers failed to see the child in past 90 days, that half the workers carried caseloads in excess of median standards and that some children were being relocated up to 10 times in the search for suitable foster care.

**July 2001-June 2002:** Lawyers for children intermittently accuse the state of noncompliance. DCF officials say they are concerned mandates are too restrictive. Nevas issues orders holding DCF accountable to visitation, adoption and mental health standards.

**Feb. 2002:** Lawyers for children agree to allow DCF greater flexibility in meeting some consent decree standards. Lawyers agree to let DCF try to meet 22 performance goals over the next 18 months in an attempt to prove the department's performance without strict federal oversight.

**April 2003:** Monitor finds DCF is "falling far short of agreed-upon measures" in reducing overcrowded foster homes, overstays in shelters and in recruiting new foster homes. It is also failing in its promise to conduct better health screenings of children in state care.

**July 2003:** Nevas issues order accepting monitor's findings that DCF is in significant noncompliance with caseload standards and staffing requirements; orders state to reduce caseloads and hire more staff, immediately.

**Aug. 2003:** DCF Commissioner Darlene Dunbar says the demands of the consent decree are unworkable. She says she would like to reduce the number of mandates and allow the agency to focus on a handful of key areas such as child safety, staff training and timely services. Lawyers for the children object.

**Sept. 2003:** Lawyers for children ask court to place DCF in federal receivership.

— The Hartford Courant

P.2

# Advocates Ask U.S. To Help

FROM PAGE ONE

CONTINUED FROM PAGE A10

had come."

about and who were not licensed foster parents.

While dealing with those issues, DCF officials regularly complained the orders of the consent degree were too confining. In a show of good faith, the children's lawyers last year agreed to give DCF greater management flexibility. But lingering tensions boiled over last month when an independent monitor reported the agency was still not meeting many of its fundamental goals.

In a recent report, the monitor said that children traumatized by abuse and neglect were actually getting worse in state care, he

According to recent reports by the court monitor, it takes DCF an average of four years to finalize an adoption, which is twice the national goal of two years set by the federal Adoption and Safe Families Act. It takes an average 20 months for state workers to begin the process by filing the appropriate paperwork.

Additionally, DCF field-workers are supposed to have no more than 20 cases each. A recent study showed that nearly half of the agency's 949 treatment workers had more than 20 cases.

In a 15-page letter supporting the request for receivership, Lust-

children are supposed to attend periodic treatment conferences, yet DCF notified those agents to attend only about half of the time; the actual participation rate was closer to 30 percent.

■ DCF is supposed to complete at least 85 percent of its investigations of abuse and neglect within 30 days. The monitor found it was closing cases in 30 days only about 63 percent of the time.

■ No more than 4 percent of children in foster care are allowed to live in homes above their licensed capacity, yet a recent study showed more than double, 9 percent, were living in over-

Child protection agencies are rarely placed in receivership, although many are currently under federal court supervision. The last agency to be put under federal control was in Washington, D.C., in the mid-1990s.

Connecticut's child protection agency has been under federal court supervision since 1991 when state officials agreed to a federal consent decree to resolve the class-action lawsuit that challenged the quality of care.

Since then, lawyers for the children have been in a nearly constant battle with the state to enforce what they feel are the minimum standards of care. Stone alone said she has been to court 15 times seeking orders for compliance.

All of this has taken place against a backdrop of highly publicized deaths of children and numerous independent investigations by Attorney General Richard Blumenthal and Child Advocate Jeanne Milstein. They blasted the agency for repeatedly failing to properly supervise and manage the thousands of vulnerable children in its care.

CONTINUED FROM PAGE A1

necticut School of Law.

"We have a legal obligation to enforce the rights of children in this state, who rely on DCF to be their parent," Stone said. "They deserve no less."

The child advocates submitted their request Thursday to D. Ray Sirry, the federally appointed court monitor who reports to U.S. District Judge Alan Nevas. The filing triggers mandatory negotiations between the child advocates and DCF, after which the court monitor will make a recommendation to the judge. Nevas will have the final word.

Officials at DCF say they have been making improvements and that placing the agency in federal receivership is the wrong way to go.

"Protecting children and providing child welfare services is a very difficult task that presents a lot of challenges," DCF spokes-