UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE, JR. | : | CIVIL ACTION NO. |
| ppa JANE DOE SR., | : | 3:01CV2298(SRU) |
| *Plaintiffs* | : | 3:03CV571(SRU) |
| | : | |
| | : | |
| | : | |
| V. | : | |
| | : | |
| CITY OF WATERBURY, ET AL., | : | |
| *Defendants* | : | JANUARY 16, 2004 |

**POST-HEARING MEMORANDUM OF PROPOSED INTERVENOR,
DARLENE DUNBAR, COMMISSIONER OF CHILDREN AND FAMILIES**

Darlene Dunbar, Commissioner of Children and Families,
("the Commissioner") submits this memorandum in further support
of her motion to intervene and be substituted as legal
representative for the minor plaintiffs. As discussed in more
detail below, the Department of Children and Families ("DCF"),
as the plaintiffs' sole guardian, has the obligation to care for
them and the exclusive authority to make all major life
decisions affecting their welfare. This broad authority
includes the power to make decisions with regard to legal
representation. DCF's authority supersedes and excludes any
powers that the children's mothers or other representatives may
once have possessed. Thus, regardless of the relative
qualifications of particular lawyers or the existence of legal
conflicts, it is for DCF and only DCF to decide which lawyers
will represent the children. In light of DCF's willingness and

sole authority to prosecute this matter for plaintiffs, the participation of a guardian ad litem or next friend is unnecessary and inappropriate. For that reason alone, the Court should grant Commissioner Dunbar's motion.

Moreover, wholly apart from their lack of authority to make representation decisions for the plaintiffs, the mothers are inappropriate legal representatives in light of their past misconduct and the existence of conflicts. Finally, the Office of the Attorney General, DCF's preferred legal counsel, is clearly qualified to conduct this litigation and is likely to do so in a manner more consistent with the plaintiffs' interests than private counsel. Among other considerations, the Office of the Attorney General will not reduce the plaintiffs' recovery by any fees or costs.

I.    DCF IS THE SOLE DECISION MAKER WITH REGARD TO REPRESENTATION ISSUES

At the outset, it is vital to explain the relationship between DCF and the plaintiffs. DCF, by virtue of state administrative and court proceedings, has assumed the role of legal guardian of the plaintiffs pursuant to state law.[1] It is long and well established that the determination of child

---

[1] The Commissioner was appointed guardian of the minor plaintiffs on October 29, 2002 by the Superior court for Juvenile Matters in Waterbury. See, *In re Tatiana J.*, 2002 WL 31606587 (Conn. Super. 2002).

guardianship is exclusively an issue of state law, and the federal courts have no authority to alter or disturb the rights and responsibilities that flow from such a status. *Ankenbrandt v. Richards,* 504 U.S. 689 (1992) citing *In re Burrus,* 136 U.S. 586 (1890).

Connecticut law defines a guardian as "one who has authority and obligations of guardianship." Conn. Gen. Stat. § 45a-604(6).  The authority and obligations of guardianship include "(A) the obligation of care and control; (B) the authority to make major decisions affecting the minor's education and welfare[.]" Conn. Gen. Stat. § 45a-604.  Once DCF assumes guardianship, the previous guardian loses any and all authority over the care, control and major life decisions of a child.  Cite.

Clearly, the decision of whether and through whom to prosecute a civil rights action relating to a child's sexual abuse is a matter involving the care and control of a child and a major life decision affecting the child's welfare. *Williams v. Cleaveland,* 76 Conn. 426, 434 (1904) As sole guardian of the children, DCF has the exclusive authority to engage, retain and/or discharge attorneys for the plaintiffs.  Whether the plaintiffs' present counsel were hired before or after DCF became guardian is irrelevant. In short, whatever representation decisions were made on behalf of the children by other parties

3

are not binding absent DCF's continuing consent.[2] *See, Orsi v. Senatore,* 230 Conn. 459 (1993)

II.   THE PARTICIPATION OF A NEXT FRIEND OR GUARDIAN AD LITEM IS INAPPROPRIATE AND UNNECESSARY

Rule 17 of the Federal Rules of Civil Procedure provides that "whenever an infant or incompetent person has a representative, *such as a general guardian,* … the representative may sue or defend on behalf of the infant or incompetent person."   F.R.C.P. 17(c)(emphasis added).  Moreover, only "an infant or incompetent person *who does not have a duly appointed representative* may sue by a next friend or guardian ad litem." Id. (emphasis added).  In light of DCF's role as guardian for the plaintiffs, the participation of a guardian ad litem or next friend is unnecessary and inappropriate under the Federal Rules.

The Second Circuit Court of Appeals has construed and applied F.R.C.P. 17(c) to allow a next friend or guardian ad litem to prosecute an action on behalf of a child in lieu of her general representative only "if the representative is unable or refuses to act or his interests conflict with the person represented, [in which case] the infant or incompetent may sue in federal court by his next friend or by a guardian ad litem."

---

[2] While there may be exceptional cases where permitting a party to change her litigation counsel would result in undue prejudice or unreasonable delay, these are not such cases.  These matters

*Ad Hoc Comm. Of Concerned Teachers v. # 11 Greenburgh Free
School Dist.,* 873 2d 25, 29 (1989); *see also Whitmore v.
Arkansas,* 495 U.S. 149, 163 (1990)(it is next friend's burden to
"clearly establish propriety of his status.")  Clearly, the
Commissioner is willing and able to prosecute the plaintiffs'
action, and there can be no suggestion that the Commissioner's
and the plaintiffs' interests conflict.  Consequently, the
plaintiffs need not and should not be represented by a next
friend or guardian ad litem.

III.  <u>THE ATTORNEY GENERAL IS QUALIFIED TO REPRESENT THE
CHILDREN AND WILL DO SO IN A MANNER MOST CONSISTENT
WITH THEIR INTERESTS.</u>

The Commissioner of Children and Families prefers that the
plaintiffs be represented by the Office of the Attorney General.
Given the Commissioner's authority as guardian to select counsel
for the plaintiffs, it need only be noted that the Assistant
Attorneys General who would prosecute this matter are members in
good standing of the Bar of the State of Connecticut and of this
court.

There is one noteworthy consideration that distinguishes
the Office of the Attorney General from the plaintiffs' present
private counsel.  The Office of the Attorney General will not

are still in the very early stages, and no significant delay or

seek to reduce any recovery obtained by the amount of its

attorneys fees or costs.  Typically, counsel in a § 1983 action

is entitled to both statutory attorneys fees under 42 U.S.C. §

1988 and contingent fees as established by the representation

agreement, and present counsel has not represented that they

will deviate from this fee approach. *Sabir v. Jowitt, 214 F.*

*Supp. 2d 226, 251 (D. Conn. 2002)*. Thus, from the perspective of

legal fees, the plaintiffs' interest are best represented by the

Office of the Attorney General.[3]


IV.    CONFLICT ISSUE

The Commissioner asserts that the mothers here clearly are not

appropriate legal representatives for their children.  With

respect to the mother in Docket No. 301CV2298 (SRU), on December

10, 2003, her parental rights were terminated and she no longer

has **any** legal relationship to her daughter.  The Superior Court

for Juvenile Matters (Taylor, J.) made the following relevant

findings:

1.    The mother had been abusing drugs for over ten years

and had had numerous incarcerations due to substance abuse and

prostitution.  In addition, she has been convicted of welfare

---

prejudice would result from granting the Commissioner's motion.
[3] The Commissioner does not suggest that present counsel is not
entitled to reasonable compensation for work performed to date

fraud, breach of peace, larceny, criminal impersonation, robbery and criminal mischief.  She had spend more of her adult life in and out of jail and is currently incarcerated with the earliest release date October, 2005. M. of Dec. pp. 19-20.

2.  The mother has three minor children by three different fathers, but she is only able to identify two of the fathers and is not able to identify the father of the child who is the minor plaintiff in these proceedings. M. of Dec. p. 6.

3. The mother has not cared for this child  since the child was six months old; the child is now 13 years old.  Even when the mother was not in prison, she was not the child's primary caretaker. M. of Dec. p. 8.

4.  Based on her "propensity to commit criminal acts, abuse substances and abrogate her child rearing duty to …others, she will never be consistently available to her children.  She is far too occupied with abusing substances, committing crimes and serving time for her lawless acts….She has never been a consistent resource for her children in the past nor has she ever consistently supported her children and consistently provided for these children." M. of Dec. p. 20.

5. The mother has deprived herself of the opportunity to protect her daughter, and because of her parental deficiencies,

_____

as provided by the representation agreements, consistent with applicable law.

she exposed her child to an "unsuitable and dangerous atmosphere." M. of Dec. p. 35.

6. The mother exposed this child to her own substance abuse issues by purchasing drugs together; she also used drugs while her children were in utero and all were born positive for drugs.[4] M. of Dec. p. 21.

7. The child has no on-going parent/child relationship with her mother, has negative memories of her mother and doesn't trust her as she is fearful she will be returned to her care and face her mother's old lifestyle of abusing drugs. The child does not seek comfort or affection from her mother and rarely speaks about her. M. of Dec. p. 25-26.

8. The mother has borderline mental ability, substantial mental and emotional problems and has shown poor judgment. M. of Dec. p. 34. She "lacks the attributes and characteristics necessary to fulfilling a valid parental role." M. of Dec. p. 35.

9. Based on clear and convincing evidence, it is not in the child's best interest to continue to maintain any legal relationship with her mother. M. of Dec. p. 33.

---

[4] In a prior decision involving this family, the Superior Court for Juvenile Matters (Taylor, J.) found that the child had provided clear urine for her mother so that her mother could obtain methadone. See, *In re Tatiana J.,* 2002 WL 31606587 (Conn. Super. 2002).

The extensive findings of the state court regarding the mother's fitness as a parent, and the court's decision to terminate her parental rights and all legal relationships with her child offer ample basis for this court to determine that she is a wholly inappropriate person to act as legal representative for her daughter, particularly where the child's guardian, and now statutory parent, is ready, willing and able to serve as legal representative of the child and indeed has a duty to do so.

With respect to the mother in Docket No. 3:03 CV 571, the state court's decision in *In re Tatiana J.* 2002 WL 316706587 (Conn. Super. 2002) (see attached), speaks for itself regarding her appropriateness to act as legal representative for her daughter.[5] It would appear that she is in agreement with the Commissioner's position that someone else should act on her daughter's behalf, in view of her motion for appointment of guardian ad litem and to withdraw as next friend for her daughter.

In sum, neither mother is an appropriate next friend for the children in these proceedings. A next friend must be

---

[5] In that decision, the mother is identified as Guitana J. The decision covers both families who are the subject of these proceedings and identifies the mother in Docket No. 301CV2298 (SRU) as Nanette M.

"truly dedicated to the best interests of the persons on whose behalf he seeks to litigate." *Praseuth v. Werbe*, 1995 U.S. App. Lexis 399911 (2d Cir. 1995), citing *Whitmore v. Arkansas*, 495 U.S. 149 (1990). Here it is apparent that neither mother has shown herself to be so dedicated.

WHEREFORE, for the reasons cited above and also propounded in prior briefs submitted in support of the pending motions, the Commissioner respectfully requests the motion to intervene and be substituted be granted.

DARLENE DUNBAR

COMMISSIONER, CHILDREN AND
FAMILIES

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:    _Susan T. Pearlman_
Susan T. Pearlman
Assistant Attorney General
Office of the Atty. General
110 Sherman Street
Hartford, CT 06105

Perry Zinn Rowthorn
Assistant Attorney General
55 Elm Street
Hartford, CT. 06105

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 16th day of January, 2004,  first class postage prepaid to:

Attorney Gerald L. Harmon
290 Pratt Street
Meriden, CT. 06450

Attorney Michael S. Hillis
Dobrowksi, Knapsack and Hillis, LLC
205 Whitney Ave.
New Haven, CT. 06511

Attorney Michael W. Mackniak
87 Meadow Street
Naugatuck, CT 06770

Attorney Elliot Spector
Sack, Spector and Karsten
836 Farmington Ave.
West Hartford, CT 06119-1544

Attorney Erskine D. McIntosh
The Law Offices of Eskine D. McIntosh, P.C.
129 Whitney Ave, Second Floor
Hamden, CT. 06518-2364

Susan T. Pearlman
Assistant Attorney General

11