01CV2298 Prel Stmt

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 JUL 28 P 1:30

*****************************

JANE DOE, JR.                  :        CIVIL ACTION CASE NO.
    PPA, JANE DOE SR.         :        3:01CV2298(SRU)
JANE DOE SR., individually     :
V.                             :

CITY OF WATERBURY,             :        JULY 28, 2005
PHILIP GIORDANO,               :
    In his capacity as MAYOR, :
    CITY OF WATERBURY         :
PHILIP GIORDANO, individually. :

****************************            FEDERAL BAR NO. CT11867

Now comes Jane Doe, Sr., PPA of Jane Doe, Jr., and individually, by her attorney,

Michael S. Hillis, and makes the following for her amended complaint.

## PRELIMINARY STATEMENT

1.      Plaintiff, a female resident of the State of Connecticut and citizen of the United

States brings this action for violation of certain rights protected by the Fourteenth

and Thirteenth Amendments to the United States Constitution, 42 U.S.C. § 1983,

§ 1985, § 1986; Title 18 U.S.C. § 2422, § 2423, § 2241, § 2242, § 2243, § 2244, §

2255, § 371, § 1584, § 241, and the common law of the State of Connecticut.

## PARTIES, JURISDICTION & VENUE

2.      At all times mentioned herein the plaintiff, Jane Doe, Jr., is and was an African

American minor child and a resident of the City of Waterbury and State of

Connecticut.  This action is brought by and through her mother and next friend,

Jane Doe, Sr., who is and was at all times mentioned herein an African American

and the legal guardian of Jane Doe, Jr.

3.      This action is brought in anonymity because the subject of this lawsuit is the

sexual assault of Jane Doe, Jr. The privacy of Jane Doe, Jr., needs to be protected so that intimate and distressing details of this sexual assault do not cause further injury and humiliation to her. In addition, there is no countervailing public interest that would require disclosure of the minor plaintiff's identity at this time.

4.   At all times mentioned herein Guitana Jones (hereinafter "Jones") is and was an African American woman and biological aunt of Jane Doe, Jr., residing in Waterbury, Connecticut and known to Mayor Philip Giordano and other City of Waterbury officials as a prostitute and drug addict.

5.   At all times mentioned herein the defendant, Mayor Philip Giordano (hereinafter "Mayor Giordano") is and was the Mayor of the City of Waterbury, Connecticut, who took an oath three times to uphold the Constitution of the State of Connecticut and of the United States.

6.   At all times mentioned herein the defendant, City of Waterbury (hereinafter "the City"), is and was a municipality located within the State of Connecticut with office buildings located at 235 and 236 Grand Street, governed by the effective Charter and Code of Ordinances then in effect, and charged with upholding the rights of all its citizens as guaranteed by the Constitution of the United States, federal law, the Constitution of the State of Connecticut, and Connecticut law.

7.   The City was served with a notice of intent to sue on behalf of Jane Doe, Jr., on August 27, 2001 pursuant to CONN. GEN. STAT. § 7-465 (See Plaintiff's Original Complaint) and with a notice of intent to sue on behalf of Jane Doe, Sr. on October 16, 2001 pursuant to CONN. GEN. STAT. § 7-465 (See Plaintiff's Original

Complaint).

8.    Subject matter jurisdiction over the Title 18 and 42 U.S.C. § 1983, §1985, §1986 claims in the complaint is conferred upon this court by 28 U.S.C. § 1331 and §1343.

9.    Subject matter jurisdiction over the state law claims in the complaint is conferred upon this court by federal question jurisdiction under 28 U.S.C. § 1331 and by supplemental jurisdiction under 28 U.S.C. § 1367.

10.   Venue is proper in this court under 28 U.S.C. §1391 because defendant resides in this district and the events complained of took place in this district.

## AMENDED COMPLAINT

11.   Under the Charter of the City of Waterbury (hereinafter "City Charter"), Mayor Giordano was the Chief Executive Officer of the City, its highest ranking official and final policymaker.

12.   The City Charter establishes a "Strong Mayor" form of government wherein the Mayor is involved in all aspects of municipal government and establishes government policy.

13.   The Mayor of the City of Waterbury acts as the "alter-ego" of the City of Waterbury.

14.   The City Charter allows the Mayor "ex officio" status as chairman of all City boards and committees involving City finances and City expenditures.

15.   The City Charter confers upon the Mayor the duties of overseeing all department heads, including the police department.

16. Under the City Charter, the Mayor appoints all City board members, commissions, and department heads and has the authority to call special meetings of any board of the City.

17. The City Charter authorizes and empowers the Mayor to assign to any officer of the City of Waterbury any rights or duties that are not assigned in the City Charter, as the Mayor may determine.

18. Under the City Charter, the Mayor has the power and discretion to assume the entire control and direction of the police force for a period not exceeding fifteen (15) days in cases of emergency, and to exercise all powers conferred upon the police and departments related thereto.

19. Under the City Charter, the Mayor has the power and discretion to exercise whenever necessary, within the limits of the City, all powers given by law to Sheriffs and require the action of the Sheriffs, Deputy Sheriffs or policemen, or any and all of them together, to execute the laws within the City limits.

20. Under the City Charter, the Mayor has the power and discretion to suspend, and remove for cause, any board member appointed by the Mayor, or any appointed official.

21. Under the City Charter, the Mayor has the power to make and enforce such rules and regulations as he may deem advisable for and concerning the organization, management, and operation of all offices and departments and agencies, and within the limits of appropriations, to have power to fix the numbers and kinds of offices and positions and rates of compensation for all officers and employees,

4

except as otherwise provided by the Charter.

22. Under the City Charter, the Mayor has the power and discretion to have a seat and voice and introduce ordinances on the board of Aldermen.

23. Under the City Charter, it is the duty of the Mayor to either approve or disapprove each vote, resolution, order or ordinance passed by the board of Aldermen.

24. Under the City Charter, the Mayor has the power and discretion to issue a warrant, to compel the attendance of City Board members at meetings.

25. Under the City Charter, the Mayor has a final say in the budget, with general supervision of the Budget Director and the Director of Finance.

26. Under the City Charter, it is the duty of the Mayor to cause to laws and ordinances to be executed and enforced and to conserve the peace within the City and to be responsible for the good order and efficient government of the City.

27. At all times mentioned herein Mayor Giordano operated and/or was driven in an unmarked police vehicle owned and maintained by the City of Waterbury, bearing the Connecticut license plate "1-WBY." Said vehicle was equipped with sirens, lights, and a police radio.

28. Mayor Giordano used the lights and sirens in his police vehicle throughout the City of Waterbury for non-emergency situations personally or with a member of his staff as a driver.

29. In his official capacity as Mayor, Giordano was assigned and used a cellular phone with the number (203) 410-7365, which was subscribed to by the City of Waterbury, and fees for usage of which were paid for by the City of Waterbury.

5

The service provider for this cellular phone was Nextel Communications, which is located in Virginia. The cellular telephone was a facility and means of interstate and foreign commerce and was used by Mayor Giordano to conduct City business and communications.

30.  In his official capacity as Mayor, Giordano was assigned and used a cellular phone with the number (203) 525-2655, which was subscribed to by the City of Waterbury, and fees for usage of which were paid for by the City of Waterbury. The service provider for this cellular phone was Cingular Wireless, which is located in Georgia. The cellular telephone was a facility and means of interstate and foreign commerce and was used by Mayor Giordano to conduct City business and communications.

31.  Mayor Giordano unilaterally approved contracts for the above referenced cellular telephone service to be used by himself and his immediate staff.

32.  Mayor Giordano authorized Thomas Ariola, Jr.(hereinafter "Ariola"), Budget Director of the City of Waterbury, to pay for cellular phone service authorized by Mayor Giordano.

33.  Ariola knew Mayor Giordano was using his cellular telephone to solicit legal and illegal sexual liaisons.

34.  As per Mayor Giordano's policy, cellular service bills were paid by the City despite the fact that they included personal telephone calls wherein Mayor Giordano solicited legal and illegal sexual liaisons.

35.  At all relevant times, the finance department never questioned any of the cellular

6

phone bills submitted to it by the office of the Mayor, but the City and Mayor Giordano authorized the finance department to simply pay these bills.

36. At all relevant times, Mayor Giordano carried a badge identifying him as the City of Waterbury Mayor. Mayor Giordano's staff member, William Cugno, obtained City of Waterbury badges for himself, Mayor Giordano and other members of Mayor Giordano's staff. Mayor Giordano and the members of his staff who received badges had arrest authority pursuant to the City of Waterbury Charter.

37. Mayor Giordano's staff instilled the sense of military command in Giordano's administration as Mayor.

38. Mayor Giordano exhibited authority and power over the City and its departments as demonstrated by, including but not limited to, the following:

      a.)    Mayor Giordano used the City's emergency fund and his control over the board of finance, granted by the City Charter, to procure a burner for a school building while school was not in session;

      b.)    Mayor Giordano used the City's emergency fund and his control over the board of finance, granted to him by the City Charter, to procure the demolition of a building;

      c.)    Mayor Giordano and/or his staff, used the power and control over the board of finance granted by the City Charter, to have a car detailed in anticipation of a visit from the President of the United States, without using the proper channels to approve such an expenditure;

7

d.)     As the final policymaker in the City, Mayor Giordano was able to accept gifts in exchange for securing City contracts in violation of the City Charter;

e.)     Mayor Giordano used his power and control over the board of finance, granted to him by the City Charter, after the State of Connecticut had taken control of the City's finances in March of 2001, to secure a contract with a natural gas company that had made contributions to Giordano's United States Senate Campaign;

f.)     At all relevant times, Mayor Giordano held meetings with City of Waterbury Department Heads and held press conferences with the media;

g.)     On or around January of 1996, Mayor Giordano issued an executive order to the Superintendent of Police regarding the promotion of people within the police department;

h.)     On or around January 31, 1996, Mayor issued an executive order for all department heads to reduce the number of take-home vehicles that were supplied by City employees;

i.)     Mayor Giordano involved himself with Police Department response time;

j.)     Mayor Giordano was notified regarding any City of Waterbury emergencies;

k.)     Mayor Giordano was present at murder and other crime scenes;

8

l.)     Mayor Giordano participated in the Waterbury Police Department's "Operation Sweep," initiated bike patrol, and was involved in establishing police precincts;

m.)     The City of Waterbury Police Department submitted its budget to Mayor Giordano;

n.)     Mayor Giordano administered oaths to police officers at swearing-in ceremonies;

o.)     Superintendent of Police Flaherty was suspended by Mayor Giordano for failure to follow an order given by Mayor Giordano and for failure to keep the Mayor informed regarding certain police matters;

p.)     Superintendent of Police Flaherty was effectively terminated by Mayor Giordano and removed from his position for two years;

q.)     Mayor Giordano was visited by Waterbury school children at the City of Waterbury Mayor's Office and also made appearances as Mayor at City of Waterbury schools; and

r.)     In March of 2001, the State of Connecticut had an oversight board come in and take over the finances of the City. The Mayor fought for and retained a position on the oversight board.

39.     At all times herein, Jane Doe, Jr., had a right to personal bodily integrity under the Fourteenth Amendment, the right to be free from unauthorized and unlawful physical abuse and the right to be free from sexually motivated physical assaults

and coerced sexual activity.

40.    At all times herein, Jane Doe, Jr., had a right not to be subjected to compulsory labor akin to African slavery under the Thirteenth Amendment.

41.    For an undetermined period of time commencing in approximately November of 2000 until approximately July of 2001, Mayor Giordano and Jones arranged through the use of City authorized cellular phones to transport Jane Doe, Jr., and her cousin, (hereinafter "the minor children") for the purpose of engaging in aggravated sexual abuse and sexual abuse, by coercing the minor children to engage in sexual acts resulting in bodily injury to Jane Doe, Jr.

42.    Jones arranged for drivers to bring Jane Doe, Jr., to the office of the Mayor, 236 Grand Street, Waterbury, Connecticut; 827 Oronoke Road, Building 10, Unit Three, Waterbury, Connecticut, the residence of Budget Director Thomas Ariola; 157 South Wind Road, Waterbury, Connecticut, the residence of Mayor Giordano; and 1169 West Main Street, 1st Floor, Waterbury, Connecticut, the law office of Mayor Giordano.

43.    For an undetermined period of time commencing in approximately November 2000 until July of 2001 Mayor Giordano did solicit sexual acts from Jane Doe, Jr. Mayor Giordano utilized the cellular phone provided to him by the City in order to solicit said sexual acts.

44.    Said sexual acts occurred between Mayor Giordano and Jane Doe, Jr.

45.    Said sexual acts occurred in facilities owned and maintained by the City, including the Mayor's Office at a time when the Office was closed to the public..

46. Said sexual acts occurred in facilities owned and operated, or in the alternative, under the possession and control of, Mayor Giordano's law firm.

47. Said sexual acts occurred on property in the possession of Budget Director Ariola.

48. Said sexual acts occurred in the home of Mayor Giordano.

49. Said sexual acts occurred pursuant to an agreement between Mayor Giordano and Jones whereby they utilized Mayor Giordano's City vehicle, City telephones and City property to arrange for sexual encounters with Jane Doe, Jr., and whereby Mayor Giordano would pay Jones to for said sexual encounters with Jane Doe, Jr.

50. Sexual acts occurred between Mayor Giordano and Jane Doe, Jr., when he was acting in his official capacity as the Mayor of the City of Waterbury;

51. Sexual acts occurred between Mayor Giordano and Jane Doe, Jr., when he was using the car assigned to the Mayor as the highest ranking official of the City of Waterbury.

52. Mayor Giordano repeatedly told Jones following sexual encounters that he would have her placed in jail if she told anyone about said sexual acts.

53. Jones believed Mayor Giordano ran the City of Waterbury and that the Police Department worked for him.

54. Mayor Giordano once told Jones that he had been at a murder scene.

55. On one occasion, Mayor Giordano had Jones telephone his home pretending to be the City of Waterbury police in order to afford him an excuse to leave his family and meet for a sexual encounter.

56. Jane Doe, Jr., knew that Philip Giordano was the Mayor of the city of Waterbury.

11

Jane Doe, Jr., thought the Mayor could "rule everyone" and was the "boss of everyone" in the City of Waterbury.

57. Following said sexual acts Mayor Giordano told Jane Doe, Jr., not to tell anyone what took place or "something bad" would happen.

58. Jane Doe, Jr., feared Mayor Giordano because she thought something bad would happen to her or her family if she told anyone about said sexual acts.

59. The minor children knew the Mayor of the City of Waterbury and believed that he had tremendous power and that he watched over them "like God."

60. Individuals who have engaged in corrupt and illegal behavior have customarily run the City of Waterbury.

61. Ariola and Mayor Giordano were high-ranking officials in the government of the City of Waterbury with the ability to establish custom and policy within the administration.

62. Ariola and Mayor Giordano had an agreement whereby Mayor Giordano was allowed to use the home of Ariola to engage in legal and illegal sexual liaisons.

63. It was the custom and policy of Mayor Giordano that Mayor Giordano would use the City buildings, City issued cell phones and city issued automobiles for the purpose of engaging in legal and illegal sexual liaisons without the scrutiny of the City's Budget Director.

64. Due to Mayor Giordano's, and thus the City of Waterbury's, policy regarding the use of cellular telephones to arrange for legal and illegal sexual liaisons, all women over whom the Mayor and all City officials had a duty to protect, were

potential foreseeable victims of unwanted sexual contact by Mayor Giordano.

65.    All city officials took an oath to uphold the Constitution of the United States, the laws of Connecticut and to protect and serve the citizens of the City of Waterbury.

66.    At all relevant times, the City of Waterbury was negligent, recklessly indifferent or deliberately indifferent to Mayor Giordano's abuse of the final authority given to him under the City Charter.

67.    At all relevant times, the City of Waterbury was negligent, recklessly indifferent or deliberately indifferent to Mayor Giordano's governmental custom to use City cellular phones to arrange for the sexual abuse of minor children, even though this custom was persistent and widespread.

68.    At all relevant times, the City of Waterbury was negligent, recklessly indifferent or deliberately indifferent to Mayor Giordano's governmental custom to use his City-authorized vehicle to arrange and use said car for the sexual abuse of minor children, even though this custom was persistent and widespread.

69.    At all relevant times, the City of Waterbury was negligent, recklessly indifferent or deliberately indifferent to Mayor Giordano's governmental custom to use his City office to arrange for and use said office to sexually abuse minor children, even though this custom was persistent and widespread.

70.    At all relevant times, the City of Waterbury was negligent, recklessly indifferent or deliberately indifferent to Mayor Giordano's governmental custom to continuously abuse powers conveyed to him by the City Charter, even though this custom was persistent and widespread.

71.    On March 25, 2003, Mayor Giordano was convicted of the following counts:

> **a) COUNT ONE:** From in or about November 2000 to in or about July 2001, the exact dates unknown to the Grand Jury, in the District of Connecticut, PHILIP A. GIORDANO, the defendant, while acting under color of the laws of the State of Connecticut, did willfully deprive Victim 1 of rights and privileges secured and protected by the Constitution and laws of the United States, that is the right not to be deprived of liberty without due process of law, which includes the right to be free from aggravated sexual abuse, by coercing and forcing Victim 1, who had not attained the age of 12 years, to engage in fellatio and genital contact with GIORDANO and by touching Victim 1's genitals and breasts, resulting in bodily injury to Victim 1. All in violation of Section 242 of Title 18, United States Code;

> **b) COUNT TWO:** From in or about November 2000 to in or about July 2001, the exact dates unknown to the Grand Jury, in the District of Connecticut, PHILIP A. GIORDANO, the defendant, while acting under color of the laws of the State of Connecticut, did willfully deprive Victim 2 of rights and privileges secured and protected by the Constitution and laws of the United States, that is the right not to be deprived of liberty without due process of law, which includes the right to be free from aggravated sexual abuse, by coercing and forcing Victim 2, who had not attained the age of 12 years, to engage in fellatio and genital contact with GIORDANO and by touching Victim 2's genitals and breasts, resulting in bodily injury to Victim 2. All in violation of Section 242 of Title 18, United States Code.

> **c) COUNT THREE:** From on or about February 23, 2001 through on or about July 21, 2001, the exact dates unknown to the Grand Jury, in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, unlawfully, willfully and knowingly combined, conspired, confederated and agreed, together and with each other, to knowingly initiate the transmission of the names of Victim 1 and Victim 2 and other identifying information by using facilities and means of interstate and foreign commerce, that is, cellular telephones assigned numbers (203) 410-7365 and (203) 525-2655 and other telephones, knowing that Victim 1 and Victim 2 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 and Victim 2 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual

14

abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86).

In furtherance of the conspiracy, and in order to accomplish its objectives, at various times during the course of the conspiracy, the following overt acts, among others, were committed in the District of Connecticut and elsewhere:

(a)     GIORDANO and Guitana M. Jones initiated and/or received each of the telephone communications set forth in Counts Four through Eighteen of this Superseding Indictment.

(b)     Jones arranged for drivers to bring her and Victim 1 and/or Victim 2 to 1169 West Main Street, First Floor, Waterbury, Connecticut, which was GIORDANO's law office.

(c)     Jones arranged for drivers to bring her and Victim 1 and/or Victim 2 to 157 Southwind Road, Waterbury, Connecticut, which was GIORDANO's residence.

(d)     Jones arranged for drivers to bring her and Victim 1 and/or Victim 2 to 827 Oronoke Road, Building 10, Unit 3, Waterbury, Connecticut.

(e)     Jones arranged for drivers to bring her and Victim 1 and/or Victim 2 to the Office of the Mayor, City Hall, 236 Grand Street, Waterbury, Connecticut.

f)      On numerous occasions, GIORDANO paid, and Jones accepted, money for Jones bringing Victim 1 and/or Victim 2 for the purpose of performing sexual acts.

All in violation of Section 371 of Title 18, United States Code.

15

**d) COUNT FOUR:** On or about February 23, 2001, at approximately 4:51 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 410-7365 and a telephone assigned the number (203) 597-9199, knowingly initiated the transmission of the name of Victim 1, knowing that Victim 1 had not attained the age of 16 years, with the intent to entice, encourage, offer, and solicit Victim 1 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**e) COUNT FIVE:** On or about February 24, 2001, at approximately 12:38 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 410-7365 and a telephone assigned the number (203) 753-8416, knowingly initiated the transmission to the name of Victim 1, knowing that Victim 1 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**f) COUNT SIX:** On or about February 26, 2001, at approximately 8:47 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203)

410-7365 and a pay telephone assigned the number (203) 574-9538, knowingly initiated the transmission of the name of Victim 1, knowing that Victim 1 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**g) COUNT SEVEN:** On or about March 2, 2001, at approximately 2:14 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned numbers (203) 410-7365 and a telephone, knowingly initiated the transmission of the name of Victim 1, knowing that Victim 1 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**h) COUNT EIGHT:** On or about March 9, 2001, at approximately 12:18 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 410-7365 and a telephone assigned the number (203) 755-0132, knowingly initiated the transmission of the name of Victim 1, knowing that Victim 1 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 to engage in sexual activity for which any person may be criminally

prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**i) COUNT NINE:** On or about March 12, 2001, at approximately 6:50 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 410-7365 and a telephone assigned the number (203) 755-0132, knowingly initiated the transmission of the name of Victim 2, knowing that Victim 2 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 2 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**j) COUNT ELEVEN:** On or about April 3, 2001, at approximately 5:22 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 525-2655 and a telephone assigned the number (203) 753-8416, knowingly initiated the transmission of the name of Victim 2, knowing that Victim 2 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 2 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if

the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**k) COUNT TWELVE:** On or about April 17, 2001, at approximately 5:52 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 525-2655 and a telephone, knowingly initiated the transmission of the names of Victim 1 and Victim 2, knowing that Victim 1 and Victim 2 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 and Victim 2 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**l) COUNT THIRTEEN:** On or about April 20, 2001, at approximately 2:12 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 525-2655 and a telephone, knowingly initiated the transmission of the name of Victim 1, knowing that Victim 1 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk

of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**m) COUNT FOURTEEN:** On or about June 6, 2001, at approximately 4:50 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 525-2655 and a telephone, knowingly initiated the transmission of the names of Victim 1 and Victim 2, knowing that Victim 1 and Victim 2 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 and Victim 2 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**n) COUNT FIFTEEN:** On or about June 20, 2001, at approximately 6:50 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 525-2655 and a telephone, knowingly initiated the transmission of the name of Victim 2, knowing that Victim 2 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 2 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**o) COUNT SIXTEEN:** On or about June 24, 2001, at approximately 4:37 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 525-2655 and a telephone assigned the number (203) 753-8416, knowingly initiated the transmission of the name of Victim 2 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 2 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**p) COUNT SEVENTEEN:** On or about July 9, 2001, at approximately 6:57 p.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number (203) 525-2655 and a telephone, knowingly initiated the transmission of the name of Victim 1, knowing that Victim 1 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

**q) COUNT EIGHTEEN:** On or about July 12, 2001, at approximately 11:54 a.m., in the District of Connecticut, PHILIP A. GIORDANO, the defendant and Guitana M. Jones, who is not a defendant herein, using facilities and means of interstate and foreign commerce, that is, a cellular telephone assigned number

(203) 525-2655 and a telephone, knowingly initiated the transmission of the names of Victim 1 and Victim 2, knowing that Victim 1 and Victim 2 had not attained the age of 16 years, with the intent to entice, encourage, offer and solicit Victim 1 and Victim 2 to engage in sexual activity for which any person may be criminally prosecuted, including, but not limited to aggravated sexual abuse (18 U.S.C. Section 2241), sexual abuse (18 U.S.C. Section 2242), sexual abuse of a minor (18 U.S.C. Section 2243), and abusive sexual contact (18 U.S.C. Section 2244), if the sexual activity occurred in the special maritime and territorial jurisdiction of the United States, and sexual assault in the first degree (Connecticut General Statutes Section 53a-70), sexual assault in the second degree (Connecticut General Statutes Section 53a-71), risk of injury to a minor (Connecticut General Statutes Section 53-21), and promoting prostitution in the first degree (Connecticut General Statutes Section 53a-86). All in violation of Sections 2425 and 2 of Title 18, United States Code.

## COUNT ONE
## DEPRIVATION UNDER COLOR OF STATE LAW OF RIGHTS PROTECTED BY FEDERAL LAW, IN VIOLATION OF 42 U.S.C. § 1983 AS TO MAYOR GIORDANO AND THE CITY OF WATERBURY

72.    The plaintiff re-alleges and incorporates all of the allegations contained in paragraphs 11-71 of the foregoing, including but not limited to the above Factual Basis of the Claim, in their entirety.

73.    Mayor Giordano's and the City of Waterbury's conduct as described above violated Jane Doe, Jr.'s right to not be deprived of her bodily integrity without due process of law under the Fourteenth Amendment of the Constitution of the United States, in one or all of the following ways:

a)    Mayor Giordano committed aggravated sexual abuse toward Jane Doe, Jr., in violation of 18 U.S.C. § 2241;

b)    Mayor Giordano sexually abused Jane Doe, Jr., in violation of 18 U.S.C. § 2242;

22

c)     Mayor Giordano sexually abused Jane Doe, Jr., a minor child in violation of 18 U.S.C. § 2243;

d)     Mayor Giordano engaged in sexually abusive contact with Jane Doe, Jr., in violation of 18 U.S.C. § 2244;

e)     Mayor Giordano sexually assaulted Jane Doe, Jr., in violation of CONN. GEN. STAT. § 53a-70;

f)     Mayor Giordano put Jane Doe, Jr., a minor child, at risk of injury in violation of CONN. GEN. STAT. § 53-21; and

g)     Mayor Giordano engaged in activity, which promoted prostitution in violation of CONN. GEN. STAT. § 53a-86.

74.     Mayor Giordano's and the City of Waterbury's conduct as described above violated Jane Doe, Jr.'s right to be free from personal injury arising out of violations of 18 U.S.C. § 2241(c), § 2242, § 2243, § 2422, 2423, all in violation of 18 U.S.C. § 2255.

75.     Mayor Giordano's and the City of Waterbury's conduct as described above violated Jane Doe, Jr.'s rights under the Thirteenth Amendment to the Constitution of the United States as Jane Doe, Jr., was subjected to compulsory labor akin to African slavery, being sold for illicit sexual acts to Mayor Giordano by Jones and coerced by physical force or threat of physical force into performing said acts.

76.     Mayor Giordano engaged in such conduct as described above under color of state law and in his official capacity as the Mayor of the City of Waterbury.

77.    Mayor Giordano acted with malicious intent and reckless indifference.

78.    The City of Waterbury Charter gave Mayor Giordano final decisionmaking and/or

policymaking authority, as described above, enabling him to accomplish the above

acts.

79.    The City of Waterbury was deliberately indifferent to the totality of circumstances

surrounding Jane Doe, Jr., by not discovering, during the ordinary course of its

business by and through a review of the cellular telephone records used by Mayor

Giordano, that Mayor Giordano and Jones were arranging for Jane Doe, Jr., to be

subjected to sexual abuse and/or slavery akin to African slavery or involuntary

servitude via said cellular phones' use whereby Jane Doe, Jr., was routinely and

regularly sold to Mayor Giordano by Jones.

80.    Mayor Giordano's and the City of Waterbury's conduct has caused, continues to

cause, and will, in the future, cause Jane Doe, Jr., to suffer from extreme

emotional distress including, but not limited to, emotional pain, suffering,

inconvenience, mental anguish and loss of enjoyment of life, loss of earning

capacity, medical and psychiatric services, loss of innocence and loss of youth.


**COUNT TWO**
**CONSPIRACY TO DEPRIVE UNDER COLOR OF STATE LAW RIGHTS**
**PROTECTED BY FEDERAL LAW IN VIOLATION OF 42 U.S.C. § 1985 AS TO**
**MAYOR GIORDANO AND THE CITY OF WATERBURY**

81.    The plaintiff re-alleges and incorporates all of the allegations contained in

paragraphs 11-71 of the foregoing, including but not limited to the above Factual

24

Basis of the Claim, in their entirety.

82.    Mayor Giordano and Jones made an unlawful agreement and made overt acts

relating to the solicitation and facilitation of sexual acts by or with Jane Doe, Jr.

83.    Mayor Giordano and Jones conspired to act with malicious intent and because of

Jane Doe, Jr.'s race and/or gender.

84.    Said conspiracy stemmed from and/or resulted in a City of Waterbury policy

and/or custom.

85.    Mayor Giordano's and the City of Waterbury's conduct as described above

violated Jane Doe, Jr.'s right to not be deprived of her bodily integrity without due

process of law under the Fourteenth Amendment of the Constitution of the United

States, in one or all of the following ways:

a)    Mayor Giordano committed aggravated sexual abuse toward Jane Doe, Jr.,

in violation of 18 U.S.C. § 2241;

b)    Mayor Giordano sexually abused Jane Doe, Jr., in violation of 18 U.S.C. §

2242;

c)    Mayor Giordano sexually abused Jane Doe, Jr., a minor child in violation

of 18 U.S.C. § 2243;

d)    Mayor Giordano engaged in sexually abusive contact with Jane Doe, Jr., in

violation of 18 U.S.C. § 2244;

e)    Mayor Giordano sexually assaulted Jane Doe, Jr., in violation of CONN.

GEN. STAT. § 53a-70;

f)    Mayor Giordano put Jane Doe, Jr., a minor child, at risk of injury in

violation of CONN. GEN. STAT. § 53-21; and

g)     Mayor Giordano engaged in activity, which promoted prostitution in violation of CONN. GEN. STAT. § 53a-86.

86.    Mayor Giordano's and the City of Waterbury's conduct as described above violated Jane Doe, Jr.'s right to be free from personal injury arising out of violations of 18 U.S.C. § 2241(c), § 2242, § 2243, § 2422, 2423, all in violation of 18 U.S.C. § 2255.

87.    Mayor Giordano's and the City of Waterbury's conduct as described above violated Jane Doe, Jr.'s rights under the Thirteenth Amendment to the Constitution of the United States as Jane Doe, Jr., was subjected to compulsory labor akin to African slavery, being sold for illicit sexual acts to Mayor Giordano by Jones and coerced by physical force or threat of physical force into performing said acts.

88.    Mayor Giordano engaged in such conduct as described above under color of state law and in his official capacity as the Mayor of the City of Waterbury.

89.    The City of Waterbury Charter gave Mayor Giordano final decisionmaking and/or policymaking authority, as described above, enabling him to accomplish the above acts.

90.    Said conduct has caused, continues to cause, and will, in the future, cause Jane Doe, Jr., to suffer from extreme emotional distress including, but not limited to, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, loss of earning capacity, medical and psychiatric services, loss of innocence

26

and loss of youth.

## COUNT THREE
**FAILURE, REFUSAL, OR NEGLECT TO PREVENT CONSPIRACY TO DEPRIVE UNDER COLOR OF STATE LAW RIGHTS PROTECTED BY FEDERAL LAW IN VIOLATION OF 42 U.S.C. § 1986 AS TO MAYOR GIORDANO AND THE CITY OF WATERBURY**

91.    The plaintiff re-alleges and incorporates all of the allegations contained in paragraphs 11-71 and Count Two of the foregoing, including but not limited to the above Factual Basis of the Claim, in their entirety.

92.    Mayor Giordano and Ariola neglected, failed or refused to prevent the conspiracy to violate Jane Doe, Jr.'s civil rights.

93.    The City of Waterbury had a policy and/or custom of failing or refusing to prevent the conspiracy to violate Jane Doe, Jr.'s civil rights

94.    This wrongful conduct was engaged in under color of state law.

95.    Said conduct has caused, continues to cause, and will, in the future, cause Jane Doe, Jr., to suffer from extreme emotional distress including, but not limited to, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, loss of earning capacity, medical and psychiatric services, loss of innocence and loss of youth.

**COUNT FOUR**
**SEXUAL ASSAULT, ABUSE OF A MINOR OR WARD, AGGRAVATED SEXUAL**
**ABUSE, COERCION AND ENTICEMENT OF JANE DOE, JR., AS TO MAYOR**
**GIORDANO AND THE CITY OF WATERBURY**

96.    The plaintiff re-alleges and incorporates all of the allegations contained in

paragraphs 11-71 of the foregoing, including but not limited to the above Factual

Basis of the Claim, in their entirety.

97.    The Mayor as the Chief Executive Officer of the City of Waterbury is the highest

ranking official of the City of Waterbury.

98.    The Mayor is the alter ego of the City of Waterbury and attends City events and

functions as the official representative of the City of Waterbury.

99.    Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking

official engaged in coercion and enticement of Jane Doe, Jr., to engage in

prostitution or criminal sexual activity in violation of 18 U.S.C. § 2422.

100.    Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking

official sexually abused Jane Doe, Jr., in violation of 18 U.S.C. § 2242.

101.    Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking

official knowingly caused Jane Doe, Jr., to engage in a sexual act by threatening

or placing Jane Doe, Jr., in fear.

102.    Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking

official engaged in a sexual act with Jane Doe, Jr., when he knew Jane Doe, Jr.,

was either incapable of appraising the nature of her conduct or physically

incapable of declining participation in, or communicating an unwillingness to

engage in that sexual act.

103.   Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking official sexually abused a minor child, Jane Doe, Jr., in violation of 18 U.S.C. § 2243.

104.   Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking official knowingly engaged in a sexual act with Jane Doe, Jr., when the Mayor knew she was at least four years younger than the Mayor and had not attained the age of fifteen.

105.   Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking official engaged in the aggravated sexual assault of Jane Doe, Jr., in violation of 18 U.S.C. § 2241(c).

106.   Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking official knowingly engaged in a sexual act with another person who had not attained the age of twelve years old, with the intent to engage in such act by force or threat against Jane Doe, Jr.

107.   Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking official caused Jane Doe, Jr., a minor, to sustain personal injuries as a victim within the meaning of 18 U.S.C. § 2255.

108.   Mayor Giordano as the alter ego of the City of Waterbury and its highest ranking official caused Jane Doe, Jr., a minor, to sustain personal injuries in violation of Connecticut common law.

109.   Said conduct has caused, continues to cause, and will, in the future, cause Jane

29

Doe, Jr., to suffer from extreme emotional distress including, but not limited to, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, loss of earning capacity, medical and psychiatric services, loss of innocence and loss of youth.

## COUNT FIVE
## CONSPIRACY TO COMMIT FALSE IMPRISONMENT AS TO MAYOR GIORDANO

110.   The plaintiff re-alleges and incorporates all of the allegations contained in paragraphs 11-71 of the foregoing, including but not limited to the above Factual Basis of the Claim, in their entirety.

111.   Mayor Giordano, acting in his official capacity and Jones agreed that Jane Doe, Jr., would be used in illegal sexual activity.

112.   Jane Doe, Jr., was in fact transported by Jones, her agent, servant or employee in furtherance of said agreement for the purpose of being illegally sexually abused and assaulted in violation of CONN. GEN. STAT. § 53a-48 and 18 U.S.C. § 371.

113.   As a result of the conspiracy of Mayor Giordano and Jones, Jane Doe, Jr., was caused to suffer numerous non-consensual and offensive bodily contacts. The conduct of Mayor Giordano as described has caused Jane Doe, Jr., to suffer severe emotional distress.

114.   Said conduct has caused, continues to cause, and will, in the future, cause Jane Doe, Jr., to suffer from extreme emotional distress including, but not limited to, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of

life, loss of earning capacity, medical and psychiatric services, loss of innocence
and loss of youth.

## COUNT SIX
### FALSE IMPRISONMENT AS TO MAYOR GIORDANO

115.  The plaintiff re-alleges and incorporates all of the allegations contained in
paragraphs 11-71 of the foregoing, including but not limited to the above Factual
Basis of the Claim, in their entirety.

116.  While transporting the minor child to meet Mayor Giordano at various locations
Jones did falsely imprison Jane Doe, Jr., in that she was left with no reasonable
means of escape in violation of CONN. GEN. STAT. § 53a-95 and CONN. GEN. STAT.
§ 53a-96.

117.  During the times when Jane Doe, Jr., was with Mayor Giordano, she was in places
which were unknown to her, and she was thereby left with no reasonable means of
escape.

118.  Said conduct has caused, continues to cause, and will, in the future, cause Jane
Doe, Jr., to suffer from extreme emotional distress including, but not limited to,
emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of
life, loss of earning capacity, medical and psychiatric services, loss of innocence
and loss of youth.

31

## COUNT SEVEN
## CONSPIRACY TO COMMIT ASSAULT AND BATTERY AS TO MAYOR GIORDANO

119.  The plaintiff re-alleges and incorporates all of the allegations contained in paragraphs 11-71 of the foregoing, including but not limited to the above Factual Basis of the Claim, in their entirety.

120.  Mayor Giordano, acting in his official capacity intended to engage Jane Doe, Jr., in the sexual acts that occurred.

121.  Mayor Giordano and Jones agreed that Jane Doe, Jr., would be used in illegal sexual activity.

122.  Jane Doe, Jr., was in fact transported by Jones, her agent, servant or employee in furtherance of said agreement for the purpose of being illegally sexually abused and assaulted in violation of CONN. GEN. STAT. § 53a-48 and 18 U.S.C. § 371.

123.  The acts of Mayor Giordano and Jones involved malice, wantonness or intent to injure.

124.  As a result of the conspiracy of Mayor Giordano and Jones, Jane Doe, Jr., was caused to suffer a reasonable apprehension of imminent bodily harm.

125.  Said conduct has caused, continues to cause, and will, in the future, cause Jane Doe, Jr., to suffer from extreme emotional distress including, but not limited to, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, loss of earning capacity, medical and psychiatric services, loss of innocence and loss of youth.

## COUNT EIGHT
## ASSAULT AND BATTERY AS TO MAYOR GIORDANO

126.    The Plaintiff re-alleges and incorporates all of the allegations contained in

paragraphs 11-71 of the foregoing including but not limited to the above Factual

Basis of the Claim, in their entirety.

127.    Mayor Giordano and Jones conspired to engage Jane Doe, Jr., in the sexual acts

that occurred in that Jones facilitated the presence of Jane Doe, Jr., at a time and

place mutually determined by Defendants.

128.    As a result of the conspiracy of Mayor Giordano and Jones, Jane Doe, Jr., was

caused to suffer a reasonable apprehension of imminent bodily harm.

129.    As a result of the conspiracy of Mayor Giordano and Jones, Jane Doe, Jr., was

intentionally touched or molested by Mayor Giordano without her consent.

130.    Said conduct has caused, continues to cause, and will, in the future, cause Jane

Doe, Jr., to suffer from extreme emotional distress including, but not limited to,

emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of

life, loss of earning capacity, medical and psychiatric services, loss of innocence

and loss of youth.

## COUNT NINE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO MAYOR GIORDANO AND THE CITY OF WATERBURY

131.  The plaintiff re-alleges and incorporates all of the allegations contained in paragraphs 11-71 of the foregoing, including but not limited to the above Factual Basis of the Claim, in their entirety.

132.  The conduct of Mayor Giordano, acting in his official capacity as described above, was intentional and calculated to cause Jane Doe, Jr., to suffer severe emotional distress.

133.  Mayor Giordano's acts involved malice, wantonness or intent to injure.

134.  Said conduct has caused, continues to cause, and will, in the future, cause Jane Doe, Jr., to suffer from extreme emotional distress including, but not limited to, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, loss of earning capacity, medical and psychiatric services, loss of innocence and loss of youth.

## COUNT TEN
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO MAYOR GIORDANO AND THE CITY OF WATERBURY

135.  The plaintiff re-alleges and incorporates all of the allegations contained in paragraphs 11-71 of the foregoing, including but not limited to the above Factual Basis of the Claim, in their entirety.

136.  Mayor Giordano engaged in a course of conduct without due care or regard for the consequences of said conduct on Jane Doe, Jr.'s emotional well-being.

34

137.   The City of Waterbury and Mayor Giordano knew, or reasonably should have known, that the conduct in which Giordano engaged would cause Jane Doe, Jr., to suffer emotional distress.

138.   Said conduct has caused, continues to cause, and will, in the future, cause Jane Doe, Jr., to suffer from extreme emotional distress including, but not limited to, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, loss of earning capacity, medical and psychiatric services, loss of innocence and loss of youth.

## COUNT ELEVEN
### NEGLIGENCE-INADEQUATE SUPERVISION AS TO THE CITY OF WATERBURY

139.   The plaintiff re-alleges and incorporates all of the allegations contained in paragraphs 11-71 of the foregoing, including but not limited to the above Factual Basis of the Claim, in their entirety.

140.   At all times hereto Jane Doe, Jr., was an identifiable and discrete person subject to imminent harm.

141.   The City, by and through its agents, servants, elected officials, appointed officials and/or employees, including Mayor Giordano and Budget Director Ariola, was negligent and/or reckless in that it failed to act in one or more of the following ways:

        a)   It failed to exercise adequate supervision and control over City agents, servants, elected officials, appointed officials and/or employees

35

including its final policy/decisionmaker and/or alter ego, Mayor
Giordano, and Ariola, so as to safeguard minor children visiting
municipal facilities.

b) It failed to hire employees who were adequately trained and qualified
to safeguard minor children visiting municipal facilities.

c) It failed to provide adequate training to City agents, servants, and
elected officials, appointed officials and/or employees including Mayor
Giordano and Budget Director Ariola, so as to safeguard minor
children visiting municipal facilities.

d) City agents, servants, elected officials, appointed officials and/or
employees including Mayor Giordano and Budget Director Ariola,
failed to exercise adequate supervision over minor children visiting
municipal facilities.

e) It failed to protect Jane Doe, Jr., from negligence, reckless, or physical
abuse by one of its agents, servants, elected officials, appointed
officials and/or employees.

f) It failed to protect Jane Doe, Jr., from sexual exploitation by one of its
agents, servants, elected officials, appointed officials and/or
employees.

g) It failed to monitor cellular phone calls made by Mayor Giordano to
Jones for the purpose of soliciting a minor to engage in prostitution.

h) It knew or should have known through reasonable examination or

investigation that cellular phones were being misused and that the Mayor was engaged in illegal conduct that constituted or could have constituted harm to Jane Doe, Jr.

142.    Said conduct has caused, continues to cause, and will, in the future, cause Jane Doe, Jr., to suffer from extreme emotional distress including, but not limited to, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, loss of earning capacity, medical and psychiatric services, loss of innocence and loss of youth.

WHEREFORE, Plaintiffs on each count seek money damages within the jurisdiction of the court including but not limited to:

1. Compensatory Damages for emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life.

2. Damages for the deprivation of rights secured by the Constitution of the United States.

3. Punitive Damages under 42 U.S.C. § 1983, § 1985, § 1986

4. Punitive Damages under all state law claims

5. Attorney's fees under 42 U.S.C. § 1988

6. Attorney's fees under 18 U.S.C. § 2255

7. Attorney's fees, prejudgment interest, expert witness fees and costs.

8. Such other relief as to the court shall appear just and proper.

**The Plaintiffs**
**Jane Doe, Jr. and**
**Jane Doe, Sr.**

By _____

**MICHAEL STANTON HILLIS**
**DOMBROSKI, KNAPSACK &**
**HILLIS LLC**
129 Whitney Avenue
New Haven, Connecticut 06510
(203) 624-9096 - phone
**FEDERAL BAR NO.: ct 11867**