UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| JANE DOE, JR., ppa | : | |
| ATTORNEY ALLISON JACOBS | : | Case No.: 3:01cv2298 (SRU) |
| | : | |
| v. | : | |
| | : | OCTOBER 28, 2005 |
| CITY OF WATERBURY, et al. | : | |

2005 OCT 31  P 3: 27

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...............................................................................1

LAW AND ARGUMENT......................................................................................4

I.    SUMMARY JUDGMENT STANDARD...........................................................4

II.   MAYOR GIORDANO AND THE CITY OF WATERBURY ARE
      PRECLUDED FROM RELITIGATING WHETHER MAYOR GIORDANO
      ACTED UNDER COLOR OF LAW TO DEPRIVE THE PLAINTIFF OF
      HER FEDERAL RIGHTS BASED ON MAYOR GIORDANO'S
      CRIMINAL CONVICTION UNDER 18 U.S.C. § 242......................................5

      A.    Introduction.......................................................................................5

      B.    Plaintiff May Assert Collateral Estoppel In The Present Action
            Regardless Of Whether She Was A Party In The Prior Action...............6

      C.    Both Mayor Giordano And The City of Waterbury Are Bound By
            The Issues Previously Decided In The Criminal Action........................7

      D.    The Elements Of Collateral Estoppel Are Satisfied.............................9

            1.    The issues in the present case are identical to the issues decided
                  in the criminal case.....................................................................9

            2.    The issues were actually litigated and decided in the criminal
                  case..........................................................................................10

            3.    There was a full and fair opportunity to litigate the issues in
                  the criminal case.......................................................................11

            4.    The issues were necessary to support a valid and final
                  judgment on the merits...............................................................11

III.  MAYOR GIORDANO IS LIABLE UNDER COUNT ONE AS THERE IS
      NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER HE ACTED
      UNDER COLOR OF LAW AND CAUSED A DEPRIVATION OF
      THE PLAINTIFF'S FEDERAL RIGHTS........................................................12

IV.   THE CITY OF WATERBURY IS LIABLE UNDER COUNT ONE AS THERE IS
      NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER MAYOR
      GIORDANO ACTED AS THE CITY'S FINAL POLICYMAKER..............................13

      A.    Section 1983 Background.....................................................................................13

      B.    The Plaintiff Has Established A Municipal Policy That Caused
            A Violation Of Her Federal Rights........................................................................14

      C.    Mayor Giordano Was A Final Decisionmaker With Authority Over
            The Subject Matter Whose Actions Constituted An Official Policy.....................16

      D.    Plaintiff Has Shown That The City Acted Intentionally........................................24

V.    MAYOR GIORDANO IS LIABLE UNDER COUNTS FOUR THROUGH TEN
      AS THERE ARE NO GENUINE ISSUES OF MATERIAL FACT REGARDING
      HIS COMMISSION OF SEXUAL ASSAULT, ASSAULT AND BATTERY,
      FALSE IMPRISONMENT, CIVIL CONSPIRACY, INTENTIONAL INFLICTION
      OF EMOTIONAL DISTRESS, AND NEGLIGENT INFLICTION OF EMOTIONAL
      DISTRESS.......................................................................................................................24

      A.    Mayor Giordano Is Collaterally Estopped From Denying Liability For
            Sexual Assault and Assault and Battery Under Counts Four and Eight................24

      B.    There Is No Genuine Issue Of Material Fact As To Whether Mayor
            Giordano Is Liable Under Count Six For False Imprisonment Of The
            Plaintiff.................................................................................................................27

      C.    There Is No Genuine Issue Of Material Fact As To Whether Mayor
            Giordano Is Liable Under Count Five For Conspiracy To Commit
            False Imprisonment and Count Seven For Conspiracy To Commit
            Assault and Battery.................................................................................................28

      D.    There Is No Genuine Issue Of Material Fact As To Whether Mayor
            Giordano Is Liable Under Count Nine For Intentional Infliction Of
            Emotional Distress..................................................................................................29

      E.    There Is No Genuine Issue Of Material Fact As To Whether Mayor
            Giordano Is Liable Under Count Ten For Negligent Infliction Of
            Emotional Distress..................................................................................................30

VI    THE CITY OF WATERBURY IS LIABLE UNDER COUNTS FOUR, NINE AND

TEN AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT
REGARDING WHETHER MAYOR GIORDANO ACTED AS THE CITY'S
ALTER EGO.............................................................................................................31

VII.    THE CITY OF WATERBURY IS LIABLE UNDER COUNT ELEVEN AS THERE IS
NO GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER IT WAS
NEGLIGENT OR FAILED TO ADEQUATELY SUPERVISE CITY OFFICIALS
AND/OR EMPLOYEES.............................................................................................33

CONCLUSION.............................................................................................................34

APPENDIX

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE, JR., ppa | : | |
| ATTORNEY ALLISON JACOBS | : | Case No.:  3:01cv2298 (SRU) |
| | : | |
| v. | : | |
| | : | OCTOBER 28, 2005 |
| CITY OF WATERBURY, et al. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

This cause of action arises out of Mayor Philip Giordano's (hereinafter "Mayor

Giordano") aggravated sexual abuse and sexual abuse of two minor children, the plaintiff, Jane

Doe, Jr., and co-plaintiff, Susan Roe, Jr.  On March 25, 2003, following a week long criminal

trial in the United States District Court, Bridgeport, Connecticut, the jury returned a guilty

verdict against Mayor Giordano for acting under color of state law to deprive the girls of rights

protected by the United States Constitution, as well as knowingly transmitting their names and

other identifying characteristics via an instrument of interstate and foreign commerce (City of

Waterbury owned and authorized cellular telephones).  The jury also found that Mayor Giordano

conspired with a known prostitute and drug addict, Guitana Jones, to arrange for the sexual

assault of the minor girls in various locations, including but not limited to, Mayor Giordano's

law office, the City of Waterbury Mayor's Office, an unmarked police cruiser owned by the City

of Waterbury, Mayor Giordano's home, and the home of City of Waterbury Budget Director,

Thomas Ariola.  In total, the jury found Mayor Giordano guilty on seventeen out of eighteen

counts of the superseding indictment.

The plaintiff commenced this civil action by Complaint dated December 5, 2001. Plaintiff filed an Amended Complaint on July 28, 2005, alleging violations of her federal civil rights and rights under the common law of the State of Connecticut. Plaintiff now moves for Summary Judgment as to liability only with respect to Mayor Giordano and the City of Waterbury's liability under 42 U.S.C. § 1983[1] for violation of her 14th Amendment rights. Plaintiff also moves for Summary Judgment as to Mayor Giordano's liability under Counts Four through Ten, and the City of Waterbury's liability under Counts Four and Nine Through Eleven. In the alternative, plaintiff requests that if the Court does not find summary judgment is warranted on all issues sought, that an order be entered establishing which facts are uncontroverted and which facts are subject to genuine factual discovery.

Against Mayor Giordano, the plaintiff argues that there is no genuine issue of material fact as to: One, whether he acted under color of law to deprive her of her 14th Amendment right to bodily integrity and to be free from sexual abuse in violation of 42 U.S.C. § 1983; Two, whether he sexually assaulted and/or committed assault and battery of the plaintiff; Three, whether he falsely imprisoned the plaintiff; Four, whether he conspired to commit assault and battery and/or false imprisonment; Five, whether he intentionally inflicted emotional distress on the plaintiff; and Six, whether he negligently inflicted emotional distress on the plaintiff. Mayor Giordano is collaterally estopped from relitigating his liability under 42 U.S.C. § 1983 based on his previous criminal conviction under 18 U.S.C. § 242. Mayor Giordano is also estopped from

---

[1]"Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . [.]"

2

denying that he sexually assaulted the plaintiff and/or committed assault and battery based on his conviction for sexual abuse. The record before the Court also establishes that there is no genuine issue as to whether Mayor Giordano is liable for civil conspiracy, false imprisonment, and/or infliction of emotional distress.

Against the City of Waterbury, the plaintiff argues that there is no genuine issue of material fact as to whether Mayor Giordano was its authorized final policymaker who acted under color of law to deprive plaintiff of her 14th Amendment rights. Based on its privity with Mayor Giordano, the City is precluded from relitigating whether Mayor Giordano deprived the plaintiff of her rights under color of law. The record before this Court, including the City of Waterbury Charter and excerpts from the criminal trial, establishes the final element for municipal liability under § 1983: that Mayor Giordano acted as the City's authorized final policymaker. With respect to Counts Four, Nine and Ten, plaintiff has demonstrated there is no genuine issue of material fact as to the City's liability because the Mayor acted as the City's alter ego in committing sexual abuse and inflicting emotional distress on the plaintiff. Finally, the plaintiff has demonstrated that there is no genuine issue of material fact as to the City of Waterbury's negligent supervision under Count Eleven.

This memorandum is submitted in support of the Plaintiff's Motion for Summary Judgment.

3

## LAW AND ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." Id.

In applying this standard, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)). Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 586 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). The nonmoving party "must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." Brown, 257 F.3d at 251 (citation omitted).

II.    **MAYOR GIORDANO AND THE CITY OF WATERBURY ARE PRECLUDED FROM RELITIGATING WHETHER MAYOR GIORDANO ACTED UNDER COLOR OF LAW TO DEPRIVE THE PLAINTIFF OF HER FEDERAL RIGHTS BASED ON MAYOR GIORDANO'S CRIMINAL CONVICTION UNDER 18 U.S.C § 242.**

A.    **Introduction**

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to the judgment. Four elements must be met for collateral estoppel to apply: (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995) (citations omitted). Collateral estoppel applies not only against a party to a previous action, but also to that party's "privies." N.L.R.B. v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir. 1999). Collateral estoppel promotes judicial economy and protects litigants by preventing unnecessary relitigation of identical issues from a previous proceeding. Parklane Hosiery Co., et al. v. Shore, 439 U.S. 322, 326 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

Federal law determines whether a federal judgment of conviction has preclusive effect in a subsequent civil action. See Gelb v. Royal Globe Insurance Co., 798 F.2d 38, 43 (2d Cir. 1986), cert. denied, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). Under federal law, it is well established that collateral estoppel is generally applicable to § 1983 actions. Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Since the burden of proof in a criminal case is always higher than in a civil case, it is proper to rely on the collateral effect of a

criminal conviction in a subsequent civil suit. Id.

Summary judgment should be granted in plaintiff's favor as to Mayor Giordano's liability because the issue of whether he deprived the plaintiff of her federal rights under color of law has previously been decided in the prior criminal case. Summary judgment should also be granted in the plaintiff's favor as to the City of Waterbury's liability. As Mayor Giordano's privy, the City is precluded from relitigating the issues previously decided in the criminal action. Moreover, plaintiff will demonstrate in IV., infra, that there is no genuine issue of material fact as to whether the Mayor acted as the City's authorized final policymaker.

### B.    Plaintiff May Assert Collateral Estoppel In The Present Action Regardless Of Whether She Was A Party In The Prior Action.

Parklane Hosiery addressed the issue of "whether a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." Id. at 326. Courts have referred to this concept as "non-mutual offensive collateral estoppel." The Supreme Court has granted trial courts broad discretion to determine when non-mutual offensive collateral estoppel should be applied: "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." Id. at 331. The Second Circuit has further held that because non-mutual offensive collateral estoppel is permitted under federal law, "a party other than the Government may assert collateral estoppel based on a criminal conviction." Gelb, 798 F.2d at 43.

Although this Court has broad discretion to determine when offensive collateral estoppel

6

may be used, none of the circumstances which might justify disallowing plaintiff's offensive use

are present in this case. First, the plaintiff could not have joined in the previous action as it was a

federal criminal case brought by the United States against Mayor Giordano. Second, the

application of offensive collateral estoppel will not be unfair to either defendant. In the earlier

criminal proceeding, the jury found beyond a reasonable doubt that Mayor Giordano acted under

color of law to deprive the victims of their federal rights. It would be less likely for defendants to

succeed in relitigating the same issues in the present civil case as plaintiff would have a lesser

burden of proof. Moreover, both Mayor Giordano and agents of the City of Waterbury testified

at length in the prior proceeding regarding the same issues. If the issues were relitigated in the

present case, the witnesses would be bound by their previous sworn testimony. As there are no

circumstances to justify disallowing plaintiff's offensive use, plaintiff should be permitted to

assert collateral estoppel.

### C.    Both Mayor Giordano And The City of Waterbury Are Bound By The Issues Previously Decided In The Criminal Action.

It is clear that plaintiff may offensively assert collateral estoppel against Mayor Giordano

as he was the defendant in the prior proceeding. Plaintiff contends, however, that the City of

Waterbury is also bound by the prior proceeding. Collateral estoppel is properly asserted against

the City of Waterbury because it is in privity with Mayor Giordano.

The issue of whether two parties are in privity stems from the fundamental notion of due

process "that a person cannot be bound by a judgment without notice of a claim and an

opportunity to be heard." Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir. 1977),

cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). The party who was not

involved in the prior action must have "a sufficiently close relationship to the original defendant to justify preclusion." <u>Central Hudson Gas & Electric Corp.</u>, 56 F.3d at 367-68. Privity is a "factual determination of substance, not mere form." <u>Expert Electric, Inc.</u>, 554 F.2d at 1233.

Here, due process concerns are satisfied and the City of Waterbury had a sufficiently close relationship with Mayor Giordano to establish privity. The City cannot argue that it did not have notice or an opportunity to be heard as it was heavily involved in the prior litigation. Many of the City's agents and/or employees were key witnesses and extensive evidence was introduced regarding the City Charter, City policies, and City operations. Moreover, the City's motive in the present civil suit is the same motive Mayor Giordano had in the prior criminal action: to prove that Mayor Giordano was not acting under color of state law in his official capacity as Mayor, that the two minor girls were not deprived of any federal rights, and that the City Charter did not vest the Mayor with final authority over City policy.

Finally, Mayor Giordano and the City had a "sufficiently close relationship" to justify issue preclusion. Mayor Giordano was prosecuted for crimes committed in his official capacity as Mayor, in violation of 18 U.S.C. § 242. As the Hon. Judge Nevas charged the jury:

> The first element which the government must establish beyond a reasonable doubt [with respect to 18 U.S.C. § 242] is that [Mayor Giordano] acted under color of the laws of the State of Connecticut. This means simply that *he acted in his official capacity*, or else claimed to do so, even if he misused or abused his power by violating the law himself.

<u>Appendix</u>, Exhibit E, Tr. at 2102-3 (emphasis added). "The general rule is that a government official is considered to be in privity with his or her governmental employer when he or she is sued in an official capacity. . . ." 47 Am. Jur. 2d Judgments § 698; <u>see also</u> <u>Patton v. Dumpson</u>, 498 F.Supp. 933, 943 (S.D.N.Y. 1980) ("Municipal corporations and their officials are treated as

being in privity for purposes of suits by or against either one."). Here, it is essential that Mayor

Giordano and the City of Waterbury be treated as privies because the Mayor acted as the alter ego

of the City of Waterbury. See IV., infra.

### D. The Elements Of Collateral Estoppel Are Satisfied

#### 1. The issues in the present case are identical to the issues decided in the criminal case.

The defendants should be precluded from relitigating the issue of whether Mayor

Giordano acted under color of law to deprive the plaintiff of her Fourteenth Amendment right to

bodily integrity and to be free from sexual abuse in violation of 42 U.S.C. § 1983. In the prior

criminal proceeding, the jury addressed the issue of whether or not Mayor Giordano violated 18

U.S.C. § 242, by acting under color of state law to deprive two minor children of their

Constitutional rights to be free from aggravated sexual abuse and sexual abuse. The phrase

"under color of any statute, ordinance, regulation, or custom" is accorded the same construction

in both 18 U.S.C. § 242 and 42 U.S.C. § 1983. Monroe v. Pape, 365 U.S. 167, 5 L.Ed.2d 492, 81

S.Ct. 473 (1961) (overruled on other grounds by Monell v. Department of Social Services, 436

U.S. 658, 98 S.Ct. 2018 (1978)). Noting that the issues are identical under 18 U.S.C. § 242 and

42 U.S.C. § 1983, several district courts have held that a previous criminal conviction under §

242 may have preclusive effect in a subsequent civil case brought under § 1983.[2]

---

[2]See, e.g., Pizzuto v. County of Nassau, et al., 239 F.Supp.2d 301 (E.D.N.Y. 2003) (convictions of corrections officers under 18 U.S.C. § 241 and 242 precluded relitigation of deprivation of Eighth Amendment rights and conspiracy to deprive of Eighth Amendment rights); Vela v. Alverez, 507 F.Supp. 887 (S.D. Tex. 1981) (defendant precluded from relitigating issues previously decided in his criminal conviction under § 242 for assaulting the plaintiff while acting under color of law); Smith v. Rorke, No. 90-6142, 1995 WL 455974 (E.D.Pa. 1995) (convictions under § 242 held sufficient to establish liability under § 1983 for use of excessive force and presentation of false evidence where several police officers entered the plaintiffs' home without a warrant, assaulted them, and arrested them without cause).

Issue preclusion will serve judicial economy in the present case as the events and evidence at issue are identical.  Virtually the same discovery, pretrial preparation, and trial witnesses that addressed the criminal § 242 charges would be necessary to address plaintiff's § 1983 claims.  The application of collateral estoppel is thus necessary to prevent a redundant second trial and needless waste of court resources.

### 2.    The issues were actually litigated and decided in the criminal case.

The issue of whether Mayor Giordano sexually abused two minor children under color of state law was actually litigated and decided in the previous criminal proceeding.  With respect to the sexual abuse, the jury heard testimony from Guitana Jones, both minor children, various drivers who claimed to have transported the children to the Mayor, and other witnesses.  Each witness supported the conclusion that Mayor Giordano had sexually abused the girls on several occasions at his law office, the City of Waterbury Mayor's Office, in his City-issued unmarked police car, at his home, and at the home of Budget Director Thomas Ariola.  The jury also heard testimony regarding the DNA evidence found in Mayor Giordano's law office, the City of Waterbury Mayor's Office, and the Mayor's vehicle.  Mayor Giordano testified at length on his own behalf, denying the allegations of sexual abuse.

Various witnesses, including the Mayor and other City officials and/or agents also testified regarding the color of law issue.  Their testimony addressed the Mayor's power and authority under the City Charter, the Mayor's cellular telephones, the Mayor's unmarked police car, the Mayor's control over the City police and finances, and the Mayor acting as the City's representative at schools, press conferences, and other public functions.  Finally, the two minor

10

children and Guitana Jones testified as to how the Mayor threatened them and impressed on them his control over the police department and the City.

Following the close of evidence, the jury found Mayor Giordano guilty on seventeen counts, including aggravated sexual abuse and violation of Constitutional rights under color of law with respect to both minor victims, in violation of 18 U.S.C. § 242, and use of interstate commerce, in the form of cellular telephones, to transmit the names of the victims with intent to entice, encourage, offer and solicit the victims to engage in criminal sexual activity in violation of 18 U.S.C. §§ 2425 and 2.

### 3.    There was a full and fair opportunity to litigate the issues in the criminal case.

The issue of whether the Mayor acted under color of state law to deprive the plaintiff of her Constitutional rights was fully and fairly litigated in the prior criminal proceeding. The criminal trial lasted over a week, with both sides having ample opportunity to present evidence and numerous witnesses. Mayor Giordano took the stand in his own behalf, denying the allegations against him. At the conclusion of the Government's case, and again at the conclusion of the defendant's case, Mayor Giordano moved for a Rule 29 motion. Both parties presented lengthy closing arguments to the jury. The jury deliberated and unanimously found Mayor Giordano guilty on seventeen out of eighteen counts of the indictment.

### 4.    The issues were necessary to support a valid and final judgment on the merits.

The issue of whether Mayor Giordano violated the plaintiff's rights under color of law was necessary to support the judgment in the prior criminal trial. There, the court (Nevas, J.) instructed the jury that in order to find the defendant guilty of Counts 1 and 2 (deprivation of

11

rights under color of law in violation of 18 U.S.C. § 242) they had to find:

> First, that at various times from in or about November 2000 through July 2001, the defendant acted under color of the laws of the State of Connecticut. Second, that in so doing his conduct deprived victim one or victim two of some right secured or protected by the Constitution of the United States; that is, the right to be free from aggravated sexual abuse and sexual abuse. Third, that the defendant acted willfully; that is, with a specific intent to violate these protected, or this protected constitutional right. And fourth, that his acts resulted in bodily injury to victim one or two.

Appendix, Exhibit E, Tr. at 2102. Thus, it was necessary for the jury to address the color of law and deprivation of rights issues prior to reaching its verdict.

The criminal judgment against Mayor Giordano was valid, final, and on the merits. Again, the judgment was reached after a full and fair trial. See II.D.3., supra. There can be no argument that the United States District Court, District of Connecticut at Bridgeport was not a court of competent jurisdiction. Finally, the Mayor's pending appeal has no effect on the finality of the trial court's judgment for collateral estoppel purposes. See U.S. v. International Brotherhood of Teamsters, 905 F.2d 610, 620-21 (2d Cir. 1990) (finding that a pending criminal appeal would not prevent the prior conviction from having preclusive effect).

### III.  MAYOR GIORDANO IS LIABLE UNDER COUNT ONE AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER HE ACTED UNDER COLOR OF LAW AND CAUSED A DEPRIVATION OF PLAINTIFF'S FEDERAL RIGHTS

A government official is liable under § 1983 where the official, acting under color of state law, caused the deprivation of a federal right. Coon v. Town of Springfield, 404 F.3d 683, 686 (2d Cir. 2005) (citations omitted; internal quotation marks omitted). Based on the issues previously decided in the criminal action and Mayor Giordano's liability under 18 U.S.C. § 242, the plaintiff has established his liability under 42 U.S.C. § 1983. Thus, the plaintiff is entitled to

12

summary judgment as a matter of law with respect to Mayor Giordano's liability under Count

One for violation of Fourteenth Amendment rights under color of law. As the following will

demonstrate, summary judgment should also be granted against the City of Waterbury because

there is no genuine issue of material fact as to whether Mayor Giordano acted as the City's

authorized final policymaker.

## IV.    THE CITY OF WATERBURY IS LIABLE UNDER COUNT ONE AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER MAYOR GIORDANO ACTED AS THE CITY OF WATERBURY'S FINAL POLICYMAKER

### A.    Section 1983 Background

Section 1983 imposes civil liability upon one "who, under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any

citizen of the United State or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws . . . ."

The purpose of § 1983 is to deter state actors from using the badge of their authority to

deprive individuals of their federally guaranteed rights and to provide relief to victims if such

deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)

(citations omitted). The Supreme Court has repeatedly recognized that "[w]hen government

officials abuse their offices, 'action[s] for damages may offer the only realistic avenue for

vindication of constitutional guarantees.'" Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct.

3034, 97 L.Ed.2d 523 (1987) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727,

73 L.Ed.2d 396 (1982)). Section 1983 is a "remedial statute", see, e.g., Chapman v. Houston

Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905 (1979), and as such, § 1983 is to be

13

broadly construed by the courts. <u>Golden State Transit Corp. v. Los Angeles</u>, 493 U.S. 103, 110

S.Ct. 444, 107 L.Ed.2d 420 (1989). This section should be interpreted with sufficient liberality

to fulfill its purpose of providing a federal remedy in federal court in protection of federal rights.

<u>Birnbaum v. Trussell</u>, 371 F.2d 672, 676 (2d Cir. 1966).

  The Supreme Court has generally articulated three requirements for stating a § 1983

claim against a municipality for violations of Constitutional rights. First, a plaintiff must identify

a municipal policy that caused plaintiff's injuries. <u>Board of the County Comm'rs of Bryan</u>

<u>County, Oklahoma v. Brown</u>, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). A

plaintiff may identify a policy set forth by lawmakers, "or by those whose edicts or acts may

fairly be said to represent official policy." <u>Monell v. New York City Dept. of Social Servs.</u>, 436

U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed. 611 (1978). Not every decision or action by an official

subjects a municipality to liability, however. A plaintiff must also demonstrate that the

municipal decisionmaker had final authority over the action or decision in question. <u>Pembaur v.</u>

<u>City of Cincinnati</u>, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Finally, "in any §

1983 suit . . . the plaintiff must establish the state of mind required to prove the underlying

violation." <u>Board of the County Comm'rs of Bryan County, Oklahoma</u>, 520 U.S. at 405.

  **B.**  **The Plaintiff Has Established A Municipal Policy That Caused A**
      **Violation Of Her Federal Rights.**

  Plaintiff contends there is no genuine issue of material fact as to Mayor Giordano's

pattern and practice of using City of Waterbury property, including his cellular phone, unmarked

police cruiser, the Mayor's office, and his Mayoral powers, including control over the City's

police and finances, in order to accomplish the sexual abuse of Jane Doe, Jr.

14

With respect to City of Waterbury property, from November 2000 to July 2001, it was

Mayor Giordano's policy to use cellular telephones authorized and paid for by the City of

Waterbury to contact Guitana Jones to arrange for the sexual abuse and aggravated sexual abuse

of Jane Doe, Jr. Rule 56(a)1 Statement ¶¶ 51-57, 62, 66. This sexual abuse occurred in the

Office of the City of Waterbury Mayor, 236 Grand Street, the Mayor's unmarked police cruiser,

Mayor Giordano's law office, Mayor Giordano's residence, and Budget Director Thomas

Ariola's apartment. Id. ¶¶ 68-73.

With respect to the Mayor's control over the City's police and finances, it was the

Mayor's policy to repeatedly threaten Jones and/or the minor children that he would have Jones

put in jail if she told anyone about said sexual acts or if she did not do as he asked. Id. ¶ 76. It

was the Mayor's policy to have Jones call his home pretending to be the City of Waterbury police

in order to afford him an excuse to leave his family and meet for a sexual encounter. Id. ¶ 81. It

was also the Mayor's policy to allow himself unfettered use of his cellular phone and unmarked

police cruiser for personal and illegal purposes. Id. ¶¶ 45-50, 51-57, 62. Finally, it was the

Mayor's policy to accept monetary gifts in exchange for securing City contracts and to pay Jones

as much as two hundred dollars a week without being questioned as to the source of his income.

Id. ¶¶ 30, 75.

Plaintiff claims that the above municipal policies caused a violation of Jane Doe, Jr.'s

well-established right to personal bodily integrity under the Fourteenth Amendment. This

Fourteenth Amendment right includes the right to be free from physical assault and/or sexual

abuse, as well as coerced sexual activity. See, e.g., Rogers v. City of Little Rock Arkansas, 152

F.3d 790, 796 (8th Cir. 1998) (holding that police officer violated victim's due process right to

15

bodily integrity by committing rape); Wudtke v. Davel, 128 F.3d 1057, 1063 (7th Cir. 1997)

(holding that facts demonstrating school superintendent forced teacher to perform fellatio

supported substantive due process violation); Jones v. Wellham, 104 F.3d 620, 628 (4th Cir.

1997) (recognizing that officer's forcible rape violated victim's substantive due process rights);

Bennet v. Pippin, 74 F.3d 578, 589 (5th Cir. 1996) (holding that sheriff's rape of murder suspect

violated her right to bodily integrity).

### C. Mayor Giordano Was A Final Decisionmaker With Authority Over The Subject Matter Whose Actions Constituted An Official Policy.

To hold the City of Waterbury liable for Mayor Giordano's policies, plaintiff must show

that Mayor Giordano was an official whose acts represented the City's official policy and that

Mayor Giordano had final policymaking authority with respect to the area in question.  Jeffes v.

Barnes, 208 F.3d 49, 57 (2d Cir. 2000).

Mayor Giordano was an official whose actions represented the official policy of the City

of Waterbury.  The fact that Giordano held the title and office of the Mayor of Waterbury is

enough alone to demonstrate his actions represented official policy.  See Patterson v. City of

Utica, 370 F.3d 322 (2d Cir. 2004) (city could be held liable for Mayor's acts in § 1983 action

where city conceded Mayor was high-ranking official with final policymaking authority);

Rookard v. Health and Hospitals Corp., 710 F.2d 41, 45 n.4 (2d Cir. 1983) ("Mayors may be

treated as policymakers without proof of their specific powers and responsibilities."); Quinn v.

Syracuse Model Neighborhood Corp., 613 F.2d 438, 448 (2d Cir. 1980) ("Surely the mayor is the

one city official whose edicts and acts represent municipal policy . . . .").

Mayor Giordano was not only the City of Waterbury's official policymaker, but also had

16

final authority over the policies at issue. The Second Circuit has explained, "An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (quoting Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983)). Whether or not the Mayor's decisions constituted the City of Waterbury's decisions is a matter of law to be decided by the Court under Connecticut state law. See, e.g., Jeffes v. Barnes, 208 F.3d at 58; Pembaur, 475 U.S. at 483.

Under Connecticut law, "[i]t has been well established that a city's charter is the fountainhead of municipal powers . . . the charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised . . .[.]" (citations omitted; internal quotation marks omitted) Stamford Ridgeway Associates v. Board of Representatives, 214 Conn. 407, 423, 572 A.2d 951 (1990). The City of Waterbury Charter creates a "Strong Mayor" form of government where the Mayor is involved in all aspects of municipal government. Rule 56(a)1 Statement ¶ 14. Under the Charter, the Mayor is Chief Executive Officer of Waterbury, its highest ranking official charged with conserving the peace and efficient government of the City. Id. ¶¶ 10, 24. As the highest official, the Mayor acts as "ex officio" chairman of all City boards committees involving City finances and expenditures. Id. ¶ 11. Further, the Mayor of Waterbury has the power to control and supervise all officers and departments of the city, including the police department. Id. ¶ 12. The Mayor may call special meetings of any board of the City and has the power and discretion to issue a warrant to compel the attendance of Board members at meetings. Id. ¶¶ 13, 22. The Mayor appoints all city Boards, commissions, and department heads, with the power and discretion to suspend, and remove for cause, any board member he so

17

appoints, or any appointed official. <u>Id.</u> ¶¶ 13, 18. Under the City Charter, the Mayor has the

power and discretion to have a seat and voice and introduce ordinances on the Board of

Alderman. <u>Id.</u> ¶ 20. It is the duty of the Mayor to either approve or disapprove each vote,

resolution, order or ordinance passed by the Board of Aldermen. <u>Id.</u> ¶ 21. The Mayor also has

the final say in the City of Waterbury budget. <u>Id.</u> ¶ 23. Whenever necessary, the Mayor may

exercise all powers given by law to Sheriffs in the City of Waterbury. <u>Id.</u> ¶ 17. Finally, in times

of emergency, the Mayor has authority to assume entire control over the City's police and fire

departments and to exercise all of their powers. <u>Id.</u> ¶ 16.

The City Charter clearly outlines the broad range of Mayoral powers and discretions, as

well as sets forth the Mayor's legal authority for making policy regarding the police and City

finances. In addition to the Mayor's authority as outlined by the City of Waterbury Charter, other

facts exhibit the practical application of Mayor Giordano's policymaking authority. With respect

to the Mayor's authority over the police department, during Mayor Giordano's tenure, he issued

executive orders to the Superintendent of Police (<u>Id.</u> ¶ 33); involved himself with Police

Department response time (<u>Id.</u> ¶ 35); was notified of all City emergencies (<u>Id.</u> ¶ 36); was present

at murder and other crime scenes (<u>Id.</u> ¶ 37); initiated the Police Department bike patrol (<u>Id.</u> ¶ 38);

involved himself in establishing police precincts (<u>Id.</u> ¶ 38); approved or disapproved the Police

Department's budget (<u>Id.</u> ¶ 39); administered oaths to police officers (<u>Id.</u> ¶ 40); and suspended, as

well as effectively terminated, the Superintendent of Police (<u>Id.</u> ¶¶ 41-42). The Mayor also

operated an unmarked police cruiser, bearing Connecticut license plate number "1-WBY", with a

"police package" (sirens, lights, and police radio). <u>Id.</u> ¶¶ 45-48. Mayor Giordano was able to use

the lights and sirens in his police cruiser, even in non-emergency situation. <u>Id.</u> ¶ 50. The

Mayor's vehicle was also regularly cleaned, maintained, and fueled by the same City department maintaining the police fleet. Id. ¶ 49. Finally, Mayor Giordano had a member of his staff obtain a badge identifying him as City of Waterbury Mayor and effectively granting him arrest authority pursuant to the City Charter. Id. ¶¶ 59-60.

With respect to the Mayor's authority over the City's finances, the Mayor used the City's emergency fund and his control over the board of finance to procure a burner for heating a school while the school was not in session (Id. ¶ 27); used the City's finances to procure the demolition of a building (Id. ¶ 28); gave an executive order to reduce the number of take-home vehicles for City employees (Id. ¶ 34); had a car detailed in anticipation of a visit from the President of the United States without using the proper channels to approve such an expenditure (Id. ¶ 29); secured a contract with a natural gas company that had made contributions to his Senate campaign (Id. ¶ 31); used City of Waterbury cellular telephones for improper personal and illegal purposes (Id. ¶¶ 51-57, 62-66); and accepted gifts in exchange for securing City contracts without being detected (Id. ¶ 30).

Mayor Giordano also established himself as the City's final authority by frequently visiting City of Waterbury schools and having school children visit the Mayor's office (Id. ¶ 43); having access to the Mayor's office during times when it was closed to the public (Id. ¶ 70); appearing at press conferences where he gave statements regarding the City's finances and police (Id. ¶ 32); and maintaining a position on the State of Connecticut oversight board that took over the City's finances in March of 2001 (Id. ¶ 44). At his criminal trial, the evidence demonstrated that Mayor Giordano promulgated the City of Waterbury's Sexual Harassment Policy and wrote an attached memorandum for all municipal employees. Id. ¶ 25. Evidence was also introduced,

including the Mayor's own admission, that Mayor Giordano was responsible for the daily operations of the City, including public safety. Id. ¶¶ 19, 26. At his criminal trial, Mayor Giordano was in fact proud that almost everyone in Waterbury recognized his face and name.

There is no genuine issue of material fact that the Mayor of Waterbury had final authority to make decisions on behalf of the City regarding City property, including his cellular telephone, unmarked police cruiser, and Mayor's office, and the City's police and finances. Moreover, there is no genuine issue of material fact that the Mayor of Waterbury had such broad Mayoral powers over the daily operations of the City as to render his actions the actions of the City of Waterbury itself.

Mayor Giordano remained authorized decisionmaker over the subject matter in question, no matter the illegality or reprehensibility of his actions. In Monell, the Supreme Court cautioned against holding a municipality liable merely because it employs a tortfeasor. 436 U.S. at 691-92. The conclusion that the City of Waterbury is liable for Mayor Giordano's actions does not implicate Monell's prohibition against holding a municipality liable under *respondeat superior*, however. Mayor Giordano made the deliberate choice to use his City telephones, City vehicle, the Mayor's Office, and his Mayoral powers to accomplish the sexual abuse of Jane Doe, Jr. No other City of Waterbury official had the authority to question or supervise him because he was the City's elected final policymaker. Mayor Giordano *was* the City of Waterbury for all legal and practical purposes.

It makes little sense to argue that a final policymaker's *illegal* decisions cannot constitute the policy of a municipality. If liability is to attach at all for a final policymaker's actions under § 1983, it will be for a violation of the Constitution or other federal law. An authorized final

20

policymaker's violation of the Constitution that also happens to be illegal under state or federal law is no less an action by the municipality itself.  Case law further illustrates the distinction between *respondeat superior* liability and a municipality's liability for a final policymaker's unconstitutional or illegal abuse of authority under § 1983:

In <u>Williams v. Butler, et al.</u>, 863 F.2d 1398 (8th Cir. 1988), the Eight Circuit held that the City of Little Rock could be liable where an elected traffic court judge, who had final policymaking authority over hiring and firing of employees, harassed and terminated two employees who told the police about his deliberate destruction of traffic tickets:

> [B]y delegating final policymaking authority to Butler the City exposed itself to liability for any unconstitutional acts taken by him pursuant to that authority.  <u>See</u> <u>Pembaur</u>, 475 U.S. at 480-81.  It begs the question to say that because the city did not expressly authorize Williams's termination the City cannot be held liable. Because he was given final policymaking authority, Buter was, in effect, the City; his actions were the City's actions. . . .In the instant case the City of Little Rock is liable because it, through Butler, fired Williams.  As the elected official acted so did the municipality.

<u>Id.</u> at 1403.  Similarly, by delegating final policymaking authority regarding City property, the police department, City finances, City daily operations, and public safety to Mayor Giordano, the City of Waterbury exposed itself to liability for his unconstitutional actions taken pursuant to that broad authority.

In <u>Turner v. Upton County, Texas</u>, 915 F.2d 133 (5th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991), plaintiff alleged that the county was liable for the sheriff and district attorney's alleged conspiracy to subject her to trial on false charges and to coerce her to change her plea from guilty to not guilty.  The Court of Appeals found that as the final policymaker in the area of law enforcement, the sheriff was "empowered by the state to

21

define objectives and choose the means of achieving them without county supervision." Id. at

136 (citations omitted; internal quotation marks omitted). Although the county argued it did not

authorize the sheriff to violate the law, the court noted, "[w]here a *final* policymaker abuses the

powers vested in his position to the detriment of a citizen, that abuse can be the basis for suit

being brought under section 1983[.]" Id. at 137. The court distinguished this premise from the

vicarious liability prohibited under Monell, where "the sole nexus between the employer and the

tort is the fact of the employer-employee relationship." Monell, 436 U.S. at 693. Here, the City

of Waterbury and Mayor Giordano were synonymous, not merely employer and employee.

Moreover, the City of Waterbury failed to limit or control Mayor Giordano's actions and by way

of the City Charter, mandated that it not have supervision or control of his actions and/or

inactions.

Bennett v. Pippin, 74 F.3d 578, 586 (5th Cir. 1996), cert. denied, 519 U.S. 817, 117 S.Ct.

68, 136 L.Ed.2d 29 (1996) is in further support of Turner's proposition. There, the Court of

Appeals held that a § 1983 claim brought against a sheriff in his official capacity for the rape of a

suspect was the act of the County. The Court of Appeals stated that it could not argue with the

district court's observation that "it was not lost on [the plaintiff] (or the Sheriff) that the Sheriff

carried the keys to the Archer County jail with him in his pocket and wielded coercive power

over [the plaintiff]." Id. at 586. It held that the sheriff's actions were the actions of the county

for the purposes of § 1983 because the sheriff was the county's final decisionmaker with respect

to law enforcement. Id. at 586. "The Sheriff's actions were an abuse of power held uniquely

because of a state position." Id. at 589. Also see Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000).

There, corrections officers who publicly criticized alleged assaults of inmates by other officers

brought a § 1983 action against the Sheriff, other officials and the county for First Amendment

violations based on alleged retaliation. After analyzing the Sheriff's duties under New York

State law, the Court of Appeals held that the lower court could have concluded that the Sheriff

had final authority over the matter because there was no "indication that there is any final

policymaker other than the . . . Sheriff with respect to operations at the Jail." Id. at 59.

     Howard v. Town of Jonesville, 935 F.Supp. 855 (W.D. Louisiana 1996), further supports

the plaintiff's claim that a mayor's wrongful sexual behavior may fairly be said to represent town

policy. In Howard, the plaintiff brought a § 1983 claim against the town for the mayor's alleged

sexual harassment. Id. at 859. In denying the defendant's motion to dismiss, the court found that

"a reasonable trier of fact could find that the actions of the Mayor himself toward plaintiff came

to represent town policy or, to say the least, condoned a custom of sexual harassment by the

town's official and employees." Id.; see also Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308

(11th Cir. 2001), cert. denied, 535 U.S. 1033, 122 S.Ct. 1789, 152 L.Ed.2d 648 (2002) (not

involving final policymaker liability, but finding city manager acted under color of state law

when he raped city employee in her apartment and that jury could find city liable if there was a

policy of ignoring or tolerating sexual assault).

     Moreover, "it is plain that municipal liability may be imposed for a single decision by

municipal policymakers under appropriate circumstances." Pembauer, 475 U.S. at 480. If

municipal liability may be imposed for a single decision by a municipal policymaker, liability

should be imposed for the ongoing pattern of sexual abuse by Mayor Giordano over a several

month period.

23

### D.    Plaintiff Has Shown That The City Acted Intentionally.

Under § 1983 it is not enough for the plaintiff to simply identify conduct attributable to the municipality.  "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  <u>Board of the County Comm'rs of Bryan County, Oklahoma</u>, 520 U.S. at 404.  <u>Bryan County</u> makes clear, however, that there are two kinds of cases under § 1983: those that present difficult questions of fault and causation and those that do not.  Questions of fault and causation only arise when a plaintiff seeks to establish municipal liability based on a *facially lawful* municipal action which led to a violation of a plaintiff's rights.  <u>Id.</u> at 407.  On the other hand, where, as here, plaintiff claims "that a particular municipal action *itself* violates federal law. . . resolving these issues of fault and causation is straightforward."  <u>Id.</u> at 404.  "Proof that a municipality's . . . authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably."  <u>Id.</u> at 405.  Here, plaintiff has established that Mayor Giordano was an authorized decisionmaker who intentionally deprived the plaintiff of her Constitutional right to bodily integrity under the Fourteenth Amendment.  The City of Waterbury was therefore the moving force behind Jane Doe, Jr.'s injuries.

### V.    MAYOR GIORDANO IS LIABLE UNDER COUNTS FOUR THROUGH TEN AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING HIS COMMISSION OF SEXUAL ASSAULT, ASSAULT AND BATTERY, FALSE IMPRISONMENT, CIVIL CONSPIRACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

#### A.    Mayor Giordano Is Collaterally Estopped From Denying Liability For Sexual Assault and Assault and Battery Under Counts Four and Eight.

24

Under Connecticut common law, "A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another." DeWitt v. John Hancock Mutual Life Insurance Company, 5 Conn.App. 590, 594, 501 A.2d 768 (1985) (citing 1 Restatement (Second), Torts § 21). A civil battery is where an actor intends to cause a harmful or offensive contact or an imminent apprehension of such contact in another and a harmful contact with the person results. 1 Restatement (Second), Torts § 13; see also, Alteiri v. Colasso, 168 Conn. 329, 334, 362 A.2d 798 (1975).

As previously discussed, see II., supra, Mayor Giordano is collaterally estopped from relitigating issues that were previously decided in the criminal matter and were necessary to the final judgment. The elements which establish liability for assault and battery and/or sexual assault were previously decided under the 18 U.S.C. § 242 charge in the criminal proceeding and were necessary to the final judgment. There, the court (Nevas, J.) instructed that jury that in order for them to convict Mayor Giordano under § 242, one element that they must have found was that Mayor Giordano's conduct deprived the plaintiff of her constitutional right to be free from aggravated sexual abuse and sexual abuse. Appendix, Exhibit E, Tr. at 2102. The judge then went on to instruct that "[f]reedom from such physical abuse includes the right to be free from unjustified and unwanted sexually motivated physical assaults and coerced sexual contacts. . . [of] a substantial nature that is shocking to one's conscience." Appendix, Exhibit E, Tr. at 2105. Mayor Giordano's conviction under 18 U.S.C. § 242 for willfully depriving the plaintiff of her right to be free from sexual abuse and aggravated sexual abuse clearly establishes that Mayor Giordano intentionally caused an apprehension of offensive physical and/or sexual contact with the plaintiff and that a harmful contact with the plaintiff's person did occur. See,e.g., Pizzuto v.

25

County of Nassau, et al., 239 F.Supp.2d 301 (E.D.N.Y. 2003) (defendants who had previously

been convicted of violating 18 U.S.C. § 242 for depriving victim of Eighth Amendment right to

be free from cruel and unusual punishment were collaterally estopped from disputing civil

liability for battery).

Under federal law, there is also no genuine issue of material fact as to whether the

plaintiff is a victim entitled to damages within the meaning of 18 U.S.C. § 2255.  That statute

provides:

> (a) Any minor who is a victim of a violation of section... 2422 of this title and
> who suffers personal injury as a result of such violation may sue in any
> appropriate United States District Court and shall recover the actual damages such
> minor sustains and the cost of the suit, including a reasonable attorney's fee.  Any
> minor as described in the preceding sentence shall be deemed to have sustained
> damages of no less than $50,000 in value.

There is no genuine issue of material fact regarding whether the plaintiff was a victim of a

violation of 18 U.S.C. § 2422 (use of interstate commerce to coerce and entice a minor to engage

in unlawful sexual acts). Although Mayor Giordano was not charged with a violation of § 2422,

he was convicted of using interstate commerce to knowingly initiate the transmission of the

plaintiff's name and other identifying information with intent to entice her to engage in unlawful

sexual activity and for willfully depriving the plaintiff of her right to be free from sexual abuse.

There is also no dispute that the plaintiff suffered personal injury as a result of Mayor Giordano's

coercion.  Rule 56(a)1 Statement ¶ 66.  Therefore, there is no genuine issue of material fact as to

whether Jane Doe, Jr., was a victim of coercion and enticement within the meaning of § 2422,

entitling her to damages pursuant to 18 U.S.C. § 2255.

26

**B.      There Is No Genuine Issue Of Material Fact As To Whether Mayor Giordano Is Liable Under Count Six For False Imprisonment Of The Plaintiff.**

"[F]alse imprisonment is the unlawful restraint by one person of the physical liberty of another . . . A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." Rivera v. Double A Transportation, 242 Conn. 21, 31, 727 A.2d 204 (1999) (citations omitted; internal quotation marks omitted).  Any period of restraint, "however brief in duration, is sufficient to constitute a basis for liability." Berry v. Loiseau, 223 Conn. 786, 820, 614 A.2d 414 (1992).  False imprisonment requires "restraint or confinement of a person's physical liberty through the exercise of force . . . express or implied." Id. at 821 (internal quotation marks omitted).

Here, there is no genuine issue of material fact as to whether Mayor Giordano is liable for false imprisonment of the plaintiff.  The facts demonstrate that Mayor Giordano knew that the plaintiff was between the ages of seven and twelve. Rule 56(a)1 Statement ¶ 65.  Nonetheless, Mayor Giordano arranged to have the minor plaintiff taken away from her home and family and brought to places which were unfamiliar to her. Id. ¶¶ 62, 68-73.  In addition, the plaintiff was forced to perform sexual acts or Mayor Giordano threatened to have her aunt arrested. Id. ¶ 76.  Given the plaintiff's age and the circumstances, Mayuor Giordano was substantially certain that confinement would result from his actions.  Moreover, Mayor Giordano accomplished the unlawful restraint of the plaintiff's liberty through both physical force, in the form of sexual assault, and by implying that harm would come to the plaintiff's family if she did not do as he asked. Id. ¶ 76.  Therefore, Mayor Giordano is liable under Count Six for False Imprisonment.

27

**C.    There Is No Genuine Issue of Fact As To Whether Mayor Giordano Is Liable Under Count Five For Conspiracy To Commit False Imprisonment And Count Seven For Conspiracy To Commit Assault And Battery.**

Under Connecticut law, "there is no independent claim of civil conspiracy. Rather, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself . . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." Harp v. King, 266 Conn. 747, 779 n.37, 835 A.2d 953 (2003) (citation omitted; internal quotation marks omitted). The following elements must be proven to establish liability under a claim for civil conspiracy: "(1) a combination between two or more persons; (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means; (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object; (4) which act results in damages to the plaintiff." Williams v. Maislen, 116 Conn. 433, 437, 165 A. 455 (1933) (citations omitted).

There is no genuine issue of material fact as to Mayor Giordano's liability for civil conspiracy to commit false imprisonment and conspiracy to commit assault and battery. Plaintiff has demonstrated liability as a matter of law for the underlying tort claims. See V.A. and V.B., supra. Plaintiff also alleges that Mayor Giordano is collaterally estopped from denying that he was part of "a combination between two or more persons" because he was previously convicted of conspiring with Guitana Jones to transmit the names of the minor victims through interstate commerce in order to accomplish the sexual abuse of the plaintiff in violation of 18 U.S.C. § 371. This issue was actually litigated and necessary to the final judgment. Appendix, Exhibit E, Tr. at 2112. There is also ample evidence to demonstrate overt acts taken pursuant to the

28

conspiracy, including Mayor Giordano initiating phone conversations, paying money to Guitana Jones, and testimony regarding the sexual abuse of the plaintiff. <u>Rule 56(a)1 Statement</u> ¶¶ 62, 66, 75.

**D.    There Is No Genuine Issue Of Material Fact As To Whether Mayor Giordano Is Liable Under Count Nine For Intentional Infliction Of Emotional Distress.**

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established.  It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.  Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.  Only where reasonable minds disagree does it become an issue for the jury." <u>Appleton v. Board of Education</u>, 254 Conn. 205, 210-11, 757 A.2d 1059 (2000).

There is no genuine issue of material fact as to whether Mayor Giordano is liable for intentional infliction of emotional distress.  First, it is clear that Mayor Giordano knew or should have known that plaintiff's emotional distress was the likely result of his conduct.  In the criminal trial, Mayor Giordano acknowledged that the plaintiff had the Fourteenth Amendment right to be free from unwanted sexual advances and forced sexual activity.  <u>Rule 56(a)1 Statement</u> ¶¶ 87, 92.  Moreover, the Mayor signed the City of Waterbury's Sexual Harassment Policy which stated that unwelcome sexual advances "can be insulting and demeaning to the recipient." <u>Appendix</u>, Exhibit B.  Second, the sexual abuse of Jane Doe, Jr., a minor, was

29

extreme and outrageous. In finding a violation of plaintiff's Fourteenth Amendment rights, the

jury in the prior criminal trial had to find Mayor Giordano's conduct "so demeaning and harmful

under all the circumstances to shock the conscience." Appendix, Exhibit E, Tr. at 2104. Third,

Mayor Giordano caused the plaintiff's emotional distress when he perpetrated the abuse. Rule

56(a)1 Statement ¶ 66. Fourth, plaintiff's emotional distress from having been sexually abused

by an authority figure at the age of ten, having to witness the sexual abuse of her cousin, and

fearing that her aunt or family would be in danger if she told anyone has been severe. At the time

of the sexual abuse, plaintiff thought the Mayor could "rule everyone" and was the "boss of

everyone" in the City of Waterbury. Id. ¶ 85. She lived in fear of Mayor Giordano and what

would happen to her family if she told anyone about the abuse. Id. ¶ 86. Moreover, the plaintiff

has received therapy and/or counseling and will likely require future treatment.

### E.    There Is No Genuine Issue Of Material Fact As To Whether Mayor Giordano Is Liable Under Count Ten For Negligent Infliction Of Emotional Distress.

"[I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff

must prove that the defendant should have realized that its conduct involved an unreasonable risk

of causing emotional distress and that that distress, if it were caused, might result in illness or

bodily harm. . . . This . . . test essentially requires that the fear or distress experienced by the

plaintiffs be reasonable in light of the conduct of the defendants. If such [distress] were

reasonable in light of the defendants' conduct, the defendants should have realized that their

conduct created an unreasonable risk of causing distress, and they, therefore, properly would be

held liable." Larobina v. McDonald et al., 274 Conn. 394, 410, 876 A.2d 522 (2005) (internal

quotation marks omitted; citations omitted).

30

Here, based on his own admissions and promulgation of a sexual harassment policy,

Mayor Giordano knew or should have known that his conduct involved an unreasonable risk of

causing severe emotional distress to the plaintiff. Rule 56(a)1 Statement ¶¶ 87, 91; Appendix,

Exhibit B. Moreover, plaintiff's emotional distress at being sexually abused and threatened by an

authority figure was undoubtedly reasonable. The defendant also cannot deny that severe

emotional distress caused by sexual abuse and assault might result in illness or bodily harm.

## VI. THE CITY OF WATERBURY IS LIABLE UNDER COUNTS FOUR, NINE AND TEN AS THERE ARE NO GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER MAYOR GIORDANO ACTED AS THE CITY'S ALTER EGO.

The City of Waterbury is liable for the sexual assault and abuse and/or the infliction of

emotional distress on Jane Doe, Jr., under Counts Four, Nine, and Ten as there are no genuine

issues of material fact that Mayor Giordano acted as the alter ego of the City of Waterbury.

Like any corporation, municipalities may only act through natural persons as its officers,

agents, or employees. Shay v. Rossi, 253 Conn. 134, 168, 749 A.2d 1147 (2000) (overruled in

part on other grounds by Miller v. Egan, 265 Conn. 301, 325, 828 A.2d 549 (2003)). The

distinction between a municipality and its officers should be disregarded, however, when the acts

of the officer are tantamount to an act of the municipality itself. This theory of corporate

responsibility has been recognized in Connecticut Workers' Compensation cases to allow

recovery against a corporation when an intentional tort is carried out by someone of such rank

that he may be deemed the "alter ego" of the corporation. See, e.g., Melanson v. Town of West

Hartford, et al., 61 Conn.App. 683, 690-91, 767 A.2d 764 (2001); Suarez v. Dickmont Plastics

Corp., 242 Conn. 255, 273-75, 698 A.2d 838; Jett v. Dunlap, 179 Conn. 215, 219, 425 A.2d 1263

31

(1979).

Here, the distinction between Mayor Giordano and the City of Waterbury should likewise be disregarded and the intentional and/or negligent discretionary acts of Mayor Giordano should be deemed the acts of the City itself. Mayor Giordano can be characterized as the City's alter ego based on the broad authority granted to him under the City Charter. The City Charter establishes a "Strong Mayor" form of government wherein the Mayor is involved in all aspects of municipal government and establishes government policy. Rule 56(a)1 Statement ¶ 14. The City Charter also names the Mayor "chief executive officer" of the City of Waterbury, its highest ranking official. Id. ¶ 10. Under the City Charter, the Mayor is given the duty of overseeing all city departments, including the police department and the budget director and finance director. Id. ¶ 12, 23. It was Mayor Giordano's duty to "cause the laws and ordinances to be executed and enforced and to conserve the peace within the city and to be responsible for the good and efficient government of the City. Id. ¶ 24. In summary, Mayor was at the top of the chain of command in Waterbury and had the duty of overseeing the City's police, finances, and the protection of its citizens.

Mayor Giordano's acts should be attributed to the City because he committed intentional torts and/or acted negligently under the cloak of the authority granted to him by the City Charter. Mayor Giordano was able to sexually abuse and/or inflict emotional distress on the plaintiff simply because he was Mayor. He used trappings of his authority such as City property (cellular telephones, a City police cruiser, and the Mayor's Office), control over the City police, and control over the City's finances to accomplish the sexual abuse of Jane Doe, Jr., undetected. Mayor Giordano preyed on Guitana Jones by wielding his power over the police. He even had

32

Jones call his house pretending to be the police in order to afford him an excuse to leave his

family for a sexual encounter. Rule 56(a)1 Statement ¶ 81. Mayor Giordano constantly

threatened Jones and the minor victims that he had power to have her placed in jail. Id. ¶ 76.

When the FBI did in fact place Jones under arrest she asked them if "Phil" (Giordano) had sent

them. Id. ¶ 82. Mayor Giordano did in fact have the authority to carry out his threats and did in

fact have control over City property, police, and finances. Therefore, as Mayor Giordano acted,

so did the City of Waterbury.

## VII.    THE CITY OF WATERBURY IS LIABLE UNDER COUNT ELEVEN AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER IT WAS NEGLIGENT OR FAILED TO ADEQUATELY SUPERVISE CITY OFFICIALS AND/OR EMPLOYEES

There is no genuine issue of material fact as to whether the City of Waterbury is liable for

negligence and/or inadequate supervision of Mayor Giordano, Budget Director Thomas Ariola

and/or other City employees. The minor victims were sexually abused while they were on

property owned and controlled by the City, the City of Waterbury Mayor's Office. Rule 56(a)1

Statement, ¶ 70. The minor victims were also sexually abused in a City police vehicle, the

Mayor's Crown Victoria. Rule 56(a)1 Statement ¶ 73. As such, the City owed a duty to

safeguard the minor children. Moreover, the minor children were identifiable victims subject to

imminent harm. City employees knew or should have known that the children were in danger.

The Mayor was visited by a known prostitute with young children at the Mayor's Office and in

his police cruiser. Moreover, sexual abuse took place at the home of Budget Director Ariola. Id.

at ¶ 72. Finally, the City failed to adequately monitor Mayor Giordano's cellular telephone usage

to ensure he was using the City's telephone for proper and legal purposes.

33

## CONCLUSION

For all the foregoing reasons, the Court should grant Jane Doe, Jr.'s motion for summary judgment as to Counts One and Four through Eleven. With respect to the Fourteenth Amendment claims under Count One, collateral estoppel and the record before the Court establish that there can be no genuine issue regarding Mayor Giordano's liability and that the Mayor acted as the City's authorized final policymaker. Moreover, there are no genuine issues of material fact as to whether Mayor Giordano is liable under Counts Four through Ten and as to whether the City of Waterbury is liable under Counts Four, Nine, Ten and Eleven.

Respectfully submitted,

THE PLAINTIFF
**JANE DOE, JR., ppa  ATTORNEY ALLISON JACOBS**
**GUARDIAN AD LITEM**

By:  _____

**MICHAEL S. HILLIS**
DOMBROSKI, KNAPSACK & HILLIS LLC
129 Whitney Avenue
New Haven, Connecticut 06510
(203) 624-9096
(203) 624-1308 (Fax)
Federal Bar No.: ct11867

34

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was mailed, postage prepaid, this **28**[th] day of **OCTOBER, 2005**, to all counsel of record as follows:

**MICHAEL W. MACKNIAK, ESQ.**
87 Meadow Street
Naugatuck, Connecticut 06770

**ERSKINE D. MCINTOSH, ESQ.**
The Law Offices of Erskine D. McIntosh, P.C.
P.O. Box 185789
Hamden, Connecticut 06518-0789

**GERALD L. HARMON, ESQ.**
The Law Offices of Gerald L. Harmon
290 Pratt Street
Meriden, Connecticut 06450

**ELLIOT B. SPECTOR, ESQ.**
**NOBLE, SPECTOR, YOUNG & O'CONNOR**
One Congress Street, Fourth Floor
Hartford, Connecticut 06114

**ANDREW B. BOWMAN, ESQ.**
1804 Post Road East
Westport, Connecticut 06880

_____

**MICHAEL S. HILLIS**

35