UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE, JR., et al. | : | **Master Consolidated (Lead Case)** |
| Plaintiffs, | : | Civil 3:01CV2298 (SRU) |
| vs. | : | |
| | : | |
| CITY OF WATERBURY, et al. | : | |
| Defendants. | : | |
| | : | **Member Case** |
| SUSAN ROE, JR., et al. | : | NO.:  3:03CV00571(SRU) |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| CITY OF WATERBURY, et al. | : | |
| Defendants. | : | DECEMBER 1, 2005 |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTIONS
FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT,
CITY OF WATERBURY'S MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFFS ROE, ET AL. AND DOE, ETAL.**

**I.     PRELIMINARY STATEMENT**

The plaintiffs, Susan Roe Jr., et al. and Jane Doe, Jr., et al., seek summary judgment on their 42

U.S.C. §1983 claims against the defendants, Philip Giordano, and the City of Waterbury, for alleged

violations of their 14th Amendment right to bodily integrity and to be free from sexual abuse.  Plaintiffs

allege that Giordano, former mayor of Waterbury, acting under color of law, and as the final

policymaker for the City of Waterbury, deprived the plaintiffs of said 14th Amendment rights by forcing

the plaintiffs, then eight and ten years of age, to perform fellatio on him, and also forcibly subjected

1

them to non-consensual touching of their genitalia and breasts that was sexual in nature.  Giordano was

convicted in federal court for violating Doe's and Roe's civil rights under 18 U.S.C. §242.

Plaintiffs assert defendant, City of Waterbury, is liable for Giordano's actions because he was a

"strong mayor" under the City Charter, was a "policymaker," and because some of the alleged abuse

took place in or on City property, or was facilitated by a City supplied cellular phone and vehicle.

Plaintiffs can produce no evidence that any municipal employees reasonably knew of Giordano's

alleged criminal activity or that City agents were either grossly negligent or deliberately indifferent to

the plight of Ms. Roe and Ms. Doe in failing to discover their abuse.  Nor can they show the alleged

abuse was directly caused by any policy or custom of the City of Waterbury.

Plaintiffs attempt to claim the City is liable solely because Giordano misused a City car, office,

and cellular phone to facilitate a small portion of the alleged abuse.  Yet no one from the City knew of

this abuse and the plaintiffs cannot claim anyone knew these events were taking place.  In fact,

Giordano's criminal behavior was only discovered after months of covert surveillance and wiretapping

by the Federal Bureau of Investigation.  It is especially telling that highly trained federal agents, using

the most sophisticated investigative techniques, did not discover Giordano's crimes for many months,

despite having recorded and listened to the very conversations plaintiffs allege should have made it

"obvious" to the City that Giordano was allegedly molesting the plaintiffs.   If trained criminal

investigators had trouble discovering Giordano's actions, how can the City be expected to know of, and

thus be held liable, for them?

2

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).  When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

 "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152,

3

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C. •** ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985

116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249-50, 106 S.Ct. 2505. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247-48, 106 S.Ct. 2505. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23, 106 S.Ct. 2548; *accord, Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's

4

claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

**III.    GIORDANO'S ALLEGED SEXUAL ASSAULTS ON ROE AND DOE
          CANNOT FAIRLY BE SAID TO CONSTITUTE MUNCIPAL POLICY OR CUSTOM.
          THEREFORE, THE CITY IS NOT LIABLE FOR HIS ACTIONS**

Plaintiffs' statements of undisputed fact and briefs almost exclusively relate to the alleged criminal acts of the mayor and evidence of his powers as mayor leading to a conclusion that he misused such powers and therefore was acting under color of law.  This argument is irrelevant to the issue of the City of Waterbury's liability which hinges on whether a policy of the City was the moving force behind the alleged constitutional violation.  At no time do plaintiffs allege that there was an actual policy or training which led to the constitutional violation.  Nor do they claim any board or official authorized, condoned or even was aware of the alleged actions of the mayor.  The plaintiffs detail at length all of the mayor's powers but nowhere within those powers is the authority to sexually molest children.  And the plaintiffs do not allege that when committing such acts the mayor was in anyway acting in the interests of the City.  Their claim that the City should be held liable rests on their factual allegation that these acts occurred during the mayor's term of office, that he used City property and represented himself as the mayor.  While such allegations may be sufficient to prove that Giordano acted under color of law, they are insufficient to prove that a City policy was the moving force behind the constitutional violation.

5

While it is admitted that the mayor was the official policymaker in many respects when conducting City business it is clear that he was not acting on behalf of the City when he allegedly committed the described criminal acts.  Giordano's purely personal acts for his own sexual gratification cannot fairly be said to represent official policy of the municipality.  As plaintiff points out, "the Second Circuit has explained, 'An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions.' *Anthony v. City of New York*, 339 F.3d 129, (2d Cir. 2003)'( page 17 plaintiff Doe brief).  Decisions to sexually molest young girls are not practical, legal or in any way related to the City's interests.

To prevail on a §1983 claim against a municipality, the plaintiff must plead and prove (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

Under 42 U.S.C. §1983, a municipality may not be held vicariously liable under a theory of respondeat superior solely because it employs a tortfeasor.  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658,663 n.7, 691 (1978).  "In fact, avoiding results that are indistinguishable from respondeat superior appears to be [the] primary concern of Supreme Court jurisprudence on municipal liability." *Russo v. City of Hartford,* 341 F.Supp. 2d. 85, 107 (D.Conn. 2004).  "Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly represent official policy, inflicts the injury, that the government entity is responsible under §1983." *Monell* at 694. (*emphasis added*).  Municipal governments can be held liable only when their

6

official policies cause their employees to violate a person's constitutional rights. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) (*emphasis added*).

Under some circumstances, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances, "if the decision is properly made and can fairly be said to represent municipal policy." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-481(1986). The Supreme Court noted, however, "we hasten to emphasize not every decision by municipal officers automatically subjects the municipality to §1983 liability." *Id*. at 481. Generally, only the actions of municipal officials with "final" policymaking authority can be imputed to the municipality. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124,127 (1988)(*citing Pembaur*).

Whether a given municipal official has "final" policy-making authority is a question of state law. *Id.* The Supreme Court has cautioned that the mere fact a municipal employee with "final" policymaking authority has violated a person's federal rights, does not *per se* mean the employee's action constituted municipal policy. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405-407. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." *Id*. at 406-407.

Instead, plaintiff must show not just a violation of federal right, but that through conduct fairly attributed to it, the municipality was the "moving force" behind the plaintiff's injury and that the municipality's actions were taken with the requisite degree of culpability and that there was a direct

7

causal link between the municipality's policies and the plaintiff's harm. *Id.* at 400, 404. Furthermore, the plaintiff bears the burden of establishing as a matter of law that the conduct of any given official actually represents official policy. *See Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d. Cir. 2000).

The Supreme Court has noted plaintiffs must be held to rigorous standards of culpability and causation, so that municipalities are not held vicariously liable for the torts of their employees. *Id.* at 405. "The standards for pleading such an injury is stringent and exacting… [s]ome degree of specificity is required in the pleading of a custom or policy on the part of a municipality…[m]ere conclusory allegations … will not suffice…[a] plaintiff must…point to facts outside [her] own case to support [her] allegation of a policy on the part of a municipality." *Birdsall v. City of Hartford*, 249 F.Supp. 2d. 163, 173-174(D.Conn. 2003*) (Underhill, J.),* (*internal citations omitted, emphasis added*; *See also Pembaur* at 478. (*"Monell* is a case about responsibility.").

In *Kohler v. City of Wapakoneta*, 2005 WL 1941334 (N.D. Ohio)(Aug. 12, 2005), a police chief's illegal tape-recording, for his sexual gratification, of a female dispatcher using the bathroom, was held not to constitute official policy of the City, despite the fact that the police chief was a "final" policymaker. The district court noted "liability for unauthorized acts is personal; to hold the municipality liable *Monell* tells us, **the agent's actions must implement rather than frustrate the government's policy.**" Id. at *16. (*emphasis added).* It then held that the police chief did not have the authority to establish a policy to secretly tape women in the restroom, and that such activities were

8

unauthorized and were for his own personnel sexual pleasure and were clearly at odds with the City's sexual harassment policies.  *Id.* at *17.

In *Griffin v. City of Opa-Locka*, the 11th Circuit held that even where the City had a "custom or policy" condoning sexual harassment, that it was still not liable for the rape of a secretary by the City Manager because the sexual assault alone did not establish the existence of municipal policy or custom condoning rape.  261 F.3d 1295, 1312 (11th Cir. 2001).  This was so, despite the fact the City Manager prevented the victim from getting a ride home from a sponsored City function with another employee and proceeded to misuse his official position and City resources both to facilitate the rape and then to attempt to placate the victim after the rape.

In *Wooten v. Logan,* the Sixth Circuit held that the rape of a mentally handicapped child by the High Sheriff of Pickett County, whom the Court acknowledged was the top law enforcement official whose actions could set official county policy, still did not subject the County to municipal liability under §1983, because his criminal actions were not designed to guide future decision making and were not in furtherance of the County's overall high level government plans.  92 Fed. Appx. 143, 146-147 (2004).  This was despite the fact the Sheriff arranged for the child to be transported on a public roadway, and then proceeded to use a marked police cruiser, with lights and sirens, to pull over the car, take control of the child, and take her to another location to be molested and raped, all while in full uniform, with a badge and firearm.

9

In *Doe v. Patton*, a District Court held that there could be no municipal liability for the sexual assault of a juvenile by a supervisory courthouse janitor where it was clear there was no municipal policy condoning rape and it was not "plainly obvious" to the municipality that the employee would rape the juvenile. *See* 377 F.Supp.2d 615 (E.D Ky.  2005).  Similarly, in *Rose v. Zillioux*, an unpublished Second Circuit decision, the Court found in part, that the molestation of a child by the employee of a quasi-public bridge authority did not establish municipal policy or custom under §1983 especially where the weight of the evidence indicated no public officials had reasonable knowledge of the conditions that led to the sexual assault of the child.  84  Fed.Appx. 107 (2003).

Even assuming all of plaintiffs' allegations regarding Giordano's sexual activities with these children are accurate and that he was a "final policymaker," they do not establish any policy or custom on the part of the City of Waterbury that caused the plaintiff's injury.   Plaintiffs' argument is that Giordano's criminal sexual assault on the children established an official policy for the City of Waterbury condoning adult males receiving fellatio from minors and also sanctioning touching them for sexual gratification.  In essence, plaintiffs' argument is that:

> Giordano is the Mayor of the City of Waterbury and had some authority to set City policy.  Giordano sexually molests little girls.  Therefore, because Giordano sexually molests little girls, the official policy of the City of Waterbury is to sexually molest little girls.

It is absolutely not the official policy of the City of Waterbury to sexually molest little girls or otherwise violate their rights to privacy and bodily integrity.  In fact, to suggest that the City could even

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C.** • ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985

contemplate, much less have, an official policy of sexually abusing children, defies common sense, and quite frankly, is absurd.

In fact, the actions of the City during Giordano's tenure as Mayor demonstrate that the official policy of the City was to protect children from sexual assault.   The Waterbury Police Department actively tries to prevent the sexual exploitation of children by *anyone*, and initiated over a thousand sexual assault investigations during Giordano's tenure as mayor to prevent the type of acts plaintiff accuses Giordano of establishing as official City policy, i.e. sexual assault.[1] *See Exhibit A*, - Crime Statistics.  Furthermore, as Mayor, Giordano actively funded the police department and did not try to discourage such investigations, which if anything, establishes a City policy to prevent sexual exploitation of children.   The actions of the Waterbury Police Department during Giordano's tenure conclusively establish that it was not the City's official policy or custom to condone child rape.

Not only was it the City's policy to prevent sex crimes against children, it was its official policy to help and protect them generally. During Giordano's tenure City officials made numerous referrals to the Department of Children and Families to report suspected cases of neglect and abuse, and DCF

---

[1]  In 1995-1996, the Waterbury Police investigated and/or arrested suspects in 38 "forcible rapes"(this includes forced fellatio), 178 "other sex offenses,"(illegal sexual touching, but not prostitution) and 96 "offenses against the family"(which covers risk of injury to a minor and some domestics); In 1997, it investigated 33 "forcible rapes," 165 "other sex offenses," and 107 "offenses against the family"; In 1998, 21 "forcible rapes," 65 "other sex offenses," 328 "offenses against the family;"  In 1999, 58 "forcible rapes," 34 " other sex offenses," and 236 "offenses against the family;" in 2000, 47 "forcible rapes," 179 "other sex offenses," and 174 " offenses against the family;" in 2001,  50 "forcible rapes," 156 "other sex offenses" and 171 "offense against the family.  **During Giordano's tenure as mayor, the police department investigated 247 "forcible rapes" and 777 "other sex offenses," encompassing the very sex acts Giordano was accused of.  In addition, numerous sex crime related cases were also investigated and classified as "offenses against the family."**

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C.** • ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985

initiated 846 formal investigations. *Exhibit B.*[2]  It is also undisputed that the City operated a number of

social service programs to aid children.  Furthermore, the City also had an established sexual harassment

policy forbidding sexual touching.  *See Pl.'s Appendix to Pl.'s Memorandum of Law In Support of*

*Motion for Summary Judgment Addendum #3.*

> **Giordano's Actions were Contrary To His Duties Under the City Charter and State Law.**
> **As Such, They Were "Ultra Vires" Acts For Which He Alone is Liable.**

Giordano's actions also cannot represent official City policy because his actions are in direct

conflict with the criminal laws of the State of Connecticut, Connecticut's established public policy of

protecting children, and his duties under the City Charter.   Waterbury is a political subdivision of the

State of Connecticut, and the State of Connecticut makes it a serious felony to sexually assault children.[3]

Furthermore, the State has a statutorily enshrined public policy of protecting children.[4]  Assuming

Giordano was the top law enforcement policymaker for Waterbury, he did not have authority to enact a

policy allowing criminal sexual assaults against children in direct contravention of the criminal code and

public policy of the State of Connecticut. Giordano's policymaking authority was always subordinate to

---

[2] See attached correspondence between DCF and Det. Joseph Kelly.  While DCF initiated 846 formal investigations, the number of referrals by the Waterbury police department was substantially higher. DCF is required to destroy cases not accepted for formal investigation within 90 days.  Also between 2001-2005, the City submitted another 721 cases for DCF.
[3] Conn. Gen. Stat. §53a-70(a)(2)…"A person is guilty of sexual assault in the first degree when such person…engages in sexual intercourse with another person and such person is under thirteen years of age…"
Sexual Assault in the First Degree is a class B felony allowing sentences of up to twenty years imprisonment and a mandatory minimum sentence of at least one year.  See Conn. Gen. Stat. §53a-35(b).  Fellatio constitutes sexual intercourse, as does even the slightest digital penetration.  See Conn. Gen. Stat. §53a-65.

[4] Conn. Gen. Stat. §17a-101(a)…  **"The public policy of this state is: To protect children…"**(*emphasis added*).

12

that of the State's, and he had no power to promulgate a policy sanctioning child rape in direct

contravention of State law.

Giordano's actions were in direct contravention not only of state law, but also of his duties under

the Charter to ensure criminal laws were enforced within the City.  *Waterbury City Charter § 2101(a)*.

Giordano's actions were "ultra vires," and cannot be used to impute liability to the City.  Fairness

requires that liability for "ultra vires" actions be personal to the wrongdoer.  ***Only Giordano should be***

***held liable for his personal behavior.***

Like the perverted police chiefs in Kohler and Wooten, Giordano's alleged actions must be

characterized as being taken for his personal gratification, did not further the public policies of the

municipality, and clearly frustrated the City and the State's well-established policies to protect children

from harm, especially sexual exploitation.   Common sense tells us that raping children cannot "fairly

represent" Waterbury's official policy or custom, which is what is required for municipal liability under

*Monell*.  Holding the City liable for Giordano's criminal acts would amount to liability based on a theory

of respondeat superior, which *Monell* clearly forbids.  *See Russo v. City of Hartford*, 341 F.Supp. 2d 85,

106-107 (D.Conn 2004) (*internal citations omitted).*

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C.** • ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985

**THE FACTS OF THIS CASE ARE DISSIMILAR TO MAJOR SUPREME COURT CASES WHERE THE ACTS OF A SINGLE MUNICIPAL OFFICIAL WERE HELD TO CONSTITUTE OFFICIAL POLICY**

The facts of this case are dissimilar to cases where courts have found municipalities liable for the single act of a final policy maker because there is not a clear chain of causation between what could fairly be considered governmental action and the harm inflicted on the plaintiff.

In *Pembaur v. City of Cincinatti,* 475 U.S. 469 (1986), a county attorney gave police a direct order to force entry into a business to serve capiases in violation of the Fourth Amendment. In that case, there was a direct causal link between the order of the county attorney and the plaintiff's injury, because the police only forced entry after seeking guidance from the county attorney.  Furthermore, there was evidence that it was standard practice for police to seek legal guidance from the county attorney's office such that orders given by the county attorney could be imputed to the municipality and thus constitute municipal policy.   A local prosecutor openly giving orders to law enforcement officers seeking legal advice related to the performance of their official duties is the type of action that reasonable people could impute to the City because it is related to a legitimate government function, i.e., law enforcement. The facts in *Pembaur* are vastly different than Giordano's secret alleged molestation of young girls, an act that common sense tells us is in no way related, even tangentially, to any legitimate municipal objectives.   As such, it is unfair to impute Giordano's actions to the City because nothing he did to Roe or Doe could fairly be attributed to the City, because it is in no way related to any legitimate governmental function.

14

In *Jeffes v. Barnes*, the Second Circuit held the county liable for the acts of its sheriff.  In that case, the sheriff allegedly watched his corrections officers severely beat a naked and shackled inmate saying it was "great."  *See* 208 F.3d 49 (2000).  When Jeffes, a corrections supervisor, attempted to report this misconduct, going so far as to cooperate with the Federal Bureau of Investigation and speaking in disguise to the news media, the sheriff orchestrated a campaign to identify and retaliate against him for breaking the "code of silence," and acquiesced to acts of vandalism against Jeffes's home and credible threats to his life.  The court found the Sheriff's tacit approval of a "code of silence" constituted "deliberate indifference" and created a custom or policy of allowing retaliation against jail employees for exercising their first amendment rights.  The instant case is nothing like *Jeffes*, in that the City in no way tacitly approved of a "code of molesting little girls" by City employees, and because Giordano was not setting day to day operational polices for a City department by his actions, but was merely furthering his own agenda separate and apart from any perceived benefit to the City.  Furthermore, as shown by the police and child protection statistics cited above, the City of Waterbury was in no way deliberately indifferent to the plight of sexually abused children.

Similarly, all of the cases cited by the plaintiffs supporting their position that a policymaker's acts may be considered municipal policy involve factual circumstances in which the very acts complained of were directly connected to their official duties and responsibilities.  In *Williams v. Butler, et al.,* 863 F. 2d 1398 (8th Cir. 1988) the termination complained of was done by the policymaker responsible for hiring and firing.  In *Turner v. Upton County, Texas*, 915 F.2[nd] 133 (5th Cir. 1990) the

15

plaintiff brought a complaint against the policymakers responsible for bringing charges claiming they conspired to subject her to trial on false charges. In *Bennett v. Pippin*, 74 F.3d 586 (5th Cir. 1996) the plaintiff claimed rape at the hands of the policymaker responsible for the plaintiff's care.

Contrary to the above cited cases the alleged acts of Giordano in no way were related to his duties or responsibilities as Mayor. Plaintiffs go to great lengths to delineate the powers vested in the Mayor by charter and the powers executed by the Mayor; however, there is no place in the City Charter nor is it claimed in any other fashion that the mayor was vested with official authority to sexually abuse children.

The plaintiffs erroneously argue that because Giordano used City property and allegedly misused his authority resulting in a finding by the criminal court that he was acting under color of law, that he was, therefore, executing a policy of the City. This conclusory leap is made without a basis in fact or law.

Further, it cannot be seriously claimed that Giordano was acting as the alter ego of the City of Waterbury, or even within the scope of his duties when he allegedly committed acts of sexual misconduct. The alleged fact that his purely personal acts may have occurred while he was mayor and that he used City property does not render the City responsible for such acts.

A managerial employee of a town was not acting within the "scope of employment" when he allegedly committed tortuous acts of having a woman he was dating purchase an antique car for him, retain possession of a car even though she provided money to buy it, and file a stolen car report with

16

town police when she obtained possession of car, and thus town was not liable for indemnification, though the town provided a laptop computer and cellular phone that allowed him to contact the woman during working time, as the employee's responsibilities did not include any of the activities related to his relationship with woman. *Skrobacz v. Sweeney, et al.*, 40 Conn. Supp. 15, 858 A.2d 899 (2003).

## IV.    COLLATERAL ESTOPPEL DOES NOT APPLY IN THIS CASE

The doctrine of collateral estoppel is wholly inapplicable to this case because Giordano and the City of Waterbury were not in privity and because the legal issues in the two proceedings were not identical.  Under the doctrine of collateral estoppel, a plaintiff may bar a defendant from relitigating an issue that was decided in a prior case against the defendant in a previous case.[5]  "Under general principles of collateral estoppel or issue preclusion, a judgment in a prior proceeding bars a party and its privies 'if, but only if ' (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity for litigation in a prior proceeding, and (4) the issue previously litigated was necessary to support a valid final judgment on the merits."  *NLRB v. Thalbo Corp,* 171 F.3d 102, 109 (2d. Cir. 1999); *Faulkner v. Nat'l Geographic Enterprises, Inc.,* 409 F.3d 26, 37 (2d. Cir. 2005); *Uzdavines v. Weeks Marine Inc.,* 418 F.3d 138,146(2d. Cir. 2005).

Under the doctrine of "offensive collateral estoppel," a party may preclude a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff.  *See Parklane*

---

[5] Collateral estoppel is also referred to as "issue preclusion."

17

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C.** • ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985

*Hosiery Co. v. Shore,* 439 U.S. 322 (1979). A criminal conviction constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in a criminal case. *United States v. Podell*, 572 F.2d 31, 35 (2d. Cir. 1978). Because mutuality of estoppel is no longer an absolute requirement under federal law, a party other than the Government may assert collateral estoppel based on a criminal conviction against the defendant from the original criminal case. *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38 43 (2d. Cir. 1986) (internal citations omitted).

When a plaintiff attempts to use the doctrine of "offensive collateral estoppel" against a party that was not the actual defendant in the prior proceeding on the basis of alleged privity, fundamental issues of due process are raised. *Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173,184 (2d. Cir. 2003) (hereinafter "*Stichting*"). Because it is fundamentally unfair that a person who had no opportunity to be heard at a prior judicial proceeding be bound by that proceeding, the Second Circuit carefully limits the use of the doctrine to "privity" cases where (1) the nonparty to the prior proceeding was represented by a party to the prior proceeding, or (2) the nonparty exercised actual control over the presentation of the party's case during the prior proceeding. *Id.*

The Second Circuit recognizes privity based on representation in a prior proceeding only if the interests of the person alleged to be in privity were represented in the prior proceeding by another vested with authority of representation. *Id.* at 185. This means that privity is found where a party to the previous suit was, at the time of litigation, acting as the fiduciary or organizational agent of the person or

18

entity against whom preclusion is asserted. *Id.* The Second Circuit has only applied the doctrine of privity to a person or entity who was not represented by a fiduciary or agent in previous litigation only when that third person or entity exercised some degree of actual control over the presentation of the party's case at the previous proceeding. *Id.*(*citing Cent. Hudson Gas & Elec. Corp. v. Empresa Baviera Santa S.A, 56 F.3d 359, 368-369(2d. Cir. 1995)*). "Preclusion is thus found to apply against a person who, although not a party to the previous litigation, served in a representative capacity to direct that litigation or who 'with the guidance of his law firm, formulated an overarching strategy for the two actions." *Stichting* 327 F.3d at 185(internal punctuation and citations omitted).[6]

   Whether parties are in privity is "a factual determination of substance, not mere form." Id. (*internal citations omitted*). As such, "preclusion principals should not be applied mechanically." Instead, whether collateral estoppel applies to a given relationship can only be determined after an inquiry into the facts of the relationship.

   Collateral estoppel is, as plaintiff attempt here, sometimes wrongly conflated with respondeat superior. The Second Circuit has warned, "that we must be careful not to conflate the doctrines of collateral estoppel and respondeat superior. They are similar in the sense that both require a factual inquiry into the closeness of the relationship between principal and agent. The distinct natures of the doctrines, however, require inquiries into the closeness of the relationship at different points. Because the doctrine of respondeat superior asks whether an agent's action, and his or her state of mind when he

---

[6] In fact, for liability based on actual control over the prior litigation, there is liability only if the party against whom preclusion is actually controlled or substantially participated in the presentation on behalf of the party in the prior proceeding. Minor participation or exercising only some control is not enough for liability. *Stichting* 327 F.3d at 186 n.14.

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C.** • ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985

or she undertook the action, are imputable to the principal, a relevant inquiry is the closeness of the relationship at the time of the act in question. In contrast, because the doctrine of collateral estoppel asks whether a party is bound by the result of a prior judicial proceeding, and thus implicates the due process rights to notice and an opportunity to be heard, the relevant inquiry is the closeness of the relationship at the time of the prior proceeding." *Stichting* 327 F.3d at 186.

      1.      **The City of Waterbury Was Not in Privity With Giordano At the Time of the Prior Proceeding, Nor Did it Control Giordano's Representation at the Prior Criminal Proceeding**

Giordano was not a fiduciary or agent of the City of Waterbury at the time of the prior proceeding, his criminal trial. Giordano's criminal trial started on March 12, 2003. His term as Mayor of Waterbury would have ended on December 31, 2001, but on August 28, 2001,Giordano tendered a "Release and Agreement," i.e. a resignation letter, at the request of the City aldermen because of his indictment and arrest. *Exhibit C.* This was in lieu of formal termination. As such, he was not a fiduciary or agent of the City of Waterbury at the time of his trial because his resignation effectively revoked Giordano's power to represent the City. As a matter of law, there was no privity between the two. *See Stichting* 327 F.3d at 186-187 (CEO who was fired prior to his criminal trial for violating federal criminal law, was neither a fiduciary or agent of his employer for purposes of collateral estoppel by privity).

The City of Waterbury did not exercise any degree of actual control of the conduct of Giordano's defense at the prior criminal proceeding. In fact, the City of Waterbury expressly refused to indemnify

20

Giordano under Conn. Gen. Stat. §7-465, and sent him a letter advising him to retain private counsel at his own expense and that it (the City) would not be entering an appearance on Giordano's behalf. *Exhibit D - Letters from the City of Waterbury Corporation Counsel advising Giordano and his counsel, Andrew Bowman, that the City would not be responsible for his defense in the civil cases.* It is undisputed that the City did not employ Giordano at the time of his trial, did not pay his legal fees, or otherwise assist him in any way. Therefore, as matter of law, the doctrine of collateral estoppel cannot be applied against the City of Waterbury because it did not control Giordano's representation at the prior proceeding.

Because Giordano was not in privity with the City of Waterbury, collateral estoppel cannot be lawfully applied against this defendant.[7]

> **2.    The Issue Decided in Giordano's Criminal Trial, i.e. "Whether He was "Acting Under Color of Law?" is Not Identical to The Issue in The Civil Case, i.e. "Whether Giordano's Actions Fairly Represent Official Policy for the City of Waterbury?"**

The legal and factual issues decided in the criminal trial of Philip Giordano are not identical to those at issue in this proceeding and are not a suitable basis to support application of the doctrine of collateral estoppel. The Second Circuit has held that use of collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Faulkner*, 418 F.3d at 37 (*internal citations omitted).*

---

[7] Even the plaintiff tacitly acknowledges that privity should not be found between Giordano and the City. Pl. Mem. of Law in Support of Mot. Summ. J. p. 22 n.6

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C.** • ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985

In Giordano's criminal trial, the Government needed to prove that (1) Giordano "willfully" and (2) under color of law (3) deprived a person of rights protected by the Constitution or laws of the United States.[8] *See United States v. Lanier*, 520 U.S. 259, 264(1997).  "Under color of law" is a legal term of art, and although acting in pursuit of personal matters is not conduct under color of law, an official's actions need not remain within the precise bounds of his legal authority in order to constitute action under color of law.  *United States v. Giordano*, 260 F.Supp. 2d. 477, 484 (D.Conn 2002).  An individual acts under color of law when or he or she engages in "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed in the authority of the law." *United States v. Classic*, 313 U.S. 299, 326 (1941).   A person can also be acting under color of law when they act under the "pretense" of law.  *Screws v. United States*, 325 U.S. 91, 111 (1945).

In comparison, a municipality can only be held liable for the civil rights violations of its employees when (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).  Even assuming Giordano was acting "under color of law," a necessary condition precedent to even bringing an action

---

[8]  18 U.S.C §242 reads: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death." (1996).

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C.** • ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985

against the City of Waterbury, it is wholly irrelevant to the dispositive legal issue in this case, specifically whether his actions were the result of an official policy of the City of Waterbury.  It is quite possible for a court to find a government official to have been acting "under color of law" for purposes of individual criminal or civil liability and still find that the municipal employer has no liability for that employee's constitutional violations because the wrongs inflicted on the plaintiff are not the result of official policy or custom. *City of Opa-Locka,* 261 F.3d 1295 **YEAR.**

Because the fundamental legal question in the first proceeding, i.e. "Was Giordano acting under color of law?," is not identical or even similar to the legal issue in this proceeding, i.e. "Did Giordano's actions result from an official policy or custom of the City of Waterbury?,"  a required element of the doctrine of collateral estoppel is not met in that the issues in both proceedings are not identical.  *See Thalbo*, 171 F.3d 109, *supra*.  Therefore, collateral estoppel should not be applied against the City.

**3**.     **The City of Waterbury Was Not A Party to the Criminal Trial Between the United States and Philip Giordano.  Nor Could the City Become a Party to The Trial.  As Such, The City Did Not Have A Full and Fair Opportunity to Litigate Any Relevant Legal Issues.**

The trial between the United States and Philip Giordano was a criminal proceeding focused solely on the guilt or innocence of Philip Giordano.   It did not involve the City of Waterbury as a defendant.   Neither the Federal Rules of Criminal Procedure nor their Local counterparts make any provision for a third-party non-defendant to join a federal criminal prosecution.  As such, it was impossible for the City of Waterbury to have a full and fair opportunity to litigate any issues relevant to

23

its defense in this civil case in the prior proceeding.  Since, for reasons discussed above, the City is not in privity with Giordano, applying the doctrine of collateral estoppel to preclude the City from litigating relevant issues would be fundamentally unfair and offends due process.

   4.   **The Cases Applying Collateral Estoppel Based On a Prior Criminal Proceeding, Cited By The Plaintiff Are Factually Dissimilar To this Case And Do Not Support Application of The Doctrine of Collateral Estoppel Against The City of Waterbury**

   In *Gelb*, the defendant, who was convicted of mail fraud for mailing false fire damage claims to his insurance company, was collaterally estopped from denying he submitted false loss claims to his insurance company in a subsequent civil suit where he challenged the company's refusal to pay his losses on the basis of fraud.  798 F.2d 38 (1986).  Similarly, in *Podell*, a congressman's guilty plea for violating the federal conflict of interest statute, estopped him from denying that he breached his fiduciary duties to the United States in a subsequent civil suit to impose a constructive trust on his illegal gains. 572 F.2d 31 (1978).  In *Julius Nasso*, the defendant was a shell corporation for a mobster who was convicted of RICO violations for rigging construction bids in New York City, and was collaterally estopped from denying its involvement in the bid rigging conspiracy in a subsequent civil suit by New York to recover economic losses.  202 F.3d 82 (2000).[9]  The plaintiff also wrongly

---

[9] Julius Nasso is not controlling on this proceeding for two reasons.  First, collateral estoppel in Julius Nasso was on the basis of respondeat superior based on a joint venture between convicted mobster (Auletta) and Julius Nasso Concrete Corp.  202 F.3d 86-87.  Respondeat superior cannot be used as a basis for municipal liability under §1983. See Monell v. Dept. of Soc. Servs., 436 U.S. 658,663 n.7, 691 (1978).  Second, in Stichting, the Second Circuit has suggested Julius Nasso is of little or no precedential value in cases where collateral estoppel is asserted against a corporation on the basis of conviction of an individual associated with the corporation because in Julius Nasso, there was no dispute over the existence of privity between the parties and because the corporation in Julius Nasso was a *shell corporation/alter ego* of the convicted defendant.  327 F.3d 187 n.16.  Here, the City of Waterbury disputes privity between the criminal defendant Giordano and itself, and the City is clearly not a shell corporation for Giordano.

24

cites *NLRB v. Thalbo*, 171 F.3d 102, as a criminal case, as the case is actually a labor relations case, and does not support the proposition for which the plaintiff asserts.

In the cases cited by the plaintiff, the use of the doctrine of collateral estoppel was against the same defendant in a subsequent civil trial that was directly related to that defendant's criminal conduct. That is clearly not the case here, where the doctrine of collateral estoppel is being used against a third party municipality in an attempt to make it civilly liable under §1983 for the criminal civil rights violations of one of its former employees. The plaintiff is attempting to misuse the doctrine of collateral estoppel to circumvent the holding in *Monell* forbidding respondeat superior liability under §1983 for municipalities. The court should not allow this, and should find the doctrine of collateral estoppel inapplicable to the defendant in this proceeding in accordance with *Stichting*.

## CONCLUSION:

For the foregoing reasons, the defendant respectfully requests that the Court deny the motions for summary judgment filed by plaintiffs Susan Roe Jr., et al. and plaintiffs, Jane Doe, Jr., et al., on all counts, and instead enter an order in favor of the Defendant, City of Waterbury, as to Susan Roe Jr., et al. and Jane Doe, Jr., et al., for entry of summary judgment on all counts.

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C.** • ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985

DEFENDANT: City of Waterbury


BY: _____

 Elliot B. Spector
 Federal Bar #ct05278
 Noble, Spector, Young & O'Connor
 One Congress Street
 Hartford, CT  06114
 Phone: 860-525-9975
 Fax: 860-525-9985
 spector@nsyolaw.com

26

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, to the following counsel of record this 1st day of December, 2005:

Erskine D. McIntosh, Esquire
Law Offices of Erskine D. McIntosh
P.O. Box 185789
Hamden, CT  06518

Michael Stanton Hillis, Esquire
Dombroski, Knapsack & Hillis
129 Whitney Avenue
New Haven, CT  06510

Andrew B. Bowman, Esquire
Law Offices of Andrew Bowman
1804 Post Road East
Westport, CT  06880

Michael W. Mackniak, Esquire
87 Meadow Street
Naugatuck, CT  06770

Gerald Lewis Harmon, Esquire
290 Pratt Street
Meriden, CT  06450

Allison Louise Jacobs, Esquire
84 Sherman Avenue
Hamden, CT  06518

Lynn Jenkins, Esquire
129 York Street, Apt. 8-L
New Haven, CT 06511

_____
Elliot B. Spector

**NOBLE, SPECTOR, YOUNG & O'CONNOR, P.C.** • ATTORNEYS AT LAW
ONE CONGRESS STREET • HARTFORD CT 06114-1067 • JURIS NO. 409138 • TEL: (860) 525-9975 • FAX: (860) 525-9985