UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JANE DOE, JR., ppa** | : | |
| **ATTORNEY ALLISON JACOBS** | : | Case No.:  3:01cv2298 (SRU) |
| | : | |
| v. | : | |
| | : | DECEMBER 23, 2005 |
| **CITY OF WATERBURY, et al.** | : | |

### MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT, CITY OF WATERBURY'S MOTION FOR SUMMARY JUDGMENT

**PRELIMINARY STATEMENT**

On October 31, 2005, plaintiff, Jane Doe, Jr., moved for summary judgment against the City of Waterbury and Philip Giordano as to liability only under 42 U.S.C. § 1983 for violation of plaintiff's Fourteenth Amendment rights.  Plaintiff also moved for summary judgment as to Mayor Giordano's liability under counts four through ten and the City of Waterbury's liability under counts four and nine through eleven.  On December 1, 2005, the defendant, City of Waterbury, opposed plaintiff's motion and moved for summary judgment with respect to § 1983 only.

Defendant's motion should be denied and plaintiff's motion granted as there is no genuine issue of material fact as to whether Mayor Giordano, as the City's authorized final policymaker, violated Jane Doe, Jr.'s Fourteenth Amendment rights.  The uncontested facts set forth in the plaintiff's Local Rule 56(a)1 Statement establish that Mayor Giordano was the City's final policymaker with authority to make policy with respect to his City cellular telephones, City unmarked police cruiser, City Mayor's Office, City police, and City finances.  Moreover, the victims knew that their abuser was the Mayor and were coerced, in part, by his threats to put

family members in jail.  Mayor Giordano was the apex of power in the City, as its Chief Executive Officer.  From November 2000 through July 2001, Mayor Giordano engaged in the sexual abuse of Jane Doe, Jr.  Defendant contends that plaintiff's only basis for holding the City liable is that a "small portion" of the abuse involved City property.  In reality, Mayor Giordano was able to accomplish a pattern of abuse over the course of nine months solely because of the powers and trappings of authority he possessed under the City Charter as the Mayor of Waterbury.

This memorandum is submitted in further support of the Plaintiff's Motion for Summary Judgment.

**LAW AND ARGUMENT**

    **I.    SUMMARY JUDGMENT STANDARD**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Id.

In applying this standard, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).  Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 586 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). The nonmoving party "must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." Brown, 257 F.3d at 251 (citation omitted).

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED AND/OR PLAINTIFF'S STATEMENT OF MATERIAL SHOULD BE DEEMED ADMITTED BASED ON THE DEFENDANT'S FAILURE TO COMPLY WITH FEDERAL AND LOCAL RULES OF CIVIL PROCEDURE

In support of her Motion for Summary Judgment, the plaintiff provided a Local Rule 56(a)1 Statement with ninety-three paragraphs of material facts and citations to evidence on the record. Purportedly in response, or in support of its own motion, the defendant filed a document entitled "Local Rule 56(a) Statement." The defendant's statement provides eleven paragraphs that fail to cite to any evidence or affidavit, or respond to plaintiff's ninety-three paragraphs. Defendant's failure to comply with the Local Rules supports this Court granting plaintiff's motion and/or finding that plaintiff's statement of facts have been admitted by the defendant.

Local Rules of Civil Procedure for the United States District Court for the District of Connecticut, Rule 56(a)1 provides: "All material facts set forth in [56(a)1 Statement] will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2." Local Rules of Civil Procedure, Rule 56(a)2 then provides:

> The papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)2 Statement," which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local

> Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied.  The Local Rule 56(a)2 Statement must also include in a separate section entitled "Disputed Issues of Material Fact" a list of each issue of material fact as to which it is contended there is no genuine issue to be tried.

The defendant has failed to controvert plaintiff's Local Rule 56(a)1 Statement.  As such, plaintiff's ability to respond to defendant's motion and/or opposition is severely limited.  In accordance with local rule, the facts set forth in plaintiff's statement should be deemed admitted.  See also, Sanchez et al.  v. The University of Connecticut Health Care, et al., 292 F.Supp.2d 385, 390 (D.Conn. 2003).

Defendant has also failed to provide citations to any affidavit or evidence in its Statement of Facts.  "[B]ecause nothing in the federal rules mandates that district courts conduct an exhaustive search of the entire record before ruling on a motion for summary judgment, district courts are entitled to order litigants to provide specific record citations." Ungerleider v. Fleet Mortgage Group of Fleet Bank, 329 F.Supp.2d 343, 363 (D.Conn. 2004), quoting Amnesty America v. Town of West Hartford, 288 F.3d 467, 470-71 (2d Cir. 2002).  The Connecticut District Court has so ordered litigants:

> Each statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. . . Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and, when the opponent fails to comply, an order granting the motion.

Local Rules of Civil Procedure, Rule 56(a)3.  In accordance with Local Rule 56(a)3, defendant's motion should be denied and plaintiff's motion granted.  See also, Holtz v. Rockefeller & Co.,

4

Inc., 258 F.3d 62, 73 (2d Cir. 2001) (affirming grant of summary judgment on basis of uncontested assertions in the moving party's Local Rule statement as required under Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York); Ungerleider, 329 F.Supp.2d at 364.

### III. THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE CITY OF WATERBURY IS LIABLE FOR THE ACTS OF MAYOR GIORDANO, ITS AUTHORIZED FINAL POLICYMAKER.

**A.    Plaintiff has established that the City of Waterbury was the "moving force" behind the violations of her federal rights.**

In its memorandum, the defendant argues, "the issue of the City of Waterbury's liability [ ] hinges on whether a policy of the City was the moving force behind the alleged constitutional violation." Defendant's Memorandum in Opposition to Plaintiffs' Motions for Summary Judgment and in Support of Defendant, City of Waterbury's Motion for Summary Judgment as to Plaintiffs Roe, et al. and Doe, et al. (Hereinafter "Defendant's Memorandum") at 5. For the next several pages in its memorandum, defendant attempts to distort the plaintiff's argument and complicate the plaintiff's burden with respect to causation.

Plaintiff agrees that she must establish that the City of Waterbury was the "moving force" behind the deprivation of her constitutional rights. However, plaintiff's argument is that the City of Waterbury is liable under § 1983 because Mayor Giordano violated her Constitutional rights directly through his actions as the City's authorized final policymaker. The Supreme Court has clearly stated, "proof that a municipality's . . .authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." Board of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397,

5

405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).  Defendant fails to accurately describe the burden imposed on a plaintiff claiming municipal liability for the unconstitutional acts of an authorized policymaker.

Defendant's Memorandum cites Bryan County, 520 U.S. at 405-407, for the proposition that, "[t]he Supreme Court has cautioned that the mere fact a municipal employee with 'final' policymaking authority has violated a person's federal rights, does not *per se* mean the employee's action constituted municipal policy."  Defendant's Memorandum at 7.  This representation is incomplete, however.  In Bryan County, the Supreme Court made a distinction between "§ 1983 cases that present no difficult questions of fault and causation and those that do."  520 U.S. at 405.  Where the actions taken by a municipal policymaker are *lawful*, there is a question of causation.  Where the actions of a municipal policymaker are *unlawful*, however, causation is obvious.  Id. at 406-7.  See also, Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000) ( "A plaintiff may prove the causation element by showing . . . that the official who is a final policymaker in the area directly committed or commanded the violation of the plaintiff's federal rights[.]" (citations omitted)).  Plaintiff's argument is that Mayor Giordano's actions as the City's authorized final policymaker directly caused a violation of her federal rights.  Thus, if plaintiff has established Mayor Giordano was the City's authorized final policymaker, she has met her burden of establishing causation.

> **B.      Plaintiff has established that Mayor Giordano was the City of Waterbury's authorized final policymaker.**

Plaintiff has also met her burden of proving that Mayor Giordano was a municipal policymaker who had authority over the area in question.  See Jeffes, 208 F.3d at 57.  The

defendant has admitted that Mayor Giordano was a final policymaker for the City of Waterbury, although it failed to so provide in its "Local Rule 56(a) Statement." See Defendant's Memorandum at 6 ( "it is admitted that the mayor was the official policymaker in many respects when conducting city business...[.]").

In addition to establishing that Mayor Giordano was the City's policymaker, the plaintiff has also shown that Mayor Giordano had authority over the areas in question. The Supreme Court has stated, "Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." McMillan v. Monroe County, Alabama, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). Again, the Second Circuit has elaborated, "An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (quoting Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983)). Here, the plaintiff introduced sufficient evidence regarding the City Charter and the daily operations of the City of Waterbury to establish that Mayor Giordano had final authority regarding his City cellular telephone, unmarked police cruiser, the City Mayor's office, and control over the City's police and finances. By virtue of his position and the authority entrusted to him by the City, Mayor Giordano was able to accomplish the sexual abuse of the plaintiff from November 2000 through July 2001.

The cases cited by the City of Waterbury do not diminish the argument presented in plaintiff's Memorandum of Law in Support of Motion for Summary Judgment. In Kohler v. City of Wapakoneta, 381 F.Supp.2d 692 (N.D. Ohio 2005), the Ohio district court did not find the

City liable for a police chief's tape recording in the women's bathroom. There, the court noted that the police chief's "action was not taken in the course of any official function." Id. at 712. Here, however, plaintiff has introduced evidence that Mayor Giordano acted as Mayor when he used his City cellular phone, City unmarked police cruiser and the City Mayor's Office. Moreover, Mayor Giordano used his final authority over the police to afford him an excuse to leave home, to instill fear in his victims, and to avoid detection for his activities. The City, by its Charter and failure to control its "Strong Mayor", served up a local prostitute, her daughter and niece to Giordano on a silver platter. Now the City assumes the posture of three famous monkeys: one covering its eyes, one its ears and the last its mouth.

It should be noted that defendant has misinformed this Court regarding the 11th Circuit's holding in Griffin v. City of Opa-Locka, 261 F.3d 1295 (11th Cir. 2001). See Defendant's Memorandum at 9. The 11th Circuit did not decide whether a City could be liable for rape and specifically stated that under the facts of the case, the Court was not required to answer that question. As the jury had failed to make any express finding regarding the existence of a City policy, the verdict could not stand. Griffin, 261 F.3d at 1312. Moreover, the Court made the following clear in a footnote: "By our decision today, we do not preclude the possibility that under some facts, a rape or sexual assault could be part of a pattern or custom of sexual harassment." Id., n.21.

In Wooten v. Logan, the plaintiff failed to show that the Sheriff was acting in a policymaking capacity when he detained and assaulted her. 92 Fed. Appx. 143, 146-47 (2004). Notably, the court found that the Sheriff had "acted in the guise of a patrol officer making a traffic stop--not as chief law enforcement officer." Id. Thus, he "abused his power in a way that any

8

lower level law enforcement officer could abuse his power." Id., n.3. Here, Mayor Giordano had unfettered use of his City cellular telephones, his Mayor's office during off-hours, and his City police cruiser solely because he was the Chief Executive Officer of Waterbury. Moreover, Mayor Giordano threatened, coerced and intimidated his victims using his authority over the City and the police. He abused his authority in the way that only the Chief Executive Officer of the City of Waterbury could.

Doe v. Patton, 377 F.Supp.2d 615 (E.D. Ky. 2005) does not provide relevant analysis as it did not involve the acts of a final policymaker. Rather, plaintiff attempted to hold the City liable for sexual assault by a janitor when there was no involvement by an official policymaker. Rose v. Zillioux, 84 Fed.Appx. 107 (2003), is similarly uninstructive as it also involved sexual assault by a low-level employee.

The City also argues that it cannot be responsible for Mayor Giordano's acts as its official policymaker because of the illegality of his actions. The plaintiff does not dispute that Mayor Giordano's sexual abuse was illegal under Connecticut and federal law, contrary to the Mayor's duties under the City Charter, and morally reprehensible. However, the City's written policies cannot insulate it from liability for the acts taken by a policymaker and accomplished through his official authority. In City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), plaintiff alleged that the City's policies resulted in a series of unconstitutional employment actions against him. Although the Supreme Court did not find an unconstitutional municipal policy, it noted, "We nowhere say or imply. . .that a municipal charter's precatory admonition against discrimination. . .effectively insulates the municipality from any liability based on acts inconsistent with that policy." (Internal quotation marks omitted; citations omitted.) Id.

485 U.S. 112, 131.

Finally, the City cites Skrobacz v. Sweeney, et al., 40 Conn.Supp. 15, 858 A.2d 899 (2003) for the proposition that the City cannot be held liable for Mayor Giordano's actions because he was not acting within the scope of his employment. Skrobacz is a Connecticut Superior Court case addressing a municipality's liability under Connecticut General Statutes § 7-465. To the extent the City of Waterbury is making an argument under 42 U.S.C. § 1983, Skrobacz is irrelevant. To the extent defendant attempts to refute any of the state law claims made in plaintiff's motion for summary judgment, any rebuttal by the defendant has been inadequately briefed.

## IV. COLLATERAL ESTOPPEL DOES APPLY IN THIS CASE

### A. Mayor Giordano and the City of Waterbury Are in Privity for Collateral Estoppel Purposes

Defendant argues that the City of Waterbury is not bound by the issues previously decided in the criminal action because Giordano was not a fiduciary at the time of the criminal trial and because the City did not exercise any degree of actual control over Giordano's defense in that action. "Literal privity" does not need to exist, however, for parties to be termed identical in the collateral estoppel context. Alpert's Newspaper Delivery Inc. v. The N.Y. Times Co., 876 F.2d 266, 270 (2d Cir. 1989). "The issue is one of substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis." Id.

Again, due process concerns are satisfied if the City of Waterbury is bound by the issues decided in the prior proceeding. The City had notice and an opportunity to be heard as many of its agents and/or employees were key witnesses and extensive evidence introduced regarding the

City Charter, City policies, and City operations. The City's motive is the same in the present suit as Giordano's in the criminal suit. Moreover, Giordano was prosecuted for crimes committed in his official capacity, as Mayor or Chief Executive Officer for the City of Waterbury, and acted as the alter ego of the City of Waterbury.

> **B.    The issues that Plaintiff argues should have preclusive effect are identical in the criminal proceeding and in the present action.**

Defendant argues that the issue of whether Mayor Giordano acted under color of law and the issue of whether Mayor Giordano was the City's authorized policymaker are not identical issues. This argument is futile, however, as plaintiff has not made such an argument. Rather, plaintiff argues that both the City of Waterbury and Mayor Giordano are collaterally estopped from denying that Mayor Giordano acted under color of law to cause a deprivation of the plaintiff's Fourteenth Amendment right to bodily integrity and right to be free from sexual abuse. Clearly, this was actually litigated and decided in the Giordano criminal trial. This issue remains relevant in the present action against Mayor Giordano as it establishes all necessary elements for liability. This issue is also relevant against the City of Waterbury, although the policymaker claim requires plaintiff to prove additional elements. See, e.g., New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) ("Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, *whether or not the issue arises on the same or a different claim*." (Emphasis added)).

**CONCLUSION**

Interestingly, the City of Waterbury hides behind the Nuremberg argument. The City claims that it was unaware of the Mayor's actions. Thus, its lack of condonation allows it to escape the Charter it operated under, the power it gave to Giordano and the power Giordano took without permission. Giordano should not have been given unfettered power by Charter or otherwise. Giordano has failed to take responsibility and the City, like its ex-mayor, is guilty of the same cowardice. For all the foregoing reasons, the Court should deny defendant's cross motion for summary judgment and grant the plaintiff, Jane Doe, Jr.'s motion for summary judgment.

Respectfully submitted,

THE PLAINTIFF
**JANE DOE, JR., ppa  ATTORNEY ALLISON JACOBS GUARDIAN AD LITEM**

By: _____

**MICHAEL S. HILLIS**
DOMBROSKI, KNAPSACK & HILLIS LLC
129 Whitney Avenue
New Haven, Connecticut 06510
(203) 624-9096
(203) 624-1308 (Fax)
Federal Bar No.:  ct11867

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was mailed, postage prepaid, this **23rd** day of **DECEMBER, 2005**, to all counsel of record as follows:

**MICHAEL W. MACKNIAK, ESQ.**
87 Meadow Street
Naugatuck, Connecticut 06770

**ERSKINE D. MCINTOSH, ESQ.**
The Law Offices of Erskine D. McIntosh, P.C.
P.O. Box 185789
Hamden, Connecticut 06518-0789

**GERALD L. HARMON, ESQ.**
The Law Offices of Gerald L. Harmon
290 Pratt Street
Meriden, Connecticut 06450

**ELLIOT B. SPECTOR, ESQ.**
**NOBLE, SPECTOR, YOUNG & O'CONNOR**
One Congress Street, Fourth Floor
Hartford, Connecticut 06114

**ANDREW B. BOWMAN, ESQ.**
1804 Post Road East
Westport, Connecticut 06880

**ALLISON LOUISE JACOBS, ESQ.**
84 Sherman Avenue
Hamden, Connecticut 06518

**LYNN JENKINS, ESQ.**
129 York Street, Apt. 8-L
New Haven, Connecticut 06511

**MICHAEL S. HILLIS**