# 03-1394

*To be Argued by*:
**ANDREW B. BOWMAN**

_____

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
DOCKET NO: 03-1394**

_____

**THE UNITED STATES OF AMERICA,**

Appellee,

-against-

**PHILIP A. GIORDANO,**

Defendant-Appellant.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

_____

**PETITION FOR REHEARING
AND FOR REHEARING EN BANC
OF THE DEFENDANT-APPELLANT PHILIP A. GIORDANO**

_____

**ANDREW B. BOWMAN
1804 Post Road East
Westport, CT 06880
(203) 259-0599
(203) 255-2570 (Fax)**

**TABLE OF CONTENTS**

**Pages:**

TABLE OF AUTHORITIES..............................................................i

PRELIMINARY STATEMENT……………………………………………….1

THE PRESIDING QUESTION OF EXCEPTIONAL
IMPORTANCE …………………………………………………………..ii, 2

STATEMENT OF FACTS…………………………………………………….4

REASONS FOR REHEARING AND REHEARING
EN BANC………………………………………………………………….7

POINT ONE:

    The Evidence that the Sexual Abuse of these
    Children Was Committed Under Color of Law
    Was Insufficient and the Majority's Holding to
    The Contrary is in Direct Conflict with <u>Classic</u>,
    <u>Screws</u> and <u>Walsh</u>……………………………………………………8

POINT TWO:

    The Majority Misconstrues the Second Circuit's
    Holding in Pitchell vs. Callan……………………………………..10

POINT THREE:

    The Proceeding Involves an Issue on which the Majority
    Opinion Misapprehends and Conflicts with the Authoritative
    Decisions not only of the Supreme Court and the Second
    Circuit but also with the Authoritative Decisions of Other
    United States Courts of Appeals that have Addressed the
    Issue…………………………………………………………………..12

CONCLUSION………………………………………………………………15

STATEMENT OF COMPLIANCE

CERTIFICATE OF SERVICE

ATTACHED PANEL OPINION

# TABLE OF AUTHORITIES

**Pages:**

***Almand vs. DeKalb County Georgia***,
   103 F.3rd 1510 (11th Cir). cert denied,
   522 U.S. 966, 118 S.Ct. 411, 139 L.Ed.2d 314 (1997)……………………..13

***Becerra vs. Asher***,
   105 F.3rd 1042 (5th Cir.) cert denied,
   52 U.S. 824, 118 S.Ct. 82, 139 L.Ed.2d 40 (1997)………………………14

***Dang Vang vs. Vang Xiong X. Toyed***,
   944 F.2d 476 (9th Cir. 1991)………………………………………………………12

***Doe vs. Taylor Independent School District***,
   15 F.3rd 443 (5th Cir.) cert denied, 513 U.S. 815,
   115 S.Ct. 70, 130 L.Ed.2d 25 (1994)…………………………………………..12,13

***Griffin vs. City of Opa-Locka***,
   261 F.3rd 1295 (11th Cir. 2001)……………………………………………………..2,3,12,13

***Pitchell vs. Callan***,
   13 F.3rd 545 (2nd Cir. 1994)………………………………………………………….2,7,10,11,14

***Rogers vs. City of Little Rock Arkansas***,
   152 F.3rd 790 (8th Cir. 1998)……………………………………………………..13,14

***United States vs. Classic***,
   313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed.2d 1368 (1941)……………………..2,7,8,9,10

***United States vs. Giordano***,
   Slip Op. 1-36 (March 3, 2006)………………………………………………………3,6,9,10,14

***United States vs. Price***,
   383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)……………………….3

***United States vs. Tarpley***,
   945 F.2d 806 (5th Cir. 1991)………………………………………………………2,3,6,7

***United States vs. Walsh***,
   194 F.3rd 37 (2nd Cir. 1999)……………………………………………………..2,7,8,9

***Screws vs. United States***,
   325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed.2d 1495 (1945)………………………2,7,8,9,14

## **THE PRESIDING QUESTION OF EXCEPTIONAL IMPORTANCE**

The presiding question of exceptional importance presented by this Petition is: whether the majority opinion represents an unfounded and unwarranted departure from 65 years of established Supreme Court precedent first enunciated in <u>United States vs. Classic</u>, 313 U.S. 299, 325-226 (1941) and <u>Screws vs. United States</u>, 325 U.S. 91, 109-110, 65 S.Ct. 1031, 1039, 89 L.Ed.2d 1495 (1945) and Second Circuit precedent in <u>United States vs. Walsh</u>, 194 F.3rd 37, 50-51 (2nd Cir. 1999) and <u>Pitchell vs. Callan</u>, 13 F.3rd 545, 548-549 (2nd Cir. 1994), all of which cases have uniformly held that in civil rights prosecutions under 18 U.S.C. §242 and civil actions under 42 U.S.C. §1983 the essential element "color of law" requires proof beyond a reasonable doubt that a constitutional deprivation is achieved by "[m]isuse of power, possessed by virtue of state law **and made possible only** because the wrongdoer is clothed with authority of state law" and that "but for the accused's position of municipal authority, the wrong that was done would not have been possible". <u>United States vs. Giordano</u>, slip op. pg. 30 (dissenting opinion).

*UNITED STATES COURT OF APPEALS*

**FOR THE SECOND CIRCUIT**
**Docket No. 03-1394-CR**

_____

UNITED STATES OF AMERICA,

                                               Appellee,

-vs-

PHILIP A. GIORDANO,

                                               Defendant-Appellant.

_____

On Appeal from the United States District Court
For the District of Connecticut

_____

**PETITION FOR REHEARING**
**AND FOR REHEARING EN BANC**
**OF THE DEFENDANT-APPELLANT PHILIP A. GIORDANO**

_____

**PRELIMINARY STATEMENT**

Pursuant to Rules 35 and 40 of the Federal Rules of Appellate Procedure, Defendant-Appellant Philip A. Giordano seeks a rehearing of the decision rendered on March 3, 2006 by a divided panel of this Court (Jacobs (dissenting), Sotomayor and Hall, Circuit Judges) affirming the judgment of conviction rendered in the United States District Court for the District of Connecticut, for civil rights violations under color of law under 18 U.S.C. §242, for the use of a telephone for unlawful sexual purposes specified in 18 U.S.C. §2425 and conspiracy to violate §2425 in violation of 18 U.S.C. §371.[1]

---

[1] A copy of the panel's majority and dissenting opinions is attached to this Petition.

Petitioner simultaneously requests that a rehearing *en banc* should be granted pursuant to FRAP Rule 35 because:

(1) This Petition involves questions of extraordinary importance, and *en banc* consideration is necessary to secure or maintain uniformity of the Court's decisions. The majority opinion conflicts with decisions of the United States Supreme Court; United States vs. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed.2d 1368 (1941); and Screws vs. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed.2d 1495 (1945) and decisions of the Second Circuit in United States vs. Walsh, 194 F.3rd 37 (2nd Cir. 1999) and Pitchell vs. Callan, 13 F.3rd 545 (2nd Cir. 1994).

(2) The proceeding involves a question of exceptional importance; since it involves an issue on which the majority opinion misconstrued, misapprehends and conflicts with the authoritative decisions not only of the Supreme Court and the Second Circuit but also conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue; specifically, the Fifth Circuit in United States vs. Tarpley, 945 F.2d 806 (5th Cir. 1991) and the Eleventh Circuit in Griffin vs. City of Opa-Locka, 261 F.3rd 1295 (11th Cir. 2001).

## **THE PRESIDING QUESTION OF EXCEPTIONAL IMPORTANCE**

The presiding question of exceptional importance presented by this Petition is: whether the majority opinion represents an unfounded and unwarranted departure from 65 years of established Supreme Court precedent first enunciated in United States vs. Classic, 313 U.S. 299, 325-226 (1941) and Screws vs. United States, 325 U.S. 91, 109-110, 65 S.Ct. 1031, 1039, 89 L.Ed.2d 1495 (1945) and Second Circuit precedent in United States vs. Walsh, 194 F.3rd 37, 50-51 (2nd Cir. 1999) and Pitchell vs. Callan, 13

F.3rd 545, 548-549 (2nd Cir. 1994), all of which cases have uniformly held that in civil rights prosecutions under 18 U.S.C. §242 and civil actions under 42 U.S.C. §1983 the essential element "color of law" requires proof beyond a reasonable doubt that a constitutional deprivation is achieved by "[m]isuse of power, possessed by virtue of state law **and made possible only** because the wrongdoer is clothed with authority of state law" and that "but for the accused's position of municipal authority, the wrong that was done would not have been possible". United States vs. Giordano, slip op. pg. 30 (dissenting opinion).

As the dissenting opinion so clearly and accurately states; "[i]t is not enough for the government to show that abuse of government power was a contributing cause or background influence in the deprivation of the victim's rights; it must be the but-for cause". Id., at 30.

The majority opinion misapplies authoritative decisions of the Fifth Circuit; United States vs. Tarpley, 945 F.2d 806 (5th Cir. 1991) and the Eleventh Circuit; Griffin vs. City of Opa-Locka, 261 F.3rd 1295 (11th Cir. 2001) which "persuasive[ly] impact … Giordano's case chiefly because the fact scenarios provoke so many distinctions." Giordano, slip op. pg. 34-35 (dissenting opinion).

In addition, this case presents an issue of exceptional importance, because it not only represents a clear and unfounded departure from established law dealing with criminal cases under 18 U.S.C. §242 but also with civil actions brought under 42 U.S.C. §1983; see United States vs. Price, 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966).

The Petition is well founded, presented in good faith and is not interposed for delay.

## STATEMENT OF FACTS

Philip Giordano was elected Mayor of the City of Waterbury in 1995. Whatever Giordano's actions with V1 and V2 consisted of, those actions were clearly a part of and derived from the personal relationship Giordano had with a prostitute, Guitana Jones, since 1991. Jones was the mother of V1 and the aunt of V2. If her testimony is believed, Jones brought V1 and V2 to Giordano for money. In effect, she prostituted her daughter and her niece. That was her motivation. Whatever actions were taken during the meetings between Giordano and V1 and V2 and Jones, they were a direct result of the relationship Giordano had with Jones which involved sex for money. There was no evidence that Giordano ever showed V1 or V2 a badge. He was not a police officer, and the sole reason that Jones brought V1 and V2 to see Giordano was so she could be paid as she had been paid for her own sexual acts.

Jones testified she first met Giordano while walking the streets of Waterbury to support her drug habit and engaged in sexual relations with him in 1991. She testified that she had sex with Giordano commencing in 1991 at various locations including his parents' house and continued to have sex with him for 10 years until her arrest on July 21, 2001 by the FBI in this case. She testified that she provided Giordano with oral sex sometimes 2-3 times a week, and she testified that the last time she had oral sex with Giordano was July 20, 2001 the day before she was arrested and received $100 from him.

In 1994 Giordano, a lawyer, represented her on prostitution and disorderly conduct charges and did not charge her a fee. After Giordano became mayor in 1995, four years after their relationship had commenced, Jones met with Giordano for sexual purposes at Giordano's private law office at 1169 West Main Street in Waterbury. She had met with him at that prior location prior to his becoming mayor. She was always paid for performing oral sex.

Jones continued to provide oral sex to Giordano 2-3 times a week at his law office. She was paid $40 or $50 each time. She testified she called Giordano on his cell phone to set up sexual arrangements with him and described the cell phone numbers as the same numbers alleged in the Indictment in this case.

Jones testified she first brought V1 and V2 to see Giordano for sexual purposes around November 2000. The cell phone calls were initiated as much by Jones as by Giordano when conversations relating to V1 and V2 were made.

As found by Judge Jacobs in his dissenting opinion "Giordano's conduct made no critical use of his office. Giordano paid an agreed price to abuse the children; he made no claim of power to do so based on official authority, apparent or actual. Giordano made no threat to use official power to harm Jones or the children; the warning about trouble and jail applied with infinitely greater force to himself (no one could assume he would precipitate a prosecution that chiefly would ensnare himself). Giordano acted alone, without enlisting any other person wielding power of law; so no one could think he was exercising a power backed by government force. Giordano employed no trappings of office to inflict the harm (such as the service pistol and the

squad car in Tarpley). And Giordano abused the children surreptitiously, without spinning an aura of official conduct" Giordano, slip op., pg. 34.

"[T]he government never asked the victims if they submitted because of Giordano's mayoral powers – a telling omission since the government was in a position to know the answer." Giordano, slip op., pg. 31. "Most of the abuse of the children" (by far) took place at Giordano's private law office, at Jones' home or Giordano's, or at an apartment belonging to a friend of Giordano. Abuse occurred at City Hall or in a government vehicle no more than a handful of times." Giordano, slip op. pg. 32.

The majority relies upon the perception of Jones and V1 and V2 rather than focusing on Giordano's intent. See, Giordano, slip op., pg 24-25, n.21-22. The majority found that Jones testified it was Giordano who first demanded that Jones bring children to perform oral sex at a time when he was already the mayor and "that she initially demurred, and that she 'did anything [Giordano] asked her to' because she 'figured [she'd] go to jail' if she refused", see Giordano, slip op., pg. 20. However, Judge Jacobs found in the dissenting opinion, "Giordano raised the danger of jail if the prostitution of the children were disclosed, but there was nothing in the record from which to infer that such a statement acted as a compulsion". "[T]he threat of prison was no less than factual. A drug addicted procurer of children of course belongs in jail. She acknowledged as much at trial." Giordano, slip op., pg. 35.

## REASONS FOR REHEARING AND
## <u>REHEARING EN BANC</u>

The reasons why rehearing and/or a rehearing en banc should be granted are compelling. They include:

(1) The majority opinion constitutes an unwarranted and clear departure from established Supreme Court and Second Circuit precedent under 18 U.S.C. §242 requiring that the misuse of power, possessed by virtue of state law ***was made possible only*** because the wrongdoer is clothed with the authority of state law;

(2) The majority opinion cannot be reconciled with the Supreme Court's decisions in <u>Classic</u> and <u>Screws</u> and the Second Circuit's decision in <u>Walsh</u> requiring that but for the official position of the defendant, the wrong that was done would not have been possible; nor is the majority opinion reconcilable with <u>Pitchell vs. Callan's</u> requirement that the focus of inquiry be on the acts of the defendant rather than the subjective reaction of the victim ; and

(3) The majority opinion misconstrued the Fifth Circuit's opinion in <u>Tarpley</u> and the Eleventh Circuit's opinion in <u>Griffin</u> in holding that Giordano acted under color of law when he committed sexual abuse.

(4) The majority opinion is the only opinion in any Circuit which has departed from the but-for requirement of <u>Classic</u>, <u>Screws</u> and <u>Walsh.</u>

### **POINT ONE**

**The Evidence that the Sexual Abuse of these Children was Committed Under Color of Law was Insufficient and the Majority's Holding to the Contrary is in Direct Conflict with <u>Classic, Screws and Walsh</u>.**

Sixty five years ago in <u>United States vs. Classic</u>, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) the Supreme Court held that "[m]isuse of power, possessed by virtue of state law **<u>and made possible only</u>** because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law". <u>Id</u>, 313 U.S. at 326, 61 S.Ct. at 1043. That standard was reiterated in <u>Screws vs. United States</u>, 325 U.S. 91, 109, 65 S.Ct. 1031, 1039 (1945) (plurality opinion). As <u>Screws</u> made clear, the term "under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." <u>Screws</u>, 325 U.S. at 111, 65 S.Ct. at 1040.

In <u>United States vs. Walsh</u>, 194 F.3rd 37 (2nd Cir. 1999), this Circuit unequivocally and clearly adopted the Supreme Court's language in <u>Classic</u> and <u>Screws</u> wherein it stated the legal issue as follows:

> The relevant question, however, is not whether the actual abuse was part of the defendant's official duties, but rather, whether the abuse was made possible <u>only because</u> the wrongdoer is clothed with the authority of state law. <u>Id</u> at 51. (emphasis supplied).

As Judge Jacobs, in his dissenting opinion, rightly found, "[i]t is not enough for the government to show that abuse of government power was a contributing cause or background influence in the deprivation of the victim's rights; it must be the <u>but-for</u>

cause. So it was the government's burden to prove beyond reasonable doubt that, but for the accused's position of municipal authority, the wrong that was done would not have been possible". Giordano, slip op., pg. 30.

Neither this Circuit's opinion in Walsh nor the Fifth Circuit's opinion in United States vs. Tarpley, 945 F.2d 806 (5th Cir. 1991) provide any legal support for the majority's departure from the but-for requirement of Classic and Screws. In Walsh, a 400 pound prison guard repeatedly and sadistically tortured a mentally disturbed prisoner by stepping on his genitals for no penological purpose. Id., 194 F.3rd at 50. This abuse took place in a prison and was committed on a victim who was incarcerated in that prison. In Tarpley, the police officer defendant "tackled [the victim] and hit him repeatedly in the head. He also inserted his service pistol in [the victim's] mouth. [Tarpley] told [the victim] he was a sergeant on the Police Department, that he would and should kill [the victim], and that he [Tarpley] could get away with it because he was a cop. He repeated 'I'll kill you. I'm a cop. I can." Tarpley also enlisted a fellow sergeant from the police department to assist him in running the victim out of town. Id, 945 F.2d at 808. As Judge Higginbotham found, Tarpley did more than simply use his service weapon in abusing his wife's former lover and identified himself as a police officer. "At several points during his assault of Vestal, [Tarpley] claimed to have special authority for his actions by virtue of his official status. He claimed that he could kill Vestal because he was an officer of the law." Id, 945 F.2d at 809.

Neither Walsh nor Tarpley provide any support for the majority's opinion that Giordano committed sexual abuse only because of his office or as Judge Jacobs so aptly puts the issue; "[i]t is not enough for the government to show that abuse of

government power was a contributing cause or background influence in the deprivation of the victim's rights; it must be the but-for cause." Giordano, Slip Op. pg. 30.

Physical abuse cases typically involve brutality during an arrest by a police officer, an off-duty officer who is out of control, inflicting punishment; or a prison guard abusing an inmate within the confines of the prison walls. Giordano, slip op. pg. 30 (dissent) and those cases from other circuits set forth in this Petition at pgs. 10-12 infra.

The majority opinion represents a clear and unfounded departure from the rule of law enunciated in Classic that Giordano's position as Mayor must have been the but-for cause, and it was the government's burden to prove beyond a reasonable doubt that but-for the accused's position of authority, the wrong that was done would not have been possible. As distasteful as these facts may be, the abuse of these children was derivative of the sex for money relationship Giordano had with Jones, the mother and aunt of V1 and V2 respectively. Giordano's actions were not achieved only because he happened to be the mayor.

## POINT TWO

### The Majority Misconstrues the Second Circuit's Holding in Pitchell vs. Callan

Contrary to this Circuit's holding in Pitchell vs. Callan, 13 F.3rd 535 (2nd Cir. 1994), the majority focuses on the subjective reaction of Jones and V1 and V2 rather than on the actual statements and conduct of Giordano. Id. 13 F.3rd at 548-549. As the court held in Pitchell "this argument erroneously centers on Pitchell's subjective reaction to Callan's conduct rather than the nature of Callan's and Sargis' activity, and misses the essence of the color of law requirement and the protection afforded by section 1983.

Unlike in a negligence action, the focus of inquiry in the instant case is not on the standard of care used by the officers but rather on whether there was an abuse or misuse of a power conferred upon them by state authority. If Callan was not acting with actual or pretended authority, he was not acting under color of law and his actions were not state actions". Id. 13 F.3rd at 548-549.

Even if V1 and V2 believed the mayor was god-like, this subjective belief by the victims misses the essence of the color of law requirement. Giordano never told V1 and V2 he would put them in jail, and Jones' belief that she would be imprisoned if their activities were disclosed was nothing more than the factual consequence flowing not from any pretense by Giordano but rather from the natural and universally understood consequence of public knowledge of her prostitution of her daughter and niece.

Jones' supposed powerlessness was belied by the facts. On July 21, 2001, prior to her arrest, Jones attempted to blackmail and shake down Giordano. This call was intercepted and set forth at J.A. 330. In recognition of this intercepted call by Jones, Judge Jacobs wrote in dissent, "The threat of disclosure followed by jail was much more a threat in the hands of Jones. Indeed, she successfully blackmailed Giordano on the pretext of providing hush money for one of the drivers who brought Jones and the children to the assignations". Id., slip op. pg. 36.

For the reasons set forth in Points One and Two as well as those set forth in the dissenting opinion of Judge Jacobs, the evidence that Giordano acted under color of law was insufficient as a matter of law, and the majority's opinion to the contrary represented a clear and unfounded departure from established precedent of the

Supreme Court and the Second Circuit requiring en banc consideration to secure and maintain uniformity of the Court's decisions.

### POINT THREE

**The Proceeding Involves an Issue on which the Majority Opinion Misapprehends and Conflicts with the Authoritative Decisions not only of the Supreme Court and the Second Second Circuit but also with the Authoritative Decisions of Other United States Courts of Appeals that have addressed The Issue.**

In <u>Griffin vs. City of Opa-Locka</u>, 261 F.3rd 1295 (11th Cir. 2001), the Eleventh Circuit upheld a §1983 claim against a city manager who sexually harassed and ultimately raped a city employee where the abuse of the defendant's authority as city manager began the first day of employment and did not end until after he sexually assaulted the plaintiff and she left her job with the City for good. <u>Id</u>, 261 F.3rd at 1305. The City manager exercised his authority and took advantage of every opportunity to sexually abuse his employee. In <u>Doe vs. Taylor Independent School District</u>, 15 F.3rd 443 (5th Cir.) <u>cert denied</u>, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994) the Fifth Circuit found a sufficient nexus between a teacher's duties and a sexual relationship with a student for color of law purposes where the sexual misconduct began on school grounds and where the defendant "took full advantage of his position as [plaintiff's] teacher to create opportunities for sexual contact, exempting her from doing school work, to give her good grades and to intervene on her behalf to get her a better grade in another class. <u>Doe</u>, <u>supra</u>, 15 F.3rd at 453, n.4.

In <u>Dang Vang vs. Vang Xiong X. Toyed</u>, 944 F.2d 476, 479-80 (9th Cir. 1991) the Ninth Circuit upheld a jury verdict that a defendant acted under color of law when he

raped women looking for employment while meeting with the defendant who was employed by a state employment agency. Finally, in Rogers vs. City of Little Rock, Arkansas, 152 F.3rd 790 (8th Cir. 1998) the Eighth Circuit found that a police officer acted under color of law where he followed the plaintiff home after a traffic stop, told her she owed him one for letting her off without a ticket and then raped her.

Each of these cases deal with a relationship between the actor and the victim that was established **only because** the actor was a state employee and the victim came in contact with the actor solely because of the actor's position either as a city manager (Griffin); a teacher (Doe vs. Taylor); a state employment counselor (Dang Vang); or a police officer (Rogers).

The Eleventh Circuit was careful to contrast these types of cases "where a state employee used his authority to create the opportunity to assault a victim", Griffin, 261 F.3rd at 1306, from cases where a "state actor's official duties **merely facilitated** the meeting of or development of a relationship between the state actor and another person; and the state actor later, on his own time and wholly independent of his official duties, commits an assault or other constitutional tort against that person." Id, 261 F.3rd at 1306. "Under those circumstances, the law is clear that the state actor is not acting under color of law." Griffin, 261 F.3rd at 1306 citing, Almand vs. DeKalb County, Georgia, 103 F.3rd 1510, 1514 (11th Cir.) cert. denied, 522 U.S. 966, 118 S.Ct. 411, 139 L.Ed.2d 314 (1997) (holding that although victim became acquainted with police officer through his official duties in investigating victim's daughter's disappearance, defendant used sheer force, not his authority as a police officer, to bust through her front door and rape her). The Fifth Circuit also refused to find that a defendant acted under color of

law where as a teacher he first befriended and showed special interest in the victim at school, but the sexual assault occurred when the teacher molested the student off campus five months after the student withdrew from school. Becerra vs. Asher, 105 F.3rd 1042, 1047 (5th Cir.) cert. denied, 52 U.S. 824, 118 S.Ct. 82, 139 L.Ed.2d 40 (1997).

Analysis of these cases inexorably leads to the conclusion that the Eleventh, Fifth, Ninth and Eighth Circuits have strictly adhered to the *but-for* requirement of Classic and Screws. Recognizing this, the dissenting opinion of Judge Jacobs was an accurate statement of uniform and prevailing law in this country that "[i]t is not enough for the government to show that abuse of government power was a contributing cause or background influence in the deprivation of the victim's rights; it must be the *but-for* cause". Giordano, slip op. 30. This is not a negligence case, see Pitchell, supra, 13 F.3rd at 549, where the test may be one of several factors. The test for 65 years has been the *but-for* test, and the majority opinion's departure from that test requires en banc review.

If the government proved sexual conduct between Giordano and V1 and V2, no rational trier of fact could have found that this conduct was made possible only because the wrongdoer was clothed with the authority of the office of Mayor. The majority's opinion represents a clear departure from authoritative precedent of the Eleventh, Fifth, Ninth and Eighth Circuits all of whom have adhered to the but-for test first enunciated by the Supreme Court in Classic and most recently set forth in Judge Jacob's dissenting opinion in Giordano, slip op. pgs. 29-36.

The government did not prove and no rational trier of fact could have found beyond a reasonable doubt that the defendant's conduct was achieved only because of his office and that but for the accused's position of municipal authority, the wrong that was done would not have been possible. Id., slip op. pg. 30.

## CONCLUSION

For all these reasons, the Petition for Rehearing and for Rehearing En Banc should be granted and upon rehearing, the Court should vacate the panel's majority opinion; the Defendant's convictions on Counts One and Two of the Superseding Indictment charging violation of 18 U.S.C. §242 should be reversed and those counts dismissed.

THE DEFENDANT-APPELLANT
PHILIP GIORDANO


BY_____
ANDREW B. BOWMAN
1804 Post Road East
Westport, CT 06880
(203) 259-0599
(203) 255-2570 (Fax)
e-mail: andrew.bowman@snet.net