later litigation." *Chase Manhattan Bank,* 56 F.3d at 345 (emphasis added). The key factor to precluding a non-party from an earlier litigation, from re-litigating issues already decided in the prior action, is that the interest of the prior party had been adequately represented by others whom previously litigated the prior action. *Id.* (citing Allan D. Vestal, *Res Judicata/Preclusion* V-125-26 (1969).

The issues involved in the prior criminal trial are identical or virtually identical to those involved in the plaintiff's § 1983 claims against the defendants. At the criminal trial, the government had to prove, *inter alia,* beyond a reasonable doubt, that the Mayor deprived Ms. Roe of her 14th Amendment Constitutional rights while acting under the color of state law to get a conviction under § 242. In order to prove the Mayor liable under § 1983, the plaintiff only needs to prove, by a preponderance of the evidence, that the Mayor deprived Ms. Roe of her 14th Amendment rights while under the color of state law. Throughout the criminal trial the government entered evidence, including the City Charter, and elicited testimony to establish that the Mayor was acting under the color of state law as the final policymaker for the City when he deprived Ms. Roe of her Constitutional rights. To attach liability to the City, the plaintiff only needs to establish that the Mayor was the final policymaker for the City in one area in which he deprived Ms. Roe of her Constitutional rights.

The City's interests were adequately represented by the Mayor in the prior action. In the prior litigation, the Mayor had a strong interest to strenuously defending himself against the issues of acting under the color of state law as the Mayor for the City of Waterbury when he deprived Ms. Roe of her Constitutional rights. The Mayor defended vigorously against those charges and the jury returned a verdict, beyond a reasonable doubt, against the Mayor.

21

In the present matter the City has a strong interest in showing that the Mayor was not acting under the color of state law as the final policymaker for the City when he deprived Ms. Roe of her Constitutional rights. These interests are virtually identical. The Mayor cannot be shown to be the City's final policymaker in the areas in which he deprived Ms. Roe of her rights without showing that the Mayor acted under the color of state law when he deprived Ms. Roe of these rights. Furthermore, since the vast majority of the evidence and testimony entered and given at trial related to the Mayor's broad delegations of powers under the City Charter, the jury in essence could only have concluded that when the Mayor acted under the color of state law he acted as the final policymaker for the City. What is more, the City's interest here is merely to show that there is not a preponderance of evidence supporting these issues; however, a jury has already found that there is evidence beyond a reasonable doubt supporting these issues.

The City's interest has already been adequately represented in the prior litigation by the Mayor. In defending himself against the above stated charges, the Mayor in effect also defended the City against the virtually identical issues involved in this suit. The Mayor vigorously defended the charges that he deprived Ms. Roe of her Constitutional rights while acting under the color of state law. The Mayor not only represented the City's interest in defending against being the final policymaker for the City in the areas in which he deprived Ms. Roe of her Constitutional rights, but defended against even acting under the color of state law in any manner in the areas in which he deprived Ms. Roe of her Constitutional rights. For all the forgoing reasons, the Court should apply the doctrine of collateral estoppel to both the Mayor and the City because the Mayor is the same party from the prior litigation and the City is the Mayor's privy.[6]

---

[6] However, it is not necessary for the Court to determine that the defendants are privies in order to find the Mayor collaterally estopped on the issues. In other words, the doctrine of collateral estoppel applies equally as well to the Mayor whether or not he was in privity with the City.

2. **The material issues of fact pertaining to the plaintiff's § 1983 claims against the defendants are identical to the issues determined in the prior judgment.**

The material issues of fact pertaining to the Mayor acting under the color of state law as the final policymaker for the City in the areas in which he deprived Ms. Roe of her Constitutional rights are identical to the issues and facts previously determined in *U.S. v. Giordano.*

For the purposes of being identical, the issues raised in the new proceeding need not be a verbatim match to the issues raised and determined in the prior proceeding. Rather, whether the first judgment will have preclusive effect depends on whether the same events or series of events is at issue and "whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v United Technologies Corp.*, 706 F.2d 1254, 1260 (2nd Cir. 1983)(emphasis added).

The Second Circuit in *Niagara Frontier Tariff Bureau, Inc. v. U.S.,* 826 F.2d 1186 (2nd Cir. 1987), applied issue preclusion to issues in a subsequent proceeding that were identical to the prior proceeding's issues in that they were "in substance the same as those resolved in the prior litigation" and "no controlling facts or legal principles have changed significantly since the prior proceeding." (emphasis added)(internal quotes omitted)(citing *Montana v. U.S.,* 440 U.S. 147, 155 (1979).

The issues now before the Court in this matter are identical to the issues determined in the prior criminal judgment for the purposes of issue preclusion. The issue of the Mayor depriving Ms. Roe of her 14th Amendment Constitutional rights in this suit is identical to the issue of the Mayor depriving Ms. Roe of her 14th Amendment Constitutional rights in the criminal trial. The issue of the Mayor acting under the color of state law while depriving Ms. Roe of her

Constitutional rights in this suit is identical to the issue of the Mayor acting under the color of state law while depriving Ms. Roe of her Constitutional rights in the criminal trial.

To find the Mayor guilty of count two of the superseding indictment, the jury in *U.S. v. Giordano* had to find beyond a reasonable doubt that the Mayor: (1) acted under the color of the laws of the State of Connecticut, and (2) that in doing such, his conduct deprived the plaintiff of her Constitutional right to be free from sexual abuse. (Tr. at 2102-08)(Addendum #4)(Addendum #5).

These are the very same elements necessary to find the Mayor liable under § 1983, albeit with a lower level of proof than required for a criminal conviction. In order to find the Mayor liable under § 1983, a jury would have to find by a preponderance of the evidence that the Mayor (1) acted under the color of state and local laws, and (2) that in doing such, the Mayor's conduct deprived Ms. Roe of her Constitutional right to be free from sexual abuse. In the decision of *Back v. Hastings On Hudson Union Free School District*, 365 F.3d 107, 122-23 (2nd Cir.2004), the court states that a government official is liable under § 1983 where that official's conduct: (1) deprives the plaintiff of a right secured by the Constitution, and (2) the official acted under the color of state law when depriving the plaintiff of a Constitutional right.

The issue of the Mayor being the final policymaker for the City in the areas in which he deprived Ms. Roe of her Constitutional rights is identical in substance and controlling facts as the issue of the Mayor acting under the color of state law when deprived Ms. Roe of her Constitutional rights in *U.S. v. Giordano*. The same events or series of events are at issue. The same evidence is needed to support both issues, particularly the City Charter, and, even more, the facts essential to the second issue were present in the first issue. Since all the evidence and testimony taken during trial, including the City Charter and The City's Sexual Harassment Policy,

established the Mayor as the final policymaker for the City in the areas in which Ms. Roe was deprived of her Constitutional rights.

Additionally, the Ninth Circuit Court of Appeals has adopted four helpful factors to aid in the process of determining whether two issues are identical for purposes of issue preclusion. Those factors are: "(1) is there substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first; (2) does the new evidence or argument involve the same application of the same rule of law as that involved in the prior proceeding; (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second; (4) how closely related are the claims involved in the two proceedings." *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (1999).

Applying these four factors, the Court should also find that the issues are identical. There is substantial overlap between the evidence and argument advanced here and the evidence and argument submitted and in the criminal trial. In both cases the City Charter was set-forth to establish the Mayor's powers in the City and the argument in both this matter and the prior one centers on the Mayor's powers under the Charter.

The same application of the same rule of law applies in this case as the previous proceeding, albeit with a lower burden of proof. Both 18 U.S.C. § 242 and 42 U.S.C. § 1983 issues incorporate the same application of Constitutional rights and deprivations analysis and require the same elements to establish a violation.

It is all but certain that pretrial preparation and discovery in the criminal trial embraced the matter of the Mayor as the final policymaker for the City in the areas in which he deprived Ms. Roe of her rights for both parties in the prior proceeding were aware of and argued from the City

Charter during trial. Finally, as argued above, the claims involved in this matter and the claims involved in the previous trial are virtually identical and in essence the very same.

Therefore, in light of the above law and argument, the Court should find that the issues and facts pertaining to Ms. Roe's § 1983 claims against the defendants are identical to the issues determined in *U.S. v. Giordano*.

### 3.    The material issues of fact pertaining to the plaintiff's § 1983 claims against the defendants were actually litigated and actually decided in the prior judgment.

The issues and facts pertaining to the Mayor acting under the color of state law as the final policymaker for the city in the areas in which he deprived Ms. Roe of her Constitutional rights were actually litigated and actually decided in *U.S. v. Giordano*.

The indictment and instructions given to the jury made it clear that it was necessary for the jury to find beyond a reasonable doubt that that the Mayor: (1) acted under the color of the laws of the State of Connecticut, (2) that in so doing his conduct deprived the plaintiff of her Constitutional right to be free from sexual abuse. (Tr. at 2102-08)(Addendum #4).

Additionally, the issue of the Mayor being the final policymaker for the City in the areas in which he deprived Ms. Roe of her rights was implicit in the indictment, jury instructions, testimony, and evidence submitted at trial and thus was actually being litigated and actually decided.

The issue of the Mayor being the final policymaker for the City was implicated by the testimony and evidence entered throughout the trial and was a tacit issue hanging over the entire trial. The color of law evidence submitted, namely the City Charter, and testimony given thereof concerned the broad powers the Mayor had in establishing and setting final City policy in the areas of political interest, safety and law enforcement, and social issues within the City.

26

(Addendum #2)(Addendum #3)(Tr. at 23, 28, 42-53, 61-64, 73-75, 97-99, 102-05, 107-110, 114, 127-29, 174-75, 178, 180, 190, 197-205, 232, 242, 245-51, 354, 358).

Furthermore, finding that this issue was actually litigated and actually decided comports with, and furthers, the purpose of the collateral estoppel doctrine. Finding that this issue was actually litigated would protect Ms. Roe from the burden of having to relitigate issues with the Mayor and the Mayor's privy, the City, that have already been determined in the prior criminal trial. It, also, would promote judicial economy by avoiding needless litigation on an issue that time and resources have already been spent litigating.

Thus, in light of the nature of the prior litigation, the jury could have only found that the Mayor acted under the color of state law as the City's final policymaker, because all of the color of law evidence taken at trial referred to the Mayor as a final policymaker. Therefore, it is the plaintiff's position that this issue was actually litigated and actually decided in *U.S. v. Giordano*.

### 4. The material issues of fact pertaining to the plaintiff's § 1983 claims against the defendants were fully and fairly litigated in the prior judgment.

The issues and facts pertaining to the Mayor acting under the color of state law as the final policymaker for the city in the areas in which he deprived Ms. Roe of her Constitutional rights were fully and fairly litigated in *U.S. v. Giordano*.

The Mayor received a full and fair trial in the United States District Court in Bridgeport. The Mayor was represented by exceptionally able defense counsel. The Mayor's defense counsel had the opportunity to cross-examine all of the witnesses called by the Government. The Mayor presented five witnesses in his defense and testified on his own behalf. At the conclusion of the Government's case, and again at the conclusion of the defense's case, the Mayor moved for a Rule

29 motion. The Mayor's defense counsel delivered a compelling closing argument to the jury. Following deliberation, the jury found the Mayor guilty on seventeen counts of the indictment.

### 5. The material issues of fact pertaining to the plaintiff's § 1983 claims against the defendants were necessary to support a valid and final judgment on the merits in the prior judgment.

The issues of fact pertaining to Ms. Roe's § 1983 claims against the defendant's were necessary to support a valid and final judgment on the merits in the prior criminal trial.

The phrase "on the merits" has a long history of usage in the courts. *See Hughes v. U.S.*, 71 U.S. 232, 237 (1866). In its modern sense it relates to a final judgment entered by a court of competent jurisdiction. *Milltex Industries Corp. v. Jacquard Lace Co.*, 922 F.2d 164 (2nd Cir. 1991).

The claims sought to be precluded here were necessary to support the final judgment of the prior proceeding. As argued above, the jury could not have reached its guilty verdict against the Mayor on the § 242 charges without determining beyond a reasonable doubt that the Mayor deprived Ms. Roe of her Constitutional rights while acting under the color of state law as the final policymaker for the City.

The judgment was clearly final. It was determined after a full and fair trial (see previous section). Further, there could be no argument that the Federal District Court of Connecticut in Bridgeport was not a court of competent jurisdiction to enter this final judgment. What is more, the Mayor's pending appeal before the Second Circuit does <u>not</u> affect the preclusive effect of the trial court's final judgment. The court in *U.S. v. International Brotherhood of Teamsters*, 905 F.2d 610, 620-21 (2nd Cir. 1990), found that the pendency of an appeal from a criminal case did not deprive the prior conviction of its preclusive effect. The Circuits are in agreement on this matter and do not consider a pending appeal to deprive a final judgment of its preclusive effect under the

doctrine of collateral estoppel. *Smith v. SEC*, 129 F.3d 356, 362 n. 7 (6th Cir. 1997); *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997); *Williams v. Commissioner*, 1 F.3d 502, 504 (7th Cir. 1993).

Therefore, the issues and facts pertaining to Ms. Roe's claims against the defendants were necessarily to the final judgment on the merits.

## B. THE MAYOR IS LIABLE UNDER § 1983 BECAUSE HE DEPRIVED THE PLAINTIFF OF HER CONSTITUTIONAL RIGHTS WHILE ACTING UNDER THE COLOR OF STATE LAW.

The Mayor deprived Ms. Roe of her 14th Amendment Constitutional rights to bodily integrity and to be free from sexual abuse while acting under the color of state law as the Mayor for the City of Waterbury, Connecticut. The record before the Court and the doctrine of collateral estoppel establish that there are no material issues of fact as to the Mayor's liability under § 1983.

A government official is liable under § 1983 where that official's conduct: (1) deprives the plaintiff of a right secured by the Constitution, and (2) the official acted under the color of state law when depriving the plaintiff of a Constitutional right. *Back v. Hastings On Hudson Union Free School District*, 365 F.3d 107, 122-23 (2nd Cir.2004). In other words, "[t]o establish individual liability in a § 1983 action, a plaintiff must show that an official, acting under color of state law, caused the deprivation of a federal right. *Coon v. Town of Springfield*, 404 F.3d 683, 686 (2nd Cir. 2005)(citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)(internal quotes omitted).

Acting under the color of state law refers to acting under the <u>pretense</u> of law and "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he <u>abuses the position given to him by the state.</u>" *Monsky v. Moraghan*, 127 F.3d 243, 245 (2nd Cir.1997)(citing *West v. Atkins*, 487 U.S. 42, 49 (1988)(emphasis in original).

29

The Mayor deprived Ms. Roe of her 14th Amendment rights while acting under the color of state law when he forced Ms. Roe, on numerous occasions, to engage in fellatio with him and touched her genitalia and breasts. The Mayor was acting under the color of state law when he deprived Ms. Roe of these rights because in doing such he grossly <u>abused</u> the powers and the position of the Mayor's office. The Mayor sexually abused Ms. Roe in the Office of the Mayor, the Mayor's City issued police cruiser, and numerous other locations throughout the City. Even further, the Mayor arranged to meet Ms. Roe, in order for her to perform fellatio on him, over his City issued cellular phones all while validly possessing an official badge identifying him as the Mayor for the City of Waterbury. (Addendum #1)(Tr. at 426-27, 1086-89, 1139, 1075-77, 1086-89, 1194-96, 1198, 1201-08, 1214-20)

1.    **There are no genuine issues of material fact as to the Mayor depriving the plaintiff of her Constitutional rights to bodily integrity and to be free from sexual abuse.**

The Mayor violated Ms. Roe's well-established Constitutional rights to bodily integrity and to be free from sexual abuse when he forced Ms. Roe to perform fellatio on him and touched her genitalia and breasts. The Mayor deprived Ms. Roe of her well-established Constitutional rights on numerous occasions between November 2000 and July 2001. The jury's verdict in *U.S. v. Giordano* found the Mayor guilty beyond a reasonable doubt of <u>depriving the plaintiff of her Constitutional rights under the 14th Amendment</u> while acting under the color of state law. (Tr. at 2095-96, 2102-08, 2143-46)(*Giordano*, 324 F.Supp.2d 349). Under the doctrine of collateral estoppel or issue preclusion (discussed above) the criminal judgment against the Mayor in the prior action has the effect of precluding the Mayor from relitigating the issues and facts that have already been decided against him in a prior judgment.

30

       **a.**     **The plaintiff has a well-established Constitutional right to bodily integrity and to be free from sexual abuse.**

Ms. Roe has a well-established right under the 14th Amendment of the United States Constitution to bodily integrity and to be free from sexual abuse. The definition of "liberty" under the Due Process Clause has been extended by the United States Supreme Court well beyond the privileges enumerated by the Bill of Rights to encompass fundamental rights implicit in the concept of liberty, including a right to bodily integrity. *Doe v. Taylor Independent School District*, 15 F.3d 443, 450 (5th Cir.1994)(citing *Griffith v. Johnston*, 889 F.2d 1427, 1435 (5th Cir.1990); *Lawrence v. Texas*, 539 U.S. 558 (2003); *Washington v. Glucksberg*, 521 U.S. 702, 179-20 (1997); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 847-54 (1992); *Bowers v. Hardwick*; *Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Moore v. City of East Cleveland*, 431 U.S. 494 (1977).

The United States Supreme Court has long recognized a substantive due process right to be protected against government power that is "arbitrarily and oppressively exercised" against the individual. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)(emphasis added)(citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986). The Due Process Clause of the 14th Amendment protects the individual against executive action that is arbitrary in a way that "shocks the conscience." *Lewis*, 523 U.S. at 846(emphasis added); *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992); *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Rochin v. People of California*, 342 U.S. 165, 172 (1952)). In other words, the threshold question in a due process challenge to executive action is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock contemporary conscience." *Lewis*, 523 U.S. at 847 n. 8.

31

The majority of the Circuits have explicitly recognized a 14th Amendment right to bodily integrity in cases where a plaintiff was sexually abused by a state actor, and the United States Supreme Court has recognized an individual's right to bodily integrity against state interference and arbitrary and oppressive conduct.

The Fourth Circuit in *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir.1997), described a due process right "not to be subjected by anyone acting under the color of state law to wanton infliction of physical harm." The same circuit also described this 14th Amendment right as a "protection against unreasonable bodily intrusions by state actors" in a case involving abusive sexual conduct in a state facility. *McWilliams v. Fairfax Bounty Bd. of Supervisors*, 72 F.3d 1191, 1197 (4th Cir.), *cert. denied*, 519 U.S. 819 (1996).

The Fifth Circuit in *Doe v. Taylor Independent School* District, 15 F.3d 443, 451-52 (5th Cir.1994), found it "incontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of rights <u>vouchsafed</u> by the Fourteenth Amendment." (emphasis added).

The Sixth Circuit held that a minor plaintiff abused by a school official "had a clearly established right under the substantive component of the Due process Clause to personal security and to bodily integrity, that such a right is fundamental, and that Davis's [the defendant] sexual abuse of Doe violated that right." *Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 507 (6th Cir.1996)(emphasis added).

In *Rogers v. City of Little Rock Arkansas*, 152 F.3d 790, 796 (8th Cir.1998), the Eight Circuit found a plaintiff's 14th Amendment right to bodily integrity to have been violated when a police officer followed her home and eventually raped her. The court found the sexual assault to be a violation "of the most intimate kind of bodily integrity" because the defendant "forced

32

himself into her body at a time and in a way that could not be considered part of any legitimate police function."[7]

The forgoing law leaves no doubt that Ms. Roe has a well-established Constitutional right to bodily integrity and to be free from sexual abuse.

**b.     The Mayor deprived the plaintiff of her Constitutionally protected and secured rights.**

There are no genuine issues of material fact as to the Mayor depriving Ms. Roe of her Constitutional rights.  The Mayor deprived Ms. Roe of her Constitutionally protected rights when he forced her to perform fellatio on him and touched her genitalia and breasts.  There can be no doubt that Ms. Roe's Constitutional rights to bodily integrity and to be free from sexual abuse were violated by the Mayor forcing the minor Ms. Roe to perform fellatio on him and by the Mayor touching her genitalia and breasts.  For such conduct by the City's top elected official against a minor child is so egregious and so outrageous that it can only be characterized as shocking the contemporary conscience.

The Mayor's conduct can only fairly be categorized as violating Ms. Roe's substantive due process right to be protected against government power that is "<u>arbitrarily and oppressive exercised</u>" against the individual.  The Mayor's acts involve a wanton infliction of physical harm to Ms. Roe and constitute unreasonable bodily intrusion.  The Mayor coercing and forcing Ms. Roe to perform fellatio on him is so egregious and so outrageous that it can only accurately be said to shock the contemporary conscience. (See Addendum #1)(Tr. at 1191-1249).

---

[7] Other Circuits have also recognized these fundamental rights. The Third Circuit recognized a violation of a student's constitutional right to bodily integrity against sexual molestation by a school official. *Stoneking v. Bradford Area School Dist.* 882 F.2d 720, 727 (3rd Cir.1989).  The Seventh Circuit, in a case involving allegations of sexual assault, found the plaintiff to have stated a substantive due process claim against the defendant, based on the plaintiff's liberty interest in bodily integrity. *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir.1997)  The Ninth Circuit described a clearly established "right to bodily privacy" in *Sepulveda v. Ramirez*, 967 F.2d 1413, 1415-16 (9th Cir.1992).

Same as the victims in the previously discussed circuit court decisions, Ms. Roe's Constitutional rights to bodily integrity and to be free from sexual abuse were violated when the government actor, here the Mayor, sexually abused the minor plaintiff. As in the *Rogers* case, the Mayor deprived Ms. Roe of her Constitutional rights because he violated her most intimate kind of bodily integrity by forcing his penis into her mouth at a time and in a manner that could not be considered consistent with the idea of respecting her bodily integrity. This gross misconduct was the very essence of arbitrarily and oppressively exercised government power against an individual. *See Lewis*, 523 U.S. 833.

Therefore, there are no genuine issues of material fact as to the Mayor forcing the plaintiff to perform fellatio on him on numerous occasions and thus the plaintiff is entitled to judgment as a mater of law on the issue of being deprived of her Constitutional rights.

## 2. There are no genuine issues of material fact as to the Mayor acting under the color of state law when he deprived the plaintiff of her Constitutional rights.

Based on the record before the Court, there are no issues of material fact as to the Mayor depriving Ms. Roe of her Constitutionally secured rights while he was acting under the color of state law. The Mayor abused the <u>powers</u> and <u>privileges</u> vested in him as the Mayor for the City of Waterbury in order to sexually abuse Ms. Roe. The Mayor forced Ms. Roe to perform fellatio on him in the <u>Mayor's Office</u> and in the <u>Mayor's City issued police cruiser</u>. The Mayor arranged to sexually abuse Ms. Roe over his <u>City issued cellular phones</u>. At times the sexual abuse would occur during hours when the Mayor was <u>supposed to be engaged in municipal</u> business. The Mayor also possessed a <u>badge</u> identifying him as the City of Waterbury's Mayor. And the Mayor used the power of his office to scare Ms. Roe into not telling anyone about the abuse for fear that her family and she would be put in jail. (See Addendum #1)(Tr. at 71, 253-55, 361, 406-07, 426-

34

27, 430, 434, 462, 470, 484, 914, 922, 928, 933-35, 961, 964-66, 976, 978, 986-88, 1086-89, 1139, 1198, 1191-1241, 1253).

The doctrine of collateral estoppel or issue preclusion (discussed in detail above) precludes the Mayor from relitigating facts or issues previously determined against him in a prior criminal judgment. The jury's verdict in *U.S. v. Giordano* found the Mayor guilty beyond a reasonable doubt of depriving the plaintiff of her Constitutional rights under the 14th Amendment while acting under the color of state law. (Tr. at 2095-96, 2102-08, 2143-46); *Giordano*, 324 F.Supp.2d 349. Thus, the Mayor is precluded from relitigating the issue of whether he was acting under the color of state law in this civil action because the issues and facts have already been determined in the prior criminal judgment.

Therefore, there are no genuine issues of material fact as to the Mayor acting under the color of state law when he forced Ms. Roe perform fellatio on him and the plaintiff is entitled to judgment as a mater of law on this issue.

## C. THE CITY IS LIABLE UNDER § 1983 BECAUSE THE MAYOR WAS THE CITY'S FINAL POLICYMAKER IN THE AREAS IN WHICH HE DEPRIVED THE PLAINTIFF OF HER CONSTITUTIONAL RIGHTS.

The City of Waterbury, Connecticut, is liable to the plaintiff under § 1983 for the acts of the Mayor in depriving Ms. Roe of her Constitutional right because the Mayor was the final policymaker for the City in the areas in which he deprived Ms. Roe of her Constitutional rights. The record before the Court and the doctrine of collateral estoppel establish that there are no material issues of fact as to the City's liability under § 1983.

It is well-established under § 1983 that a municipality is held liable for the Constitutional deprivations caused by the municipality's final policymaker for the areas in which the Constitutional deprivations occurred.

Under § 1983 a municipality is held liable for the Constitutional deprivations caused by the conduct of its final policymaker in the area in which the deprivation occurred. The relevant inquiry for attaching municipal liability for the conduct of a municipal official is whether the official is a final policymaker for the municipality in the particular area where the Constitutional deprivation occurred. *McMillian v. Monroe County Alabama*, 520 U.S. 781, 785 (1997).

Those municipal officials whose <u>edicts or acts</u> may fairly be said to represent official policy is enough to impose liability onto the municipality. *Id.*

> Proof that an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpable. Similarly, the conclusion that the action taken or directed by the municipality or its <u>authorized decisionmaker</u> itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

*Board of the County Commissioners of Bryan County , Oklahoma v. Brown*, 520 U.S. 397, 405 (1997)(emphasis added).

The United States Supreme Court has long recognized that a municipality can be held liable under § 1983 for the acts of a municipal official. *Monell v. Department of Social Services Of the City of New York*, 436 U.S. 658, 694 (1978). In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986), the Court held liability attaches to the municipality where a decision-maker possess final authority to establish municipal policy with respect to the actions taken and makes a deliberate choice to follow a course of action. "If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id.* at 481.

Moreover, municipal liability may be imposed for a <u>single decision</u> by a municipal policymaker. *Id.* at 478, 483. The Court stated in *City of St. Louis v. Praprotnik*, 485 U.S. 112,

36

127 (1988), "the authority to make municipal policy is necessarily the authority to make *final* policy". (emphasis in original)(*See Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996), finding a single decision made by a final policymaker enough to create municipal liability, where the final policymaker acts within sphere of his authority).

It is a <u>question of law</u> for the court to determine which municipal officials are final policymakers, a determination made by <u>looking to local and state law</u>. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989); *Praprotnik*, 485 U.S. at 124; *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir.2000). The relevant inquiry then for the Court in this matter, in determining the Mayor's final policymaking authority, is to look to the City Charter and C.G.S. § 7-193.

The City's Charter explicitly established the Mayor as the Chief Executive Officer for the City, as it was entitled to under C.G.S. § 7-193. It delegated to the Mayor broad authority to create final policies in the areas of political interests, safety and law enforcement, and social issues. The Court should make a <u>determination of law</u> that the City's Charter as in effect during Mayor Giordano's tenure as Mayor established the Mayor as the final policymaker for the City in the areas of political interests, safety and law enforcement, and social issues.

The Second Circuit has continuingly recognized that municipal liability attaches under § 1983 for "[a]ctions by an individual with final decision-making authority in a municipality. . .." *Anthony v. City of New York*, 339 F.3d 129, 139 (2nd Cir. 2003)(*See also Coon*, 404 F.3d at 486, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts <u>may fairly be said</u> to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."(emphasis added)(*See also Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2nd Cir.2004) recognizing that a single tortious action taken by a city official "constitutes the act of the municipality and therefore provides a basis

for municipal liability where it is taken, by, or is attributable to, one of the city's authorized policymakers.")(*See also Coon*, 404 F.3d 683 (2nd Cir.(VT.)2005) acts or edicts of final policymaker attaches liability to city.)

What is more, the municipal policy need <u>not</u> have received formal approval through body's official decision-making channels to subject the city to liability. *Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2nd Cir.2003)(citing *Jeffes*, 208 F.3d 49, 57). The existence of well-established official policy will <u>not</u> insulate the municipality from liability for the conduct of its official policymaker. *Bennett*, 74 F.3d at 586. "The fact that rape is not a legitimate law enforcement goal does not prevent the Sheriff's act from falling within his law enforcement function." *Id.*  In *Turner v. Upton County Texas*, 915 F.2d 133 (5th Cir.1990), the court held that a municipality may be held liable for the illegal acts of its final policymaker, despite the county's contention that it did not authorize the final policymaker to violate the law.

It is clear that the Mayor's sexual abuse of Ms. Roe need not have been formally approved through the City's official policymaking channels in order to attach liability to the City.

The Connecticut District Court has recognized the attachment of municipal liability in § 1983 cases. "Whether an official in question possessed final policy making authority in a particular area is a legal question to be determined by reference to state law, local law, and custom and usage having the force of law." *Russo v. City of Hartford*, 341 F.Supp.2d 85, 107 (D.Conn.2004).

The federal district courts have found <u>mayors</u> to be <u>final policymakers</u> and that their conduct in violating a plaintiff's Constitutional right to attach liability onto the Mayor's respected municipality. The court in *Howard v. Town of Jonesville*, 935 F.Supp. 855, 860 (W.D.La.1996), found that a <u>municipality may be held liable for the mayor's acts of sexual harassment</u> and

discrimination. In *Wagner v. City of Memphis*, 971 F.Supp. 308, 319, 321 (W.D.TN.1997), the city was held liable for the mayor's violations of a police officer's due process rights because the mayor was responsible for establishing final policy in that area. A federal court in Alabama found that a <u>city could be held liable for the mayor's discrimination</u> in appointing the city's police chief since the <u>mayor possessed the final decision-making authority in that area</u>. *Lightner v. Town of Ariton, Alabama*, 902 F.Supp. 1489, 1500 (M.D. Ala.1995).[8]

### 1. There are no material issues of fact as to the Mayor being the final policymaker for the City in the areas in which he deprived the plaintiff of her Constitutional rights.

The Mayor was the final policymaker for the City in the areas of political interests, safety and law enforcement, and social issues. All the evidence before the Court on this motion for summary judgment, including the City Charter, Sexual Harassment policy and attached memorandum, and trial testimony, establish that there are no genuine issues of fact as to the Mayor being the final policymaker for the City in any or all of the following three areas: political interest, safety and law enforcement, and social issues. These are the areas in which Ms. Roe was deprived of her Constitutional rights.

The Mayor's conduct violated Ms. Roe's Constitutional rights in all three areas for which he was the City's final policymaker, as explained ion the sections below. However, to attach municipal liability, it is only necessary for the Court to find that the Mayor was the final policymaker for the City in any one of the three areas in which he deprived Ms. Roe of her rights. All of the evidence before the Court today establishing the Mayor as the City's final policymaker

---

[8] *See also Butler v. The City of Little Rock, Arkansas*, 863 F.2d 1398, 1403 (1988) affirming municipal liability under § 1983 for a municipal judge who was found to be the final policymaker in area of employment matters in the municipal court. *See also Mandel v. Doe*, 888 F.2d 783 (11th Cir.1989) finding physician's assistant to be acting as final policymaker for county in area of medical affairs. *See also Rockard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir.1983) finding the Vice President and Executive Director of the Hospital final decision-makers with respect to personnel decisions because their authority over personnel decisions was final. *See also Jeffes v. Barnes*, 208 F.3d 49, 60-61 (2d Cir.2000) elected sheriff in charge of county jail was final policymaker over personnel decisions in jail.

was before the jury in *U.S. v. Giordano* and was used to determine that the Mayor acted under the color of state law. (Tr. at 28, 42-49, 61-64)(Addendum #2 and #3).

What is more, even if the Court determines that this issue was not previously determined in the prior criminal matter, the Court should nonetheless make a <u>determination of law</u> that the City Charter established the Mayor as the final policymaker in any or all of the areas in which he deprived Ms. Roe of her Constitutional rights and grant Ms. Roe summary judgment on the issue.

### 2.   <u>There are no material issues of fact as to the Mayor being the final policymaker for the City in the area of political interests.</u>

The are no genuine issues of material fact as to the Mayor being the final policymaker for the City in the area of political interests for the City's residents. The City Charter established the Mayor as final policymaker in this area in which he deprived Ms. Roe of her Constitutional rights.

The City Charter established the Mayor as the <u>Chief Executive Officer</u> for the City with the powers to "<u>control and supervise all officers and departments</u>" within the City and "<u>to make and enforce such rules and regulations</u> as he may deem advisable for and concerning the organization, management, and operation of <u>all</u> offices and departments and agencies" within the City. (Addendum #2 at § 2102(e))(emphasis added).

The Mayor possessed power under the Charter to act as Chairman Ex-Officio of all boards, commissions and authorities within the City, except for appeal and review boards. This included the power to preside over any meeting the Mayor attended, along with the power to cast the tie-breaking vote. He also had a seat in the Board of Alderman with the power to introduce ordinances. (Addendum #2 at §§ 2101-03).

The City's Charter afforded the Mayor the power to suspend and remove for cause any non-elected appointed City official. This power also included the power to appointment persons

to City employment positions. (Addendum #2 at § 2102-03).

All of the City's various department budget proposals required review and approval by the Mayor and the Mayor was responsible for all contracts entered into on behalf of the City. (Tr. at 73-75, 114)(Addendum #2 at § 2102).

The City charter before this Court leaves no issues of material fact as to the Mayor's edicts or acts being fairly said to represent official policy within the City for the area political interest. Therefore, Ms. Roe is entitled to judgment as a matter of law on this issue of the Mayor being the final policymaker for the City in this area.

### 3. The are no material issues of fact as to the Mayor being the final policymaker for the City in the area of safety and law enforcement.

The are no genuine issues of material fact as to the Mayor being the final policymaker for the City in the area of safety and law enforcement. The City Charter established the Mayor as final policymaker in this area in which he deprived Ms. Roe of her Constitutional rights.

The Mayor's powers under the Charter were clearly delineated to vest in him the power to "cause the laws and ordinances to be executed and enforced and to conserve the peace within the city" and afforded the Mayor the power to assume control of the entire police department in the case of City a emergency, that would be determined at the Mayor's discretion. The Mayor possessed "all the powers given by law to sheriffs in relation to riot assemblages" along with the power "to exert all the force necessary to enable him to execute the laws within the limits of the city." (Addendum #2)(emphasis added).

The Mayor's powers under the Charter allowed him to act as the chairman of the City's Police Board meetings. The Mayor gave orders to the Superintendent of the Police Department that were duly followed. The Mayor terminated the Police Superintendent and thereafter oversaw the Police Department's internal affairs. Throughout his tenure, the Mayor would be alerted of

41

serious crimes within the City, visit the crime scenes, and be briefed by the officer in charge. The Mayor also participated in police drug raids and crime fighting operations. (Tr. at 23, 97-99, 102-05, 107-110, 127-29, 174-75, 178, 197-205, 232, 242, 245-46).

The Mayor was in charge of hiring new police officers and often played a prominent role in the promotion of officers within the Department. The Mayor would make appointments to the Police Commission and would oftentimes conduct role call and brief officers before their shifts were to begin. The Mayor attended swearing in ceremonies for new officers and would administer the Department's oath. Furthermore, the Police Department's budget proposal required the review and approval of the Mayor. (Tr. at 114, 180, 190, 247-51, 354, 358).

The City Charter leaves no issues of material fact as to the Mayor's edicts or acts being fairly said to represent official policy within the City for the area of safety and law enforcement. Therefore, Ms. Roe is entitled to judgment as a matter of law on this issue.

### 4. <u>There are no material issues of fact as to the Mayor being the final policymaker for the City in the area of social issues.</u>

The are no genuine issues of material fact as to the Mayor being the final policymaker for the City in the area of social issues, particularly the area of sexual harassment, in which he deprived Ms. Roe of her Constitutional rights.

The Mayor promulgated the City's Sexual Harassment Policy, with an attached memorandum written by the Mayor. The Mayor's policy made it clear that sexual harassment is a violation of federal and state law and defined physical sexual harassment as, "Unwanted physical contact, including touching, pinching, brushing the body, coerced sexual intercourse, assault." The attached memorandum written by the Mayor made it clear that this policy applied to all City employees. (Addendum #3)(Tr. at 49-53).

42

The Sexual Harassment policy and attached memo leaves no issues of material fact as to the Mayor's edicts or acts being fairly said to represent official policy within the City for the area of social issues. Therefore, Ms. Roe is entitled to judgment as a matter of law on this issue.

## CONCLUSION

For all the forgoing reasons, the Court should grant Ms. Roe's motion for summary judgment as to her 14th Amendment claims against the defendants under 42 U.S.C. § 1983. Based on the doctrine of collateral estoppel and the record before the Court there are no material issues of fact as to the Mayor depriving Ms. Roe of her Constitutional rights while acting under the color of state law as the final policymaker for the City in the areas in which he deprived Ms. Roe of her Constitutional rights.

RESPECTFULLY SUBMITTED,

SUSAN ROE, Jr., ppa ATTY. LYNN JENKINS
GUARDIAN AD LITEM

BY: _____

ATTY. ERSKINE D. McINTOSH
FEDERAL BAR NO. CT 09743
THE LAW OFFICES OF ERSKINE D. McINTOSH, P.C.
3129 WHITNEY AVENUE, SECOND FLOOR
HAMDEN, CONN. 06518-2364
(203) 787-9994

BY: _____

ATTY. GERALD L. HARMON, ESQUIRE
THE LAW OFFICES OF GERALD L. HARMON
290 PRATT STREET
MERIDEN, CONN. 06450
(203) 639-1656

PLAINTIFF'S COUNSEL

43

## CERTIFICATION

This is to certify that copies of the forgoing Affidavit were mailed to the following on August 18, 2005 as follows:

Eliot B. Spector, Esq.
Sack, Spector, and Karsten
836 Farmington Avenue
West Hartford, CT 06119-1544

Michael Mackniak, Esq.
87 Meadow Street
Naugatuck, CT 06770

Michael S. Hillis, Esq.
Dobriski, Knapsack & Hillis
129 Whitney Avenue
New Haven, CT 06511

Andrew B. Bowen, Esq.
1804 Post Road East
Westport, CT 06880-5683

_____
ATTY. ERSKINE D. MCINTOSH

_____
ATTY. GERALD L. HARMON

19 MEMO-SUMMARY JUDGMENT-JONES