## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANE DOE, JR. and SUSAN ROE, JR.,
    Plaintiffs,

    v.

THE CITY OF WATERBURY and PHILIP
GIORDANO,
    Defendants.

CIVIL ACTION NO.
3:01cv2298 (SRU)
(consolidated with 03cv571)

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

Between November 2000 and July 2001, Philip Giordano, then-mayor of the City of

Waterbury ("Waterbury"), sexually abused the two minor plaintiffs, Jane Doe, Jr. ("Doe") and

Susan Roe, Jr. ("Roe"), on numerous occasions at the mayor's office, home, and in his city-issued

police cruiser.

In September 2001, a federal grand jury returned an 18-count superceding indictment.

Specifically, the indictment charged Giordano with: (1) depriving two minor children of their due

process liberty right to be free from sexual abuse, in violation of 18 U.S.C. § 242; (2) conspiring

to knowingly initiate the transmission of the minor victims' names by using means of interstate

commerce, in violation of 18 U.S.C. §§ 2425 and 371; and (3) knowingly initiating the

transmission of the minor victims' names by using means of interstate commerce with the intent

to encourage them to engage in sexual activity, in violation of 18 U.S.C. § 2425.  On March 25,

2003, a jury found Giordano guilty of 17 of the 18 counts, including the two counts charging

Giordano with acting under color of law to deprive Doe and Roe of their constitutional rights to

be free from unwanted sexual abuse.  Subsequently, the District Court denied Giordano's motion

to set aside the verdict, and the Second Circuit Court of Appeals affirmed Giordano's conviction.

Doe and Roe each filed a civil lawsuit against Giordano and Waterbury,[1] primarily alleging violations of 42 U.S.C. § 1983 and state law. Each has filed a motion for summary judgment against Giordano and Waterbury, and Waterbury filed a cross-motion for summary judgment against both Doe and Roe. On April 4, 2006, I heard oral arguments on all pending motions.[2] As of that date, Giordano had not responded to the motions for summary judgment, and to date, has essentially not responded to the motions. At oral argument, Giordano submitted a copy of his Petition for a Rehearing En Banc by the Second Circuit Court of Appeals as his response. *See* Doc. # 96.

## I.    Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (party must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*,

---

[1] Guitana Jones was, at one point, named as a defendant in this case. She is not named in either of the operative complaints or motions for summary judgment. By eliminating Jones as a defendant in their complaints, the plaintiffs are deemed to have dismissed their claims against Jones.

[2] On April 4, 2006, I consolidated the two cases by oral order, and the clerk entered a notice of consolidation on April 7, 2006. *See* Doc. # 98.

398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523

(2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of

the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992). When a motion for summary

judgment is properly supported by documentary and testimonial evidence, however, the

nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather

must present significant probative evidence to establish a genuine issue of material fact. *Celotex

Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is

summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*,

502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d

Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not

"significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will
> not defeat an otherwise properly supported motion for summary judgment;
> the requirement is that there be no genuine issue of material fact. As to
> materiality, the substantive law will identify which facts are material. Only
> disputes over facts that might affect the outcome of the suit under the
> governing law will properly preclude the entry of summary judgment.
> Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence

"such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of

his case with respect to which he has the burden of proof at trial, then summary judgment is

appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to

any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord*

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's

burden satisfied if he can point to an absence of evidence to support an essential element of

nonmoving party's claim). In short, if there is no genuine issue of material fact, summary

judgment may enter. *Celotex*, 477 U.S. at 323.

## II.    Discussion

The pending motions for summary judgment raise three legal issues: (1) whether there is

a genuine issue of material fact concerning Waterbury's liability under either section 1983 or

state law; (2) whether a claim against Giordano in his official capacity is legally the same as a

claim against Waterbury; and (3) whether there is any genuine issue of material fact concerning

Giordano's individual liability under federal and state law.

### A.    Municipal Liability

#### 1.    *Section 1983 Legal Standard*

With respect to a section 1983 claim, a plaintiff must prove four elements: (1) actions

taken under color of law; (2) deprivation of constitutional or statutory right; (3) causation; and

(4) damages. *See* 42 U.S.C. § 1983. When a plaintiff brings a section 1983 claim against a

municipality, she must prove a fifth element – that an official policy of the municipality caused

her constitutional injury. *See Monell v. Dep't. of Social Services of the City of New York*, 436

U.S. 658, 690-91 (1978).

42 U.S.C. § 1983 provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State . . . subjects, or causes to be subjected, any citizen of
> the United States or other person within the jurisdiction thereof to the

> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured . . . .

(emphasis supplied). Local governments and municipalities are "persons" within the meaning of

the statute, and therefore liability may attach to municipalities under section 1983. *Monell*, 436

U.S. at 690; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). The *Monell* Court limited

municipal liability under section 1983, however, by concluding that a municipality may not be

found liable based on the vicarious liability theory of respondeat superior. *Monell*, 436 U.S. at

691. Instead, a municipality may only be sued directly if a plaintiff alleges that a "municipal

policy of some nature caused a constitutional tort." *Id.* In other words, a municipality may not

be found liable simply because one of its employees or agents committed a tort. *Board of County*

*Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405 (1997).

After evaluating the legislative history of section 1983, the United States Supreme Court

has concluded that vicarious liability would be inconsistent with section 1983's causation

requirement. *Praprotnik*, 485 U.S. at 122. As a result, "the 'official policy' requirement was

intended to distinguish acts of the municipality from acts of employees of the municipality, and

thereby make clear that municipal liability is limited to action for which the municipality is

actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). *See also*

*Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2d Cir. 2003) (explaining that plaintiff must show

that municipality is actually responsible for her injury). The Supreme Court has emphasized that:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly
> attributable to the municipality. The plaintiff must also demonstrate that,
> through its *deliberate* conduct, the municipality was the "moving force"
> behind the injury alleged. That is, a plaintiff must show that the municipal
> action was taken with the requisite degree of culpability and must
> demonstrate a direct causal link between the municipal action and the

deprivation of federal rights.

*Brown*, 520 U.S. at 404.

The decisions interpreting *Monell* have discussed several ways in which a plaintiff may establish an official municipal policy.[3] Relevant to this case, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 480. When a plaintiff's theory of municipal liability is based on showing that a single action by a municipal employee caused the constitutional injury, rather than showing that a formally adopted or ratified municipal policy caused the injury, a plaintiff must demonstrate that the official had final policymaking authority for the particular subject matter involved. *Praprotnik*, 485 U.S. at 123-25; *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989); *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000).

Whether an official has final policymaking authority is a legal question, determined on the basis of state law. *Jeffes*, 208 F.3d at 57. The critical inquiry is not whether an official *generally* has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit. *Id.* (citing *Praprotnik*, 485 U.S. at 123; *Jett*, 491 U.S. at 737; *Pembaur*, 475 U.S. at 481). *See also Rookard v. Health and Hospitals Corp.*, 710 F.2d 41, 45 n.3 (2d Cir. 1983). An official has final authority if his decisions, at the time they are made, "may fairly be said to represent official policy." *McMillan v. Monroe County, Alabama*, 520 U.S. 781, 784 (1997); *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003).

---

[3] For example, in addition to the approach taken in this case, a plaintiff could also show that a municipality formally promulgated an unconstitutional policy or practice, established a well-settled custom, or engaged in deliberately indifferent training or supervisory practices.

2.    *Application of Official Policy Requirement*

The plaintiffs argue that Waterbury is liable for Giordano's actions, because Giordano was the mayor and final policymaker of Waterbury in the areas of law enforcement, safety, and social issues. When he acted, it was as if Waterbury acted. According to the plaintiffs' theory, the mayor *was* the City of Waterbury and his actions necessarily constituted Waterbury's official policy. Additionally, plaintiffs argue that Waterbury is liable for Giordano's actions because he used his powers as mayor to carry out the abuse of the plaintiffs. Waterbury acknowledges that Giordano was generally a final policymaker for Waterbury, but argues that his actions in this particular case exceeded the bounds of the authority granted to him by Waterbury. As such, Giordano's unauthorized personal actions cannot be said to fairly represent the official policy of Waterbury, nor would it be fair to characterize Waterbury as the moving force behind Giordano's actions.

I conclude that Waterbury is not responsible for Giordano's decision to sexually abuse the plaintiffs for his personal gratification, because Giordano's actions did not constitute an official policy of Waterbury. There are three main reasons that support my conclusion: (1) municipal liability cannot be based on a vicarious liability theory of respondeat superior; (2) although Giordano is generally a final policymaker for Waterbury, Giordano's specific actions in this case cannot be fairly said to represent official policy, because under state law, he exceeded the bounds of the authority granted to him; and (3) the fact that Giordano used the powers of his office to carry out the abuse does not establish an official policy, but rather merely satisfies the color of law requirement of a section 1983 claim.

a.    Respondeat Superior Liability

Not every action taken by a final policymaker creates a policy for the municipality.

Policymakers retain aspects of their day-to-day affairs that are personal, rather than official, in

nature.  In order to fairly assess liability, particularly when municipal liability is at issue, courts

must separate the acts of the policymaker as policymaker, which could potentially impose

liability on the municipality, from the acts of policymaker as an individual.  *See Brown*, 520 U.S.

at 403-07.  The decisions interpreting *Monell* hold that a municipality cannot be made liable

simply because one of its agents or employees commits a tort.  When a plaintiff's theory of

municipal liability is based on a single action committed by a final policymaker, it follows that

the municipality can only be liable when the final policymaker is acting in his policymaking

capacity, not in his personal capacity.  *See Jeffes*, 208 F.3d at 57-58.

In distinguishing the actions of a municipality from the actions of its agents, courts must

recognize that the only way a municipality can act is through its agents.  *Auriemma v. Rice*, 957

F.2d 397, 399 (7th Cir. 1992).  In order to establish municipal liability, it is not enough for a

plaintiff simply to point to an agent who acted on behalf of the municipality, because that would

only be sufficient to establish vicarious liability.  *Id.* at 400.  Rather, the plaintiff must show that

when the agent of the municipality acted, he was creating policy for the municipality.  "That a

particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link

between finality and policy."  *Id.*

Here, although the plaintiffs have shown that Giordano sexually abused the plaintiffs

during a period of time when he also happened to be the mayor of Waterbury, they have not

shown that Giordano was acting in his final policymaking authority as mayor when he abused the

-8-

plaintiffs.[4]  As a result, the plaintiffs have not shown that Waterbury was the moving force

behind Giordano's abuse of the plaintiffs.  *See Brown*, 520 U.S. at 400.  Plaintiffs have attempted

to satisfy that standard by arguing that Giordano's actions were synonymous with the actions of

Waterbury, because he was the mayor.  Because there is no dispute that Giordano was the

moving force behind his abuse of plaintiffs, they argue that since his actions were synonymous

with the municipality, Waterbury was also the moving force.

That argument is not persuasive, because when Giordano acted, he was not acting in his

policymaking capacity and therefore Waterbury was not the moving force behind his actions.

Plaintiffs are essentially making a respondeat superior argument, which is forbidden by *Monell.*

Fundamentally, a municipality may not be held liable for the actions of its employees or agents

on a respondeat superior theory; the municipality is only liable if a policy attributable to the

municipality inflicts injury on a plaintiff.  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983);

*see Monell*, 436 U.S. at 663 (deciding that municipal liability cannot be based on respondeat

superior theory).  "In fact, avoiding results that are indistinguishable from respondeat superior

appears to be a primary concern of Supreme Court jurisprudence on municipal liability." *Russo*

*v. City of Hartford*, 341 F. Supp. 2d 85, 107 (D. Conn. 2004) (citing *Praprotnik*, 485 U.S. at

126).  The decisions interpreting *Monell* make it clear that in enacting section 1983, "Congress

did not intend municipalities to be held liable unless action pursuant to official municipal policy

of some nature caused a constitutional tort." *Pembaur*, 475 U.S. at 477.

---

[4] Giordano's use of the mayor's office and city-issued cell phones to carry out the abuse
does not prove that Giordano was acting in his policymaking authority when he abused plaintiffs;
rather, those facts tend to establish that Giordano was acting under color of law, which is a
different element of a section 1983 claim.

Here, Giordano's decision to abuse two minors may not be "fairly said" to represent the official policy of Waterbury. The evidence in the record shows that Waterbury's policy was to stop and prevent abuse. There is no evidence in the record that any other Waterbury officials knew about or failed to prevent Giordano's actions.[5] Giordano's actions contravened Waterbury's official policy.

Those facts are not necessarily dispositive, because in certain circumstances a mayor's actions that contravene an established municipal policy could as a matter of law create new policy sufficient to impose liability on the municipality. In this case, however, Giordano was not performing the functions of a mayor when he abused the plaintiffs. His behavior towards the plaintiffs was entirely personal and did not serve any public purpose. He was purposefully and actively breaking the law and contravening established policy, not for any purpose associated with the functions of his job as mayor, but for his personal gratification. Waterbury employed a tortfeasor, who happened to be at the apex of executive authority. Imposing liability on Waterbury in that instance would impermissibly blur the line between a municipality and its employees in a manner forbidden by *Monell* and subsequent decisions.

> b.    Liability for Unauthorized Actions is Personal

When Giordano abused the plaintiffs he was frustrating municipal policy, not implementing it; his actions at issue in this case did not rise to the level of official policy. *See*

---

[5] In their memorandum in support of summary judgment, plaintiffs mention that Giordano sexually abused plaintiffs in the home of the Waterbury budget director. The criminal indictment also listed the budget director's address as one of the locations where the abuse took place, although there is no evidence in the record that the jury found that alleged fact to be true. Moreover, there does not appear to be any evidence in the record that the budget director knew about the abuse.

*Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 712 (N.D. Ohio 2005) (holding that

municipality was not liable for final policymaker's unauthorized, personal acts not taken in the

course of any official function). Giordano was not authorized to make final policy for Waterbury

by engaging in personal acts of sexual abuse. *See id.* In order for a municipality to be held liable

for the torts of its agents, the agent must have the authority to make final policy in the area at

issue in the lawsuit. *Jeffes*, 208 F.3d at 57-58. The issue whether an official has final

policymaking authority in a particular area is a question of state law. *Id.*

Here, plaintiffs argue that the Waterbury City Charter ("Charter") gave Giordano broad

powers as mayor in the areas of public safety, law enforcement, and social issues, and that

because of those broad powers, he was always acting as a role model for the citizens of

Waterbury. Plaintiffs argue that Waterbury cloaked Giordano with tremendous authority as

mayor and because Waterbury gave him so much power, it is responsible for his actions.

In reality, however, Giordano acted in a manner that was not authorized by the Charter

and was therefore outside the scope of the powers Waterbury granted to him. The Charter gives

the mayor substantial executive powers. *See* Appendix to Plaintiff's Memorandum of Law in

Support of Motion for Summary Judgment, Addendum #2. Those powers, however, are framed

in terms of helping the mayor to carry out the functions of his official position. For example, the

Charter gives the mayor authority to make appointments, communicate with the board of

aldermen, and sign contracts on behalf of the city. *See id.* Specifically, Section 2101(a) of the

Charter provides that the mayor should "cause the laws and ordinances to be executed and

enforced." *See id.* If Giordano committed a constitutional tort while enforcing a law, Waterbury

might arguably be liable. In this case, however, Giordano was not enforcing laws on behalf of

-11-

the City; he was breaking them for his personal benefit. The Charter did not grant him any

powers with respect to any activities associated with breaking laws. Indeed, Giordano was not

carrying out any of the functions of his job as mayor when he abused the plaintiffs; he was acting

in a personal capacity.

In a typical municipal liability case, the municipal official performs a function of his job

but does so in a way that is alleged to be unconstitutional (i.e., makes a hiring decision, but uses

discriminatory practices to do so). In such a case, a charter that delegates almost unlimited

power to the mayor to make hiring decisions might subject the municipality to liability if the

mayor uses the power to carry out a discriminatory decision. In this case, the Charter did not

authorize Giordano to use his powers as mayor to sexually abuse plaintiffs for his personal

gratification. Giordano acted outside the scope of the authority granted to him by the Charter,

and therefore, he was not authorized to make final policy for Waterbury when he abused the

plaintiffs. *See Jeffes*, 208 F.3d at 57-58.

In *Wooten v. Logan*, 92 Fed. Appx. 143, 146-47, 2004 WL 68541, 3 (6th Cir. 2004), the

Sixth Circuit Court of Appeals held that the high sheriff, although he was a final policymaker,

did not subject the municipality to liability for his rape of a mentally disabled child. Despite the

fact that he used his police cruiser and flashing lights to effectuate the rape, the court held that

"his conduct cannot conceivably be characterized as exercising a power to set policy." *Id.* The

plaintiff in *Wooten* attempted to analogize *Pembaur*, 475 U.S. at 480 (holding that municipal

liability may imposed based on the single decision of a municipal policymaker under appropriate

circumstances), to her facts to argue that actions taken by a final policymaker in the area in which

he has general final policymaking authority subject the municipality to liability. The Sixth

-12-

Circuit's reasoning in rejecting that argument is instructive:

> Given these alleged facts, Wooten can state a claim against the County only if
> every "law enforcement" activity (e.g., stop, arrest, etc.) by a sheriff (or other
> chief law enforcement official) – whether a matter of official business or a
> misuse of power to advance a private agenda – represents the "official policy"
> of the local government.  Such a rule would contravene *Pembaur's* attempt
> "to distinguish acts of the *municipality* from acts of *employees* of the
> municipality." *Pembaur*, 475 U.S. at 469, 106 S. Ct. 1292 (emphasis in
> original), and would institute the doctrine of *respondeat superior*.
> Accordingly, Logan's conduct cannot represent "official policy," and the
> County is not liable for Logan's conduct.

*Id.*  The Sixth Circuit held that the sheriff's acts could not represent official policy when they

necessarily contravened the existing official policy of the municipality and were in no way

intended to influence or effectuate that policy.  *Id.*

Plaintiffs argue that Giordano was a leader and role model for the citizens of Waterbury;

therefore his powers and decisions taken as mayor must be broadly construed.  Plaintiffs'

argument proves too much; it would subject municipalities to liability for almost any action by a

final policymaker, simply because that final policymaker also happens to be a an official with a

substantial amount of power in the municipal government.  Although Giordano was a leader and

role model, not every action he took was within the authority granted to him to set policy.  His

actions at issue in this case are too far removed from the powers given to him by Waterbury to

manage the city to impose liability on Waterbury.

       c.     Giordano's Use of His Position as Mayor Merely Satisfies the
             "Color of Law" Element, Not the Municipal Policy Element

Citing *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996), plaintiffs contend that, because

Giordano used the benefits of his position as mayor to carry out the sexual abuse, he was

effectively acting as a policymaker and Waterbury should be liable.  The facts of *Bennett*,

however, are distinguishable from the facts of this case, and subsequent decisions have called

*Bennett* into question.

In *Bennett*, the Fifth Circuit determined that the county sheriff's rape of a suspect in a

murder investigation constituted a county policy sufficient to impose municipal liability.

*Bennett*, 74 F.3d at 586. During the course of a murder investigation, the sheriff went to the

plaintiff's house for the purpose of questioning her about the murder, and while there, he raped

her. *Id.* at 581-83. The Fifth Circuit held that the sheriff's rape of a murder suspect could

constitute a county policy, because the sheriff's "relationship with Bennett grew out of the

attempted murder investigation, and because . . . he used his authority over the investigation to

coerce sex with her." *Id.* at 586. The Fifth Circuit reasoned that "[t]he fact that rape is not a

legitimate law enforcement goal does not prevent the Sheriff's act from falling within his law

enforcement function." *Id.* Additionally the Fifth Circuit explained that the existence of a well-

defined official policy to the contrary of the policymaker's decision would not insulate the

municipality from liability. *Id.*

The facts of *Bennett* differ from the facts of this case. In *Bennett*, the sheriff was engaged

in the legitimate law enforcement function of investigating a murder, and it was because of his

official work in that law enforcement capacity that he raped the plaintiff. Here, Giordano was

not engaged in any official function when he sexually abused the plaintiffs.

Plaintiffs argue, however, that Giordano, like the sheriff in *Bennett*, was only able to carry

out the rape because he used his power as mayor to control the plaintiffs. The Sixth Circuit

Court of Appeals rejected that same argument in *Wooten*, 92 Fed. Appx. at 146-47, 2004 WL

68541 at 4. In *Wooten*, the sheriff conspired with a non-county employee to rape a minor. The

Sixth Circuit held that, even though the sheriff used his police lights, badge, uniform, and gun to effectuate the rape, the conduct could not "conceivably be characterized as exercising power to set policy." *Id.* The court explained that although the sheriff abused his power in order to carry out the rape, there was nothing about his abuse of power that was specific to his position as sheriff. He could have carried out the rape in the same way if he was a lower-level officer, and therefore he was not specifically using policymaking powers when he raped the plaintiff. *Id.* Similarly, here, plaintiffs argue that Giordano used his power as mayor to keep the plaintiffs from reporting him, because he threatened to arrest them or their family members. Giordano could have made the same threats if he was a lower level municipal officer; as such, he conduct cannot be attributed to his role as policymaker.

Additionally, plaintiffs emphasize that Giordano abused the plaintiffs in the mayor's office and used city-issued cell phones to arrange his encounters with plaintiffs. The fact that Giordano abused his power as mayor certainly tends to support plaintiffs' claim that he acted under color of law. *See United States v. Giordano*, 442 F.3d 30, 42-42 (2d Cir. 2006). When a plaintiff brings a claim against a municipality, however, it is not enough to show that an official acted under color of law. The plaintiff must also prove that there was a policy of the municipality that caused plaintiff's injury. *See Wooten*, 92 Fed. Appx. at 146-47, n.4, 2004 WL 68541 at 4.

The record evidence is insufficient to permit a reasonable jury to find that the official policy element of plaintiffs' municipal liability claims has been met.

    3.    *State Law Claims*

Additionally, both plaintiffs have filed several state law claims against Waterbury,

including Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress,

Sexual Assault, Battery, and Negligent Supervision. Plaintiffs and Waterbury have filed cross

motions for summary judgment, seeking judgment on those claims. Doe's state law claims

against Waterbury (Counts 4 and 9-11) and Roe's state law claims against Waterbury (Count 2)

are barred by governmental immunity. C.G.S. § 52-557n(a)(2) provides:

> Except as otherwise provided by law, a political subdivision of the state shall
> not be liable for damages to person or property caused by: (A) Acts or
> omissions of any employee, officer or agent which constitute criminal
> conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or
> omissions which require the exercise of judgment or discretion as an official
> function of the authority expressly or impliedly granted by law.

Waterbury is not generally liable for the criminal conduct of its officers.

Plaintiffs argue that Giordano was the alter ego of Waterbury, and therefore, Waterbury

should be liable. The purpose of the "alter ego theory" is to prevent individuals from being able

to disguise their actions as those of corporations, in order to avoid liability. That theory does not

apply here, because an individual cannot be indistinguishable from a city. Waterbury is a

functioning city with elected officials, municipal offices, and typical municipal functions.

Waterbury is a distinct, viable entity; thus, the alter ego theory does not apply.

In addition, with respect to Doe's negligent supervision claim, to the extent that Doe is

arguing that the "identifiable victim subject to imminent harm" exception to the doctrine of

governmental immunity applies, she has not cited any factual evidence from which a reasonable

jury could find that exception applies. Specifically, there is not sufficient factual evidence from

which a reasonable jury could conclude that some other Waterbury employee knew about Giordano's actions and failed to take appropriate action.

In sum, I deny plaintiffs' motions for summary judgment and grant Waterbury's motion for summary judgment with respect to all state law claims.

### 4. *Summary of Claims Relating to Waterbury*

In sum, I am granting Waterbury's motions for summary judgment with respect to all claims against Waterbury, and I am denying plaintiffs' motions for summary judgment with respect to all claims against Waterbury.[6] Plaintiffs have failed to show that an official policy of Waterbury caused their constitutional injuries. Therefore, the plaintiffs' *Monell* claims fail as a matter of law. In addition, with respect to the plaintiffs' state law claims, governmental immunity shields Waterbury from liability for Giordano's actions at issue in this case.

### B.    Official Capacity Claim

In addition to their claims against Waterbury, plaintiffs have also filed claims against Giordano in his official capacity and are seeking summary judgment. An official capacity suit is simply another way of pleading a claim against a municipality. *Monell*, 436 U.S. at 690, n.55. It is treated in all respects as a suit against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Therefore, although plaintiffs have also pleaded their claims against Giordano in his official capacity, they would still need to prove that a policy or practice of Waterbury caused

---

[6] In *Jane Doe, Jr. v. The City of Waterbury, et al.*, 3:01cv2298 (SRU), I am granting summary judgment in favor of Waterbury on the portions of Counts 1, 2, 3, 4, 9, 10, and 11 in the amended complaint (doc. # 76-1) that allege claims against the City of Waterbury. In *Susan Roe, Jr. v. The City of Waterbury, et al.*, originally filed as 3:03cv571 (SRU), I am granting summary judgment in favor of Waterbury on the portions of Counts 1 and 2 of the second amended complaint (doc. # 72) that allege claims against the City of Waterbury.

the plaintiffs' injuries. Because they have not done so, I am denying plaintiffs' motion for

summary judgment against Giordano in his official capacity, and am entering summary judgment

sua sponte in favor of Giordano in his official capacity for the reasons discussed above.

    C.    <u>Individual Capacity Claims Against Giordano</u>

        1.    *Federal Claims*[7]

    I grant plaintiffs' summary judgment motions against Giordano in his individual capacity

with respect to their section 1983 claims. Plaintiffs argue that I should base my decision on the

doctrine of collateral estoppel.[8] Although it may appear at first glance that collateral estoppel

applies, all of the elements have not been met. Rather, I base my decision on the fact that

plaintiffs have submitted statements of undisputed facts pursuant to Rule 56, and Giordano has

not submitted any evidence to refute those facts. Based on the undisputed evidence in the record,

no reasonable juror could find for Giordano on plaintiffs' section 1983 claims.

    There are four elements needed for collateral estoppel to apply: (1) identical issues in

both proceedings; (2) the issue in the prior proceeding must have been actually litigated and

actually decided; (3) there was a full and fair opportunity to litigate the issue in the prior

proceeding; and (4) the issue previously litigated must have been necessary to support a valid and

---

    [7] In *Jane Doe, Jr. v. The City of Waterbury, et al.*, 3:01cv2298 (SRU), the plaintiff brought claims pursuant to 42 U.S.C. § 1983 (Count 1), 42 U.S.C. § 1985 (Count 2), and 42 U.S.C. § 1986 (Count 3). *See* Amended Complaint (doc. # 76-1). In *Susan Roe, Jr. v. The City of Waterbury, et al.*, originally filed as 3:03cv571 (SRU), the plaintiff brought a claim only pursuant to 42 U.S.C. § 1983 (Count 1). *See* Second Amended Complaint (doc. # 72).

    [8] Plaintiffs have also raised a collateral estoppel argument with respect to claims against Waterbury. Because I am holding that collateral estoppel does not apply to the claims against Giordano, it is not necessary to decide the question whether Waterbury was in privity for purposes of determining if collateral estoppel applies to the claims against it. Rather, for the reasons already discussed, Waterbury is not liable for Giordano's actions at issue in this case.

final judgment on the merits.[9] *Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38, 44 (2d Cir.

1986). Mutuality of estoppel is not required, so a party other than the government can assert

collateral estoppel based on a prior criminal conviction. *Id.* at 43. Because the burden of proof is

higher in a criminal case, a party may rely on the collateral estoppel effect of that conviction in a

later civil case. *Id.*

        In *United States v. Giordano*, 3:01cr216 (AHN), a jury found Giordano guilty of two

counts of depriving the minor children who are plaintiffs in this case of their due process liberty

right to be free from sexual abuse, in violation of 18 U.S.C. § 242. Section 242 provides,

"Whoever, under color of any law . . . willfully subjects any person . . . to the deprivation of any

rights, privileges, or immunities secured or protected by the Constitution or laws of the United

States . . . shall be fined under this title, or imprisoned . . . ." Pursuant to Rule 29 of the Federal

Rules of Criminal Procedure, Judge Nevas denied Giordano's motion to set aside the guilty

verdict. *United States v. Giordano*, 324 F. Supp. 2d 349, 352 (D. Conn. 2003). Additionally, the

Second Circuit affirmed Giordano's conviction, including the two counts of depriving minor

children of the right to be free from sexual abuse. *United States v. Giordano*, 442 F.3d 30 (2d

Cir. 2006).

        Although it may appear that collateral estoppel applies, upon closer inspection, all of the

elements of collateral estoppel have not been met. In *United States v. Giordano*, 3:01cr216

(AHN), the instructions to the jury provided that, in order to find Giordano guilty on the relevant

charge, the jury needed to find that Giordano's "conduct deprived victim one *or* victim two of

---

        [9] Because I am not relying on the doctrine of collateral estoppel as the basis for my
decision, I do not decide the question whether, under federal law, Giordano's decision to appeal
his underlying criminal conviction would affect the finality of the judgment in the criminal case.

some right secured or protected by the constitution of the United States . . . ." Appendix to the

Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, Transcript at

2102 (emphasis supplied). In addition, the jury instructions indicated that, in order to convict

Giordano, the jury had to find that "his acts resulted in bodily injury to victim one *or* victim

two." *Id.* (emphasis supplied). Therefore, when rendering the verdict in the criminal case, the

jury did not necessarily find each element of the crime with respect to each victim, since the jury

was instructed that it could convict Giordano as long as it found each element with respect to

*either* of the victims. The jury could have convicted Giordano on the relevant counts by finding

that the government had proven certain of the elements with respect to one of the victims and

certain of the elements with respect to the other. Thus, I cannot find that all of the elements of

collateral estoppel have been met here, because the factual basis for the jury finding in the

criminal case is not necessarily identical to the factual basis required for the claim in this case,

that is, that *every* element has been met with respect to *both* – or either one – of the plaintiffs.

Instead, I base my decision on the fact that the plaintiffs have submitted sufficient

evidence in their Rule 56 statements and accompanying exhibits from which no reasonable juror

could find in Giordano's favor. With respect to a section 1983 claim, a plaintiff must prove four

elements: (1) actions taken under color of law; (2) deprivation of constitutional or statutory right;

(3) causation; and (4) damages. *See* 42 U.S.C. § 1983. Here, the undisputed evidence in the

record demonstrates that Giordano acted under color of law to violate plaintiffs' constitutional

rights not to be deprived of bodily integrity without due process of law, and that Giordano's

actions caused them pain and discomfort. *See* Plaintiffs' Rule 56 Statement at ¶¶ 62-87.

Giordano has not submitted any evidence to refute those facts. I conclude that, pursuant to Rule

56(e) of the Federal Rules of Civil Procedure, summary judgment in favor of the plaintiffs is

proper.

In addition, I am also sua sponte dismissing Counts 2 and 3 of Doe's amended complaint.

Those counts raise claims against Giordano in his individual capacity pursuant to 42 U.S.C. §§

1985 and 1986. Doe did not pursue those claims in her motion for summary judgment. In

addition, those claims simply do not apply to the facts of this case as a matter of law. There is

not evidence in the record from which a reasonable jury could find for Doe on those claims.

        2.    *State Law Claims*

Additionally, plaintiffs have filed several state law claims against Giordano in his

individual capacity and now seek summary judgment on those claims. The plaintiffs have, in

part, alleged different state law claims, which I have noted below. My ruling on each state law

claim applies only to the extent that each plaintiff alleged that particular claim in her complaint.

      a.    Sexual Assault, Conspiracy to Commit Assault and Battery, and
Assault and Battery[10]

The elements of the intentional tort of sexual assault, are: (1) harmful or offensive contact

with a person; (2) intended to cause the person such contact; and (3) that results from an act.

*Fernandez v. Standard Fire Ins. Co.*, 44 Conn. App. 220, 224 (1997). A civil battery requires:

(1) that the defendant intended to cause a harmful or offensive contact, or an imminent

apprehension of such contact, with another person, and (2) that a harmful contact directly or

---

[10] In *Jane Doe, Jr. v. The City of Waterbury, et al.*, 3:01cv2298 (SRU), pursuant to the
amended complaint (doc. # 76-1), the plaintiff has brought a claim for sexual assault (Count 4),
conspiracy to commit assault and battery (Count 7), and assault and battery (Count 8). In *Susan
Roe, Jr. v. The City of Waterbury, et al.*, originally filed as 3:03cv571 (SRU), pursuant to the
second amended complaint (doc. # 72), the plaintiff has brought a claim for battery (Count 2).

indirectly results. *Simms v. Chaisson*, 277 Conn. 319, 331 (2006). A civil assault requires: (1)

that the defendant intended to cause a harmful or offensive contact, or an imminent apprehension

of such contact, with another person, and (2) that the other person was put in imminent

apprehension as a result. *Id.* A civil conspiracy is: (1) a combination of two or more persons; (2)

to perform a criminal or unlawful act or a lawful act by criminal or unlawful means; (3) an act

taken by one or more of the conspirators pursuant to the scheme and in furtherance of the object;

and (4) which results in damage to the plaintiff. *Macomber v. Travelers Property and Cas.*

*Corp.*, 277 Conn. 617, 635-36 (2006) (citing *Harp v. King*, 266 Conn. 747, 779, 835 A.2d 953

(2003)). Conspiracy is not an independent claim; it must be linked with an allegation of a

substantive tort. *Id.*

I am granting plaintiffs' motions for summary judgment against Giordano in his

individual capacity with respect to the state law claims of sexual assault, assault and battery, and

conspiracy to commit assault and battery, because there is no genuine issue of material fact

concerning any of those claims. Plaintiffs have submitted evidence of each of those state law

claims, and Giordano did not rebut that evidence. Pursuant to Rule 56(e) of the Federal Rules of

Civil Procedure, summary judgment is proper. Although it may appear that the doctrine of

collateral estoppel applies, I am not basing my decision on the doctrine of collateral estoppel for

the reasons discussed above.

Doe argues that she is entitled to damages under 18 U.S.C. § 2255 with respect to her

assault and battery claims.[11] That statute provides civil damages to victims of persons who

---

[11] The claim for damages pursuant to 18 U.S.C. § 2255 arises only in *Jane Doe, Jr. v. The City of Waterbury, et al.*, 3:01cv2298 (SRU), pursuant to Count 4 of the amended complaint (doc. # 76-1).

violate 18 U.S.C. §§ 2422, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, or 2423. Section 2422 provides:

> (a) Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

Doe argues that Giordano "violated" section 2422, so he should be subject to the damage provision of section 2255. Giordano was not indicted, tried, or convicted under section 2422 or any of the other sections delineated above, and therefore, section 2255 does not apply here. In addition, this claim for damages is duplicitous, because plaintiffs will recover damages for the underlying conduct, i.e., sexual assault, assault, battery, and conspiracy to commit assault and battery, for which I am granting summary judgment in their favor. Accordingly, I am denying Doe's motion for summary judgment with respect to the damage provision of section 2255.

b.    Conspiracy to Commit False Imprisonment & False Imprisonment[12]

I am granting Doe's motion for summary judgment against Giordano in his individual capacity with respect to her claims of false imprisonment and conspiracy to commit false imprisonment. "False imprisonment is the unlawful restraint by one person of the physical liberty of another." *Rivera v. Double A Transp., Inc.*, 248 Conn. 21, 31 (1999). A person is liable for false imprisonment, if he acts "for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Id.* A civil

---

[12] In *Jane Doe, Jr. v. The City of Waterbury, et al.*, 3:01cv2298 (SRU), pursuant to the amended complaint (doc. # 76-1), the plaintiff has brought a claim against Giordano for false imprisonment (Count 6) and conspiracy to commit false imprisonment (Count 5).

conspiracy is defined above.

Here, there is no dispute that Giordano knew the plaintiffs were minors. Doe's Rule 56(a) Statement ¶ 65. Giordano removed the minors from their home to his office, home, or police cruiser for the purpose of sexually abusing them. There is no genuine issue of material fact that Giordano was substantially certain that confinement would result from his sexual abuse of the plaintiffs. Pursuant to Rule 56(e), summary judgment in favor of plaintiffs is proper.

### c.    Intentional Infliction of Emotional Distress[13]

There are four elements of an intentional infliction of emotional distress ("IIED") claim: (1) the defendant intended to inflict emotional distress, or knew or should have known that the emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the distress suffered by the plaintiff was severe. *Golnik v. Amato*, 299 F. Supp. 2d 8, 14-15 (D. Conn. 2003) (citing *Appleton v. Stonington Bd. of Ed.*, 254 Conn. 205, 210 (2000)).

Based on the undisputed evidence in the record, no reasonable jury could find for Giordano. The plaintiffs' Rule 56 statements and accompanying exhibits establish sufficient facts to support each element of an IIED claim. Giordano has not refuted that evidence. In accordance with Rule 56(e), I am granting summary judgment in favor of plaintiffs on their claims for IIED against Giordano in his individual capacity.

---

[13] In *Jane Doe, Jr. v. The City of Waterbury, et al.*, 3:01cv2298 (SRU), pursuant to the amended complaint (doc. # 76-1), the plaintiff has brought a claim against Giordano for intentional infliction of emotional distress (Count 9). In *Susan Roe, Jr. v. The City of Waterbury, et al.*, originally filed as 3:03cv571 (SRU), pursuant to the second amended complaint (doc. # 72), the plaintiff has brought a claim for intentional infliction of emotional distress (Count 2).

d.    Negligent Infliction of Emotional Distress[14]

There are four elements of a negligent infliction of emotional distress ("NIED") claim:

"(1) The defendant's conduct created an unreasonable risk of causing the plaintiff's emotional

distress; (2) The plaintiff's distress was foreseeable; (3) The emotional distress was severe

enough that it might result in illness or bodily harm; and (4) The defendant's conduct was the

cause of the plaintiff's distress." *Carrol v. Allstate Insurance Company*, 262 Conn. 433, 444

(2003).

I am granting plaintiffs' motions for summary judgment with respect to their claims for

NIED against Giordano in his individual capacity.  As described above, based on the undisputed

evidence in the record, no reasonable jury could find for Giordano on these claims.

---

[14] In *Jane Doe, Jr. v. The City of Waterbury, et al.*, 3:01cv2298 (SRU), pursuant to the amended complaint (doc. # 76-1), the plaintiff has brought a claim against Giordano for negligent infliction of emotional distress (Count 10).  In *Susan Roe, Jr. v. The City of Waterbury, et al.*, originally filed as 3:03cv571 (SRU), pursuant to the second amended complaint (doc. # 72), the plaintiff has brought a claim for intentional infliction of emotional distress (Count 2).

### III.    Conclusion

Plaintiffs' motions for summary judgment (**docs. # 81 and # 105**) are **GRANTED in part and DENIED in part**.  With respect to all claims against Waterbury, plaintiffs' motions for summary judgment are **DENIED**.  Doe's section 1985 and section 1986 claim, as well as her claim for damages under 18 U.S.C. § 2255 are **DISMISSED**.  With respect to all remaining claims against Giordano in his individual capacity, plaintiffs' motions for summary judgment are **GRANTED**.  Waterbury's motions for summary judgment against plaintiffs (**docs. # 88 and #106**) are **GRANTED**.  I am sua sponte dismissing all claims against Giordano in his official capacity.

It is so ordered.

Dated at Bridgeport, Connecticut, this 28th day of September 2006.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge