**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JANE DOE, JR. and SUSAN ROE, JR.,<br>ppa ATTY. LYNN JENKINS,<br>GUARDIAN AD LITEM<br>      Plaintiffs,<br><br>      v.<br><br>THE CITY OF WATERBURY, et al.,<br>      Defendants. | CIVIL ACTION NO.<br>3:01-cv-2298 (SRU)<br>(consolidated with 03cv571) |

**RULING ON DAMAGES**

Between November 2000 and July 2001, Philip Giordano, then-mayor of the City of

Waterbury ("Waterbury"), sexually abused the two minor plaintiffs, Jane Doe, Jr. ("Doe") and

Susan Roe, Jr. ("Roe"), on numerous occasions at the mayor's office, home, and in his city-issued

police cruiser.

In September 2001, a federal grand jury returned an 18-count superceding indictment

against Giordano.  Specifically, the indictment charged Giordano with: (1) depriving two minor

children of their due process liberty rights to be free from sexual abuse, in violation of 18 U.S.C.

§ 242; (2) conspiring to knowingly initiate the transmission of the minor victims' names by using

means of interstate commerce, in violation of 18 U.S.C. §§ 2425 and 371; and (3) knowingly

initiating the transmission of the minor victims' names by using means of interstate commerce

with the intent to encourage them to engage in sexual activity, in violation of 18 U.S.C. § 2425.

On March 25, 2003, a jury found Giordano guilty of 17 of the 18 counts, including the two

counts charging Giordano with acting under color of law to deprive Doe and Roe of their

constitutional rights to be free from unwanted sexual abuse.  Subsequently, the District Court

denied Giordano's motion to set aside the verdict, and the Second Circuit Court of Appeals

affirmed Giordano's conviction.

Doe and Roe each filed a civil lawsuit against Giordano and Waterbury, primarily alleging violations of 42 U.S.C. § 1983 and state law.[1]  On September 28, 2006,  I entered summary judgment in favor of Waterbury with respect to all claims against Waterbury and against Giordano in his official capacity, and in favor of plaintiffs with respect to substantially all claims against Giordano in his individual capacity.  Plaintiffs moved for certification of the partial final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  Neither Giordano nor Waterbury opposed the motion.  I granted plaintiffs' motion and entered a partial final judgment in favor of Waterbury with respect to all claims against Waterbury.  Plaintiffs appealed the summary judgment ruling with respect to the claims against Waterbury and Giordano in his official capacity.  On December 24, 2008, the Court of Appeals upheld the summary judgment ruling.

With respect to the hearing on damages, I held a telephone conference on February 3, 2009 with plaintiffs' counsel.  At that time I indicated my intention to decide the question of damages solely on the basis of the papers and transcripts from Giordano's criminal trial if necessary.  Plaintiffs filed a Brief Requesting Damages in Relation to Hearing in Damages as to Defendant Phillip Giordano (Pls.' Br. Req. Damages).  Giordano has not filed anything with the court on the issue of damages.

With respect to their claims against Giordano in his individual capacity, plaintiffs seek punitive damages, fees, and compensatory damages for extreme emotional distress, pain and

---

[1] I granted plaintiffs' summary judgment motion on their claims for sexual assault, conspiracy to commit assault and battery, assault and battery, conspiracy to commit false imprisonment, false imprisonment, intentional and negligent infliction of emotional distress.

suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of earning capacity, medical and psychiatric services, loss of innocence and loss of youth.

Sexual abuse victims are entitled to significant damages. *See Walker v. Dickerman*, 993 F. Supp. 101, 106 (D. Conn. 1997); *see also Grisanti v. Cioffi*, No. 3:99CV490(JBA), 2001 WL 777435 (D. Conn. 2001), *aff'd*, 38 Fed. Appx. 653 (2d Cir. 2002) (an award of $1.6 million in compensatory damages for a woman raped four times by the defendant did not shock the conscience). In calculating an award of damages on plaintiffs' state law claims, I am not to consider mere speculation or conjecture but must base my decision upon an estimate of reasonable probabilities. *Doe v. Thames Valley Council for Community Action*, 797 A.2d 1146, 1164 (Conn. App. Ct. 2002). Future medical expenses may be awarded when there exists "a degree of medical certainty that future medical expenses will be necessary." *Id.* Similarly with respect to the plaintiffs' Section 1983 claim, compensatory damages are not limited only to out-of-pocket loss and other monetary harms, but can account for such injuries as mental anguish and suffering. *See Memphis Community School Dist. v. Stachura*, 447 U.S. 299, 306 (1986). Punitive damages are available for Section 1983 claims to punish the defendant for his willful or malicious conduct and to deter others from similar behavior. *Id*. at 307 n.9.

Under Connecticut law, the "amount of a damage award is a matter peculiarly within the province of the trier of fact. . . ." *Gaudio v. Griffin Health Svs. Corp.*, 249 Conn. 523, 550 (1999). Courts in this district recognize that sexual abuse victims are entitled to compensatory and punitive damages. *Walker v. Dickerman*, 993 F. Supp. at 106. In *Walker*, the plaintiff was sexually abused as an adolescent by her former minister. The court awarded her $750,000 in compensatory damages arising out of a default judgment against the minister for negligent and

intentional infliction of emotion distress and sexual assault, and loss of consortium. The court

also recognized that punitive damages compensate victims for their injuries and awarded her

$374,437 in punitive damages. *Id.* In *Grisanti*, the jury awarded the plaintiff, an adult woman

raped four times by the same man, $2.5 million in compensatory damages plus unspecified

punitive damages. The court reduced the compensatory award to $1.25 million and added

$416,667 in punitive damages and $3,956.27 in costs. The total judgment was $1,670,623.27.

On appeal, the Second Circuit affirmed the court's revised award. *See Grisanti v. Cioffi,* 38 Fed.

Appx. 653 (2d Cir. 2002).

Here, Doe and Roe were prepubescent girls when the abuse began and they were

subjected to 128 different incidents of sexual abuse at the hands of the mayor of the city in which

they lived. (Pls.' Br. Req. Damages at 8.). Based on the U.S. Department of Health and Human

Services' National Vital Statistics Report, Vol. 56, No. 9 (Dec. 2007) Life Expectancy Tables,

the plaintiffs have 66 and 77 years respectively to live with the memories of what happened to

them.[2] Plaintiffs believed Giordano possessed the power to arrest them if they refused to comply

with his sexual requests. Giordano forced plaintiffs to perform sex acts with him by exploiting

their fears of being taken away from their families and incarcerated. After the abuse stopped,

Roe received individual weekly therapy from a licensed social worker from August 2001 to

January 2005. (Pls.' Br. at 5). She suffers from Post-traumatic Stress Disorder, Adjustment

Disorder with Anxiety, Sexual Abuse of a Child, Physical Abuse of a Child, and Neglect of a

Child, and is a victim of ritual sexual abuse, physical abuse, emotional abuse, and neglect. (App.

---

[2] In support of their request for damages, plaintiffs calculate that Roe has a life expectancy of 85 years and Doe has a life expectancy of 76 years old.

to Pls.' Br. Req. Damages at 37).  Roe reported experiencing nightmares and fear of retaliation because she reported the sexual abuse and testified against Giordano. (App. 26).  She also reports feeling embarrassed and scared as a result of the abuse she suffered.  (App. 38).  Doe fears Giordano will find her and retaliate against her.  (App. 39).  She suffers from nightmares related to the abuse and is uncomfortable discussing the case and wishes to forget about the incidents. (App. 39).

It is clear that plaintiffs' lives were irrevocably changed by Giordano's actions.  At each developmental stage, plaintiffs are likely to experience reawakened emotions and fears in addition to new difficulties as they mature into adulthood.  It is a near certainty that both plaintiffs will need long-term, if not lifetime, access to mental health care.  The 128 instances of sexual abuse caused and will continue to cause plaintiffs extreme emotional distress, anguish, suffering, nightmares and fears.  That abuse will impact plaintiffs' ability to fully enjoy and participate in the intimate relationships of adulthood and form trusting relationships with others throughout their lives.

Plaintiffs' seek a damages award of ten million dollars each.  Calculating an award under these circumstances is enormously difficult.  The plaintiffs' loss of innocence, childhood, and trust and the burden of the memories of the sexual abuse trauma they suffered cannot be easily quantified in dollars.  The transcripts of Giordano's trial and the victims' statements reflect the horrific nature of the sexual abuse they suffered and its impact on them.   However, the record is thin with respect future mental health care needs of the plaintiffs and much of the plaintiffs' brief and the appendix focus on the abuse they suffered at the hands of family members, which I cannot consider in this award.

In fashioning this award, I look to the record and the awards in *Gristanti* and *Walker*. In *Gristanti*, the Second Circuit upheld the district court's revised jury award of $1,670,623.27 to an adult rape victim for four instances of forcible rape. *Grisanti v. Cioffi,* 38 Fed. Appx. at 656. On an incident-by-incident based analysis, the plaintiff in *Grisanti* recovered over $417,000 for each assault. Applying that per-incident amount, Roe and Doe would each receive over $26,000,000 for the 128 instances of sexual assault. The duration and frequency of the sexual abuse inflicted upon Doe and Roe, however, makes an incident-based analysis problematic.

In *Walker* the court awarded the plaintiff $1,124,437 in damages for the long-term sexual abuse that the she suffered at the hands of her former minister. *Walker v. Dickerman*, 993 F. Supp. at 106. The plaintiff in *Walker* was an adolescent who at the time believed she and her minister were in a relationship. As she matured she recognized the impact of the sexual abuse on her high school years and her ability to complete her higher education. Like the abuse suffered by Roe and Doe, the sexual abuse the *Walker* plaintiff suffered was long in duration and frequent.

In light of the duration of the abuse, the numerous occasions the plaintiffs were forced to engage in sexual activity with Giordano, and the young age of the plaintiffs, the total awards in *Grisanti* and *Walker* are inadequate here. The thin record of expected future damages, however, does not support the award that plaintiffs seek. Based upon the totality of the circumstances, I award each of the plaintiffs $8,000,000.00 (eight million dollars) in compensatory and punitive damages against Giordano.

The clerk shall enter judgment and close this file.  It is so ordered.

Dated at Bridgeport, Connecticut, this 15th day of October 2009.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge